# Composite Exhibit 1 to Notice of Removal

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I.    CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>ClareMedica Viking, LLC</u>
Plaintiff                                              Case # _____
                                                       Judge  _____
vs.

<u>Alberto de Solo, Carlos A. de Solo, Jones Cemelus</u>
Defendant

---

**II.    AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

**III.    TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
    ☐ Business governance
    ☒ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

    **IV.    REMEDIES SOUGHT** (check all that apply):
    ☒ Monetary;
    ☒ Nonmonetary declaratory or injunctive relief;
    ☐ Punitive

    **V.    NUMBER OF CAUSES OF ACTION:** [  ]
    (Specify)

      3

    **VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
        ☐ yes
        ☒ no

    **VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
        ☒ no
        ☐ yes If "yes," list all related cases by name, case number, and court.

    **VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
        ☐ yes
        ☒ no

    **IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
        ☐ yes
        ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ George S LeMieux</u>        Fla. Bar # <u>16403</u>
        Attorney or party                (Bar # if attorney)

<u>George S LeMieux   </u>        <u>04/25/2025</u>
  (type or print name)          Date

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.

ClareMedica Viking, LLC

        Plaintiff,

v.

Alberto de Solo, Carlos A. de Solo,
and Jones Cemelus, M.D.,

        Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ClareMedica Viking, LLC ("ClareMedica" or "Plaintiff"), by and through its undersigned counsel, brings this action against Jones Cemelus, M.D. ("Dr. Cemelus"), Alberto de Solo ("Alberto"), and Carlos A. de Solo ("Carlos," together with Alberto, the "de Solos," and collectively with Dr. Cemelus, "Defendants").

## NATURE OF THE ACTION

1.    ClareMedica is a network of primary care medical clinics with multiple centers across the State of Florida dedicated to providing exceptional care to patients and focused on patients who are seniors, often those who are covered by Medicare Advantage. ClareMedica provides patient-centered, compassionate care to ensure that its patients have seamless access to specialists and services tailored to their needs. ClareMedica's high-touch care model for seniors includes same-day appointments when needed, 24/7 access to care, telemedicine convenience, annual wellness visits, screening and early detection, and chronic disease management.

2.    In February 2025, ClareMedica acquired out of bankruptcy certain assets of

CareMax, Inc. ("CareMax"), a technology-enabled value-based care delivery system focused on providing comprehensive care for Medicare Advantage members, particularly seniors (the "CareMax Transaction"). Prior to filing for bankruptcy, CareMax operated a network of medical centers and numerous affiliates, including Caremax Medical Group, LLC, Managed Healthcare Partners, LLC ("MHP"), and Interamerican Medical Center Group, LLC ("IMCG"), with a geographic center in Miami-Dade County.

3. Carlos was the Chief Executive Officer of CareMax and MHP, and Alberto was the Chief Operating Officer of CareMax and MHP. Under their leadership, those entities ultimately declared bankruptcy after facing significant financial difficulties.

4. Among other assets ClareMedica acquired in the CareMax Transaction was an employment agreement between Caremax Medical Group, LLC, IMCG, and Dr. Cemelus (the "Employment Agreement"), which contains reasonable restrictive covenants preventing him from competing within a defined geographic area and a notice provision requiring Dr. Cemelus to provide ninety (90) days' notice before leaving.[1] For purposes of Dr. Cemelus's contract, ClareMedica succeeded CareMax by purchasing the contract and assuming its benefits and obligations.

5. Shortly after ClareMedica acquired the CareMax assets, the de Solos began orchestrating efforts to establish a competing practice to provide professional medical services in a primary care clinic setting within the same or similar geographic region as CareMax and ClareMedica (the "Competing Business"). As part of these efforts, the de Solos have solicited Dr. Cemelus, and he has agreed to leave his employment with ClareMedica effective Friday, April 25, 2025, thereby affecting approximately 1,300 ClareMedica patients' continuing primary care.

---

[1] A true and correct copy of the Employment Agreement is attached hereto as Exhibit "A."

ClareMedica further has reason to believe that the de Solos' purpose in interfering with Dr.

Cemelus's contract is to attempt to transfer his patients to the Competing Business.

## PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff ClareMedica Viking, LLC is a Delaware limited liability company with its

principal place of business located at 1000 NW 57th Court, Miami, Florida 33126.

7.      Defendant Dr. Cemelus is an individual residing in the State of Florida.

8.      Defendant Alberto de Solo is an individual residing in the State of Florida.

9.      Defendant Carlos de Solo is an individual residing in the State of Florida.

10.     This Court has personal jurisdiction over Defendants because Defendants are

individuals who reside in the State of Florida and are therefore at "home" in Florida.

11.     Jurisdiction is proper over Defendants pursuant to Section 48.193(1)(a)(1), (2), and

(7), Florida Statues, because they have conducted, engaged in, and carried out a business venture

within the State of Florida, have committed tortious actions in the State of Florida, and have

breached a contract in the State of Florida.   Jurisdiction is also proper pursuant to Section

48.193(2), Florida Statutes, because Defendants have engaged in substantial and not isolated

activities within the State of Florida.

12.     Venue is proper in this Court pursuant to Chapter 47, Florida Statutes, because

Defendants' breaches of contract and tortious conduct giving rise to this action occurred in Miami-

Dade County.

13.     Further, jurisdiction is proper in this Court pursuant to Section 8.2 of the

Employment Agreement, under which Dr. Cemelus consented to the courts in and for Miami-Dade

County, Florida, as "the venue and exclusive proper forum in which to adjudicate any case or

controversy arising either, directly or indirectly, under or in connection with this Agreement." Ex.

A, § 8.2.

14.     ClareMedica has retained the undersigned counsel to represent its interests in this proceeding and has agreed to pay counsel a reasonable fee for their services.  ClareMedica is entitled to its attorneys' fees, court costs, and other expenses incurred in connection with this action against Dr. Cemelus pursuant to the Employment Agreement and Florida law.  *See* Ex. A, § 8.3; Fla. Stat. § 542.335(1)(k).

## FACTUAL BACKGROUND

### A.    ClareMedica's Operations

15.     ClareMedica is a Florida-based primary care provider and national leader in patient care quality, outcomes, and experience.  Through its proprietary care model, ClareMedica integrates primary care, specialty care, care management, social services, and technology to help patients live healthier and happier lives.

16.     CareMax was a value-based care delivery system that delivered patient care for its members.  CareMax operated 46 clinical centers and employed approximately 1,100 employees who served approximately 260,000 patients across all business lines.  CareMax entered into bankruptcy while Carlos was its CEO and Alberto was its COO.

17.     In February 2025, ClareMedica and its parent company ClareMedica Parent Holdings, LP acquired CareMax's core assets after CareMax declared bankruptcy.  Those assets include a vast majority of CareMax's operating clinics and many physician contracts, including Dr. Cemelus's Employment Agreement.

18.     ClareMedica assumed Dr. Cemelus's contract, in part, because of his longstanding practice and ties to the community where ClareMedica's clinic, acquired from CareMax, is located. Dr. Cemelus is of Haitian-Creole descent, and most of his patients are as well in a region containing

4

many people of that heritage.

**B.     CareMax's Bankruptcy Proceedings and the Assignment of Dr. Cemelus's
Employment Agreement to ClareMedica**

19.     On November 17, 2024 (the "Petition Date"), CareMax and 53 of its affiliates
(collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the
United States Code (the "Bankruptcy Code") along with a prearranged plan that provided for the
sale of substantially all of their assets. These bankruptcy cases were filed in the United States
Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") and were jointly
administered at Case No. 24-80093.[2]

20.     On the Petition Date, in accordance with their obligations to protect personally
identifiable information, the Debtors sought bankruptcy court approval to redact certain personally
identifiable information from their filings in the bankruptcy case.  *See* Case No. 24-80093, ECF
No. 8.  On November 20, 2024, the Bankruptcy Court ordered that in each filing, the Debtors
"redact from any paper filed or to be filed with the Court in these Chapter 11 Cases, including the
Consolidated Creditor Matrix and the schedules and statements, the names, home and email
addresses, and any other personally identifiable information of individuals or any other natural
person." (Redaction Order) ECF No. 78 ¶ 5.

21.     On November 25, 2024—after an extensive marketing process—the Debtors
designated ClareMedica as the Stalking Horse Bidder for certain of their assets.  *See* ECF No. 132.
Those assets were collectively referred to as the "Core Centers Assets" and comprised assets
necessary for operating the Debtors' various outpatient care centers in Florida.  The sale process
included the right of ClareMedica to cause the Debtors to assume and assign the Debtors'

---

[2] All "ECF No." citations are to entries on the Bankruptcy Court docket in Case No. 24-80093.  Those entries are also
available at: https://cases.stretto.com/CareMax/court-docket/.

executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code.

22.     On December 19, 2024, the Bankruptcy Court entered an order approving ClareMedica's designation as Stalking Horse Bidder and established certain bidding procedures. *See* ECF No. 249.  Because no higher or better bids were received, ClareMedica was declared the successful bidder on January 14, 2025.  *See* ECF No. 410.

23.     ClareMedica was required to identify which executory contracts[3] and unexpired leases that it wished to take assignment of as part of the "Core Centers Transaction."  *See* (Joint Chapter 11 Plan) ECF No. 18.  The Debtors were then required to send notices of assumption to applicable counterparties.  *Id.*

24.     The Debtors sent their first notice of assumption on December 19, 2024. Counterparties could file objections to the proposed assumption and assignment by the deadline specified in the notice of assumption, confirmation order, or other court order.  If a counterparty failed to timely object, they were deemed to have assented to the assumption and assignment (and cure amount, if any) to ClareMedica.  *See id.*

25.     On January 17, 2025, the Debtors filed their first plan supplement which contained a schedule of executory contracts and unexpired leases to be assumed and assigned.  *See* ECF No. 419.  On January 31, 2025, the Debtors filed a supplemental notice of cure amounts and assumption and assignment of executory contracts.  *See* ECF No. 588.  Exhibit A to that notice listed various employment agreements.  *See* ECF No. 588-1.  Per the Redaction Order, the Debtors omitted

---

[3] An executory contract is defined as one in which the obligations of both the bankrupt and the other party to the contract are so unperformed that the failure of either to complete performance would constitute a material breach. *See* Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439 (1973).  In essence, a contract is executory if "performance remains due to some extent on both sides." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984); *cf. Matter of Provider Meds, L.L.C.*, 907 F.3d 845, 851 (5th Cir. 2018).  Section 365 of the Bankruptcy Code governs the treatment of executory contracts in bankruptcy.  That section allows a debtor to assume, reject, or assume and assign to a third party any executory contracts or unexpired leases so long as the debtor follows the correct process.

counterparty names from the filed version of that notice, but Dr. Cemelus's name was one of those listed because his Employment Agreement was an executory contract. *See* Ex. B.[4]

26.    Dr. Cemelus received notice that his Employment Agreement was among the ones to be assumed and assigned to ClareMedica; the Debtors' noticing agent sent him a copy of that notice. *See* ECF No. 606 (Certificate of Service for ECF No. 588).[5] His Employment Agreement's cure amount was $0.

27.    That notice required Dr. Cemelus to object to the assumption and assignment of his Employment Agreement in writing by 4:00 p.m. (CT) on February 15, 2025. *See* ECF No. 588 at 3. He filed no such objection.

28.    The Core Centers Transaction closed on February 3, 2025. Under the purchase agreement, ClareMedica had 30 days post-closing to decide which executory contracts of which it wanted to take assignment. *See* (Joint Chapter 11 Plan) ECF No. 18. During those 30 days, ClareMedica did not take Dr. Cemelus's Employment Agreement off the list of executory contracts of which it was taking assignment. Dr. Cemelus's Employment Agreement was, therefore, assumed by the Debtors and assigned to ClareMedica as of February 3, 2025. *See* ECF No. 596.

29.    As ClareMedica assumed, in full, Dr. Cemelus's Employment Agreement, ClareMedica is entitled to all CareMax's benefits and subject to its obligations. Those benefits and obligations include the Employment Agreement's restrictive covenants.

**C.    Dr. Cemelus's Employment Agreement Contains Restrictive Covenants, an Injunctive Relief Stipulation, and a Notice Requirement**

30.    On July 12, 2021, Dr. Cemelus signed an Employment Agreement with Caremax

---

[4] A non-filed version of Exhibit A to the Debtors supplemental notice of cure amounts and assumption and assignment of executory contracts, showing counterparty names, is attached hereto as Exhibit "B." However, counterparty names other than Dr. Cemelus's name have been redacted.
[5] A true and correct copy of the Certificate of Service is attached hereto as Exhibit "H."

Medical Group, LLC and IMCG (collectively the "Group"), as amended October 1, 2024, attached

hereto as Exhibit "A."

31.     The Employment Agreement sets forth the terms of Dr. Cemelus' employment, his

job responsibilities, his compensation, and the terms of his employment. *See* Ex. A.

32.     Dr. Cemelus provides the Group with primary care services for members and other

tasks related to his role as a physician primarily at the medical center located at 4300-4306 West

Broward Boulevard, Plantation, Florida 33317 (the "Plantation III Center"). *See* Ex. A., § 1.2.

33.     ClareMedica acquired the Plantation III Center as part of the CareMax Transaction.

34.     The Employment Agreement contains commitments that are critical conditions to

Dr. Cemelus's employment with the Group, including obligations to not compete, to protect

proprietary and confidential information, and to not solicit patients or employees. *See generally*

Ex. A., § 5.2.

35.     Dr. Cemelus acknowledged these covenants and restrictions in Section 5.2.1 of the

Employment Agreement, which states:

> Employee acknowledges that this Agreement contains restrictive covenants. This
> Agreement contains provisions that protect Group's proprietary and Confidential
> Information and limits Employee's ability to use such information. Employee
> admits and agrees that the restrictions on competition and the use of Confidential
> Information that are described in this Agreement protect Group's legitimate
> business interests and are an essential element of the Employee providing services
> under this Agreement and hereby irrevocably waives (and irrevocably agrees not to
> raise) as a defense any issue of reasonableness (including the reasonableness of the
> Territory or the duration and scope of this Agreement) in any proceeding to enforce
> any provision of this Agreement, the intention of the parties being to provide for
> the legitimate and reasonable protection of the interests of Group, and it affiliates
> by providing for the broadest scope, the longest duration and the widest territory
> allowable by law. Employee understands that the Group has developed, at a
> substantial investment, going concerns that have among their assets Members and
> membership lists of Members, the provider network, contracts, manuals,
> advertising and marketing materials, and other beneficial property. Employee
> acknowledges, admits and agrees that Group has relied upon Employee's
> agreement to comply with the restrictive covenants set forth in this Agreement in

making its decision to engage and contract with Employee. Employee agrees to be
bound by the provisions of this Agreement to the maximum extent permitted by
law. Employee acknowledges and agrees he has read and understand the terms and
conditions of this Agreement prior to its execution.

Ex. A, § 5.2.1.

36.    Section 4.1 of the Employment Agreement outlines Dr. Cemelus's confidentiality

obligations, stating in pertinent part:

In performing the services under this Agreement, Employee may be exposed to and
will be required to use certain "Confidential Information" (as hereinafter defined)
of the Group. Employee agrees that he/she will not, use, directly or indirectly, such
Confidential Information for the benefit of any person, entity or organization other
than the Group, or disclose such Confidential Information without the written
authorization of the President and CEO of the Group (except to Employee's
attorney(s) if needed for legal advice), either during or after the term of this
Agreement, for as long as such information remains confidential.

Ex. A, § 4.1.

37.    Section 5.1 of the Employment Agreement outlines Dr. Cemelus's obligations

regarding conflicts of interest, stating:

Employee covenants and agrees not to provide any services in any manner or
capacity to a direct competitor of the Group during the duration of this Agreement
unless express written authorization to do so is given by the Group's President and
CEO. A direct competitor of the Group for purposes of this Agreement is defined
as any individual, partnership, corporation and/or other business entity that engages
in the business of owning and operating an MCO or medical center (the
"Business"). Without limiting the generality of the foregoing, during Employee's
employment, (i) Employee is not permitted to contract or affiliate with any MCO
or medical center which offers products to members from the same 'Plan' as those
products offered to Members of the Group, (ii) Employee is also forbidden from
contracting or working with any other MCO or medical center which offers any
plan or benefits to Medicare or Medicaid members, and (iii) Employee is required
to inform and must receive written authorization from the Group if Employee
wishes to work in any capacity with another company or entity. The Employee is
hereby agreeing to work exclusively with the Group with respect to its patients and
business and any previous relationships and or contracts entered into by the
Employee with any other MCOs, medical centers, and entities are hereby and or
have been terminated.

Ex. A, § 5.1.

38.     Section 5.2.3 of the Employment Agreements outlines Dr. Cemelus's non-competition and non-solicitation obligations, stating in pertinent part that, for so long as the Employment Agreement is in effect and during a period of twenty-four (24) months following expiration or termination of the Employment Agreement (the "Restricted Period"):

> [T]he Employee shall not, either directly or indirectly:
> (a) Engage, directly or indirectly, whether individually or as an owner, investor, independent employee, partner, member, joint venturer, shareholder, manager, officer, director, employee, agent or licensee, any person in any activities which are competitive with, or the same or similar to, the Business within a fifteen (15) mile radius of any location where the Employee provided Services (the "Territory");
> (b) Divert or attempt to divert, directly or indirectly, business from the Group on behalf of any other person or entity (other than the Group or one of its affiliates) engaged in the Business;
> (c) Direct or indirectly employ or otherwise engage the services of, or cause or solicit any person or entity (other than the Group or one of its affiliates) engaged in the Business to employ or otherwise engage the services of, any employee or agent of the Group or any persons who were employees or agents of the Group during the Restricted Period, or otherwise solicit any such employee or agent to terminate their employment relationship or engagement with the Group;
> (d) Directly or indirectly solicit or cause any patient or Member of the Group during the Restricted Period to terminate or diminish their relationship with the Group or to enter into a similar patient, contractual or business relationship with a person or entity (other than the Group or one of its affiliates) engaged in the Business; or
> (e) Directly or indirectly solicit or cause any suppliers, vendors, third-party payors of, or other persons having a business relationship with the Group during the Restricted Period, to terminate or diminish their relationship with the Group or to enter into any contractual or business relationship with a person or entity (other than the Group or one of its affiliates) engaged in the Business.

Ex. A, § 5.2.3.

39.     Section 5.2.4 of the Employment Agreement outlines Dr. Cemelus's obligations regarding non-disparagement, stating:

> Following the date of this Agreement and regardless of any dispute that may arise in the future, Employee agrees that Employee will not disparage, criticize or make statements which are negative, detrimental or injurious to the Group or its Business,

officers, directors, employees, or agents to any individual, company or client, including within the Group.

Ex. A, § 5.2.4.

40.     Section 5.2.5 of the Employment Agreement states that if the employee violates the restrictive covenants, the Group will not "be deprived of the benefit of the full period of such restrictive covenants," so "any time period that Employee is in violation of the restrictive covenants . . . shall not be included in calculating the applicable periods, including the Restricted Period." Ex. A, § 5.2.5.

41.     Section 5.2.6 states that the restrictive covenants "may be enforced by" any of "the Group's affiliates, successors and assigns and their respective successors and assigns," and the "Group may assign the restrictive covenants . . . in its sole and absolute discretion without the consent of the Employee.  Any assignee or affiliate of Group or such assignee may enforce such rights in its own name in addition to or in lieu of Group." Ex. A, § 5.2.6.

42.     Dr. Cemelus also agreed that breaching the restrictive covenants would "render irreparable harm to the Group" and that "the Group shall therefore be entitled to seek any and all equitable relief, including, but not limited to, injunctive relief, and to any other remedy that may be available under any applicable law or agreement between the parties." Ex. A, § 6.1.

43.     Dr. Cemelus further agreed that the Employment Agreement "shall continue in full force and effect for one (1) calendar year and shall automatically renew for additional successive one-year periods, unless terminated earlier in accordance with the terms described herein," and in the event he wished not to renew the Employment Agreement, he agreed to "notify the Group in writing at least ninety (90) days prior to the end of any then current term." Ex. A. § 3.1.

**D.     The de Solos Interfere with Dr. Cemelus's Contract By Hiring Him And Engaging In Unlawful Competition**

44.     In March 2025, ClareMedica learned that the de Solos started engaging in efforts

to open a competing practice that will provide professional medical services in a primary care clinic setting within the same or similar geographic region as CareMax and ClareMedica (the "Competing Business").  Specifically, ClareMedica learned that the de Solos have taken steps to acquire a medical facility equipped to provide primary care services that is within four (4) miles of ClareMedica's Plantation III Center – which ClareMedica acquired as part of the CareMax Transaction.  ClareMedica has further learned that the de Solos have taken steps to enter an exclusive payor contract with Solis Health Plan in connection with the Competing Business.

45.    Moreover, ClareMedica learned that Dr. Cemelus decided to leave after the de Solos hired him, even though they knew he had a valid Employment Agreement.  The de Solos were expressly aware of the restrictive covenants in the Employment Agreement – as former CEO and COO of CareMax and MHP.  In fact, the de Solos themselves were under restrictive covenants in their original agreements with MHP.

46.    Dr. Cemelus, in conversation with ClareMedica's CEO, initially agreed to extend his contract with ClareMedica on April 16, 2025.  But by April 18, 2025, he u-turned and provided notice to ClareMedica that he was leaving in seven days.

47.    When asked by ClareMedica's CEO why he was leaving, Dr. Cemelus said, on the morning of April 21, 2025, that he had signed an agreement with the de Solos' new company; that he had spoken with Dr. Bert Moreno ("Dr. Moreno"), the former Chief Medical Officer of CareMax who is now supporting the de Solos' efforts to establish the Competing Business, and who spoke to Dr. Cemelus at the de Solos' direction; and that he had learned that the Employment Agreement is purportedly invalid.  Dr. Cemelus said, therefore, that his mind was made up and he did not intend to honor the restrictive covenants in his Employment Agreement.  ClareMedica's CEO made clear his position that Dr. Cemelus was breaching his agreement and if required,

ClareMedica would take legal action to enforce its rights.

48.    On the afternoon of April 21, 2025, ClareMedica's CEO sent Dr. Cemelus an email recapping their conversation and confirming that ClareMedica intends to enforce the Employment Agreement. A true and correct copy of ClareMedica's CEO's email is attached hereto as Exhibit "C." Afterward, Dr. Cemelus sent an email to ClareMedica's CEO and ClareMedica's Human Resources alleging that ClareMedica's CEO threatened "harm to [Dr. Cemelus]" and "even mentioned my family will suffer, and our lives will be miserable." A true and correct copy of Dr. Cemelus's email is attached hereto as Exhibit "D." Dr. Cemelus also relayed that he "w[ould] take the next 2 days off" because of these alleged threats. *Id.* Dr. Cemelus's statements are factually inaccurate and upon information and belief were used to manufacture an excuse for him to violate his Employment Agreement.

49.    Dr. Cemelus holds the mistaken belief that his Employment Agreement is unenforceable because of conversations with the de Solos and/or their agent Dr. Moreno.

50.    Many of Dr. Cemelus's patients are insured by various Medicare Advantage Organizations ("MAO"), involving numerous insurance payors and plans.

51.    Dr. Cemelus's notice of resignation from ClareMedica in seven (7) days (leaving on April 25, 2025), procured by the de Solos, creates a serious problem with continuity of patient care. Among other reasons, the patients that Dr. Cemelus treats are members of various MAO plans for which the de Solos' Competing Business does not yet have payor contracts.

52.    Moreover, ClareMedica has recently learned that Dr. Moreno has contacted certain other of ClareMedica's employed physicians in an effort to recruit them to the de Solos Competing Business.

53.    Based upon ClareMedica's best information, the de Solos have approached,

whether directly or indirectly through Dr. Moreno, at least three (3) employees of ClareMedica with the intention of persuading them to end their employment relationships with ClareMedica and to become employees of the Competing Business.

54.    The de Solos are approaching ClareMedica's physicians despite their personal knowledge of the physicians' non-competes and because they know these physicians, like Dr. Cemelus, have large patient populations in this community.

55.    Further, Defendants have been, and/or will be, soliciting ClareMedica's patients in the same territory in which ClareMedica operates and within the restricted Territory defined in Dr. Cemelus's Employment Agreement. *See* Ex. A, § 5.2.4(a).

### E.    ClareMedica Attempts to Resolve Defendants' Unlawful Conduct Without Judicial Intervention

56.    On March 24, 2025, ClareMedica (by and through its legal counsel) sent a formal, written notice to the de Solos demanding that they cease and desist from their wrongful conduct, including the de Solos' tortious interference with CareMax's contracts and business expectancies (the "de Solo Cease and Desist"). A true and correct copy of the de Solo Cease and Desist is attached hereto as Exhibit "E."

57.    ClareMedica stated its intent to pursue all available rights and remedies relating to the de Solos' tortious interference if their actions did not cease. *See* Ex. E.

58.    The de Solo Cease and Desist afforded the de Solos until March 28, 2025 to confirm, in writing, that they have ceased their unlawful competition and solicitation and will not further pursue their Competing Business. *See id.*

59.    In response to ClareMedica's demand, the de Solos (by and through their legal counsel) have asserted that they have not tortiously interfered with ClareMedica's contractual or advantageous business relationships.

14

60.     Upon the request of the de Solos' counsel, ClareMedica's counsel provided, on April 18, 2025, legal authority for prohibitions of the de Solos' conduct with respect to, *inter alia*, soliciting Dr. Cemelus and ClareMedica's other providers, and seeking to poach ClareMedica's patients. ClareMedica's counsel also provided a list of providers currently under contract with ClareMedica and subject to restrictive covenants, including but not limited to non-competition and non-solicitation obligations with which the de Solos are already familiar. A true and correct copy of ClareMedica's counsel's email is attached hereto as Exhibit "F."

61.     On April 21, 2025, ClareMedica (by and through its legal counsel) sent a formal, written notice to Dr. Cemelus demanding that he cease and desist from his wrongful conduct, including violations of the non-competition, non-solicitation, confidentiality, and notice obligations in the Employment Agreement (the "Cemelus Cease and Desist"). A true and correct copy of the Cemelus Cease and Desist is attached hereto as Exhibit "G."

62.     ClareMedica stated its intent to pursue all available rights and remedies if Dr. Cemelus did not adhere to his Employment Agreement. *See* Ex. G.

63.     The Cemelus Cease and Desist afforded Dr. Cemelus until April 24, 2025 to confirm, in writing, that he will remain at ClareMedica through his notice period of ninety (90) days and that he will not pursue affiliation and/or employment with the de Solos' Competing Business. *See id.*

64.     Despite ClareMedica's demand, Dr. Cemelus has advised he will end his employment no later than April 25, 2025, and intends to start practicing with the de Solos' Competing Business.

65.     Having exhausted all reasonable means to resolve this matter without the Court's involvement, Plaintiff is left with no other recourse but to institute this action for preliminary

injunctive relief to enjoin Defendants from unlawfully competing with Plaintiff and tortiously interfering with Plaintiff's business, and to force Defendants to cease any and all other wrongful conduct.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT (Dr. Cemelus)

66.     Plaintiff realleges the allegations set forth in the above paragraphs and the same are incorporated by reference as if fully set forth herein.

67.     To state a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract, (2) a breach of the contract, and (3) damages that resulted from the breach." *DNA Sports Performance Lab, Inc. v. Club Atlantis Condo. Ass'n, Inc.*, 219 So. 3d 107, 109 (Fla. 3d DCA 2017).

68.     A party is entitled to enforce a restrictive covenant when: (1) there is a writing signed by the person against whom enforcement is sought; (2) there is one or more legitimate business interests justifying the restrictive covenant; (3) the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction; (4) the time restriction is reasonable; and (5) the party has a right to enforce the restrictive covenant.  Fla. Stat. § 542.335(1)(a)–(c), (f).

69.     The Employment Agreement is a valid contract.

70.     The Employment Agreement contains valid non-competition, non-solicitation, and confidentiality provisions that, *inter alia*, prohibit Dr. Cemelus from competing against the Group within the restricted Territory, from directly or indirectly soliciting or causing patients of the Group to terminate or diminish their relationship with the Group, and from using the Confidential Information of the Group for the benefit of any person, entity, or organization other than the Group,

16

without the written authorization of the President and CEO of the Group. *See* Ex. A, §§ 4.1, 5.

71.    A violation of the non-competition, non-solicitation, and confidentiality provisions entitles Plaintiff to injunctive relief without bond by a court of competent jurisdiction. *See* Ex. A, § 6.1.

72.    Dr. Cemelus breached his non-competition obligations under the Employment Agreement by contracting to provide professional medical services for the de Solos' Competing Business within the restricted Territory, during the Restricted Period.

73.    Based on information obtained to date, Dr. Cemelus has or will breach the Employment Agreement by soliciting the Group's patients to terminate or diminish their patient relationships with the Group and transfer their care to the de Solos' Competing Business.

74.    There is likewise concern that Dr. Cemelus has or will breach the Employment Agreement by using the Group's Confidential Information for the benefit of the de Solos and their Competing Business.

75.    Dr. Cemelus has further breached the Employment Agreement by failing to provide ninety (90) days' notice of termination of the Employment Agreement prior to completion of the term and by failing to continue to provide his services for that full ninety (90) days. Those failures severely damage Plaintiff in its ability to provide continuity of care.

76.    As a proximate result of Dr. Cemelus's breaches as described herein, Plaintiff has not only sustained immediate harm but also sustained actual, incidental, and consequential damages in an amount to be proven at trial.

77.    Plaintiff hereby requests all actual damages resulting from, or proximately caused by, Dr. Cemelus's contractual breaches as described herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's

favor against Dr. Cemelus, and award Plaintiff:

A. Temporary and permanent injunctive relief restraining Dr. Cemelus from violating his obligations to not compete, to protect proprietary and confidential information, and to not solicit patients or employees pursuant to the Employment Agreement;

B. Temporary and permanent injunctive relief requiring Dr. Cemelus to abide by the notice provision in the Employment Agreement;

C. Temporary and permanent injunctive relief tolling and/or extending the Restricted Period in Dr. Cemelus's Employment Agreement while this action is pending;

D. Direct, incidental, and consequential damages in an amount to be proven at trial;

E. Pre- and post-judgment interest on all amounts awarded to Plaintiff;

F. Costs and expenses of suit, including attorneys' fees; and

G. Any and all other relief at law or in equity to which Plaintiff is entitled or that this Court deems to be appropriate.

Plaintiff demands trial by jury on all claims so triable.

**COUNT II: TORTIOUS INTERFERENCE WITH
CONTRACTUAL OR ADVANTAGEOUS BUSINESS RELATIONSHIPS (Carlos and
Alberto de Solo)**

78.     Plaintiff realleges the allegations set forth in the above paragraphs and the same are

incorporated by reference as if fully set forth herein.

79.     To state a claim for tortious interference under Florida law, a plaintiff must allege

"(1) the existence of a business relationship that affords the plaintiff existing or prospective legal

rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional

and unjustified interference with the relationship; and (4) damage to the plaintiff." *Aerotek, Inc.*

*v. Zahn*, 625 F. App'x 394, 395 (11th Cir. 2015) (citation and internal quotation marks omitted).

The existence of a business relationship need not be evidenced by an enforceable contract under

which the plaintiff has rights. *Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331 (S.D. Fla. 2001).

80.     Plaintiff had existing contractual and/or advantageous business relationships with its physicians, including but not limited to Dr. Cemelus under which Plaintiff had legal rights through its purchase of CareMax's assets and assignment of employment agreements with such physicians, including but not limited to Dr. Cemelus's Employment Agreement.

81.     By virtue of their former positions as Chief Executive Officer and Chief Operating Officer of CareMax and MHP, the de Solos knew of the relationships that Plaintiff has with its physicians, including but not limited to Dr. Cemelus.

82.     Moreover, the de Solos knew of and/or had constructive knowledge of the terms and conditions of the employment agreements by and between Plaintiff and its physicians, including Dr. Cemelus (the "Known Agreements"), including the terms of the Known Agreements' restrictive covenants.

83.     The Known Agreements are valid contracts.

84.     To promote their own interests and to damage the Plaintiff's business, the de Solos intentionally, and without justification, interfered with Plaintiff's business relationships by attempting to procure a breach of the Known Agreements, and particularly Dr. Cemelus's Employment Agreement.  Such intentional interference with the Known Agreements, and particularly Dr. Cemelus's Employment Agreement, was wrongful, malicious, tortious, improper in motive and means, and conducted without any legitimate business purpose.

85.     The de Solos' conduct has proximately caused, and will continue to cause, Plaintiff to suffer substantial damages in an amount to be determined at trial.

86.     Plaintiff is entitled to injunctive relief and actual, incidental, and consequential

damages including but not limited to present and/or future lost revenues, lost profits, and lost

business opportunities, which Plaintiff is entitled to recover from the de Solos, with pre- and post-

judgment interest, and reasonable attorneys' fees and costs as provided by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's

favor against Carlos and Alberto de Solo, and award Plaintiff:

A. Temporary and permanent injunctive relief restraining the de Solos from tortiously interfering with Plaintiff's contractual and advantageous business relationships with its providers, including but not limited to Dr. Cemelus;

B. Direct, incidental, and consequential damages in an amount to be proven at trial;

C. Pre- and post-judgment interest on all amounts awarded to Plaintiff;

D. Costs and expenses of suit, including attorneys' fees; and

E. Any and all other relief at law or in equity to which Plaintiff is entitled or that this Court deems to be appropriate.

Plaintiff demands trial by jury on all claims so triable.

## **COUNT III: COMMON LAW UNFAIR COMPETITION (Carlos and Alberto de Solo)**

87.    Plaintiff realleges the allegations set forth in the above paragraphs and the same are

incorporated by reference as if fully set forth herein.

88.    Under Florida law, "there is no single set of elements that apply uniformly to all

claims of unfair competition," and as such, "courts have applied elements from other established

claims to unfair competition claims, where appropriate, on a case-by-case basis." *Collier HMA

Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*, No. 218CV408FTM38MRM, 2019 WL

277733, at *12 (M.D. Fla. Jan. 22, 2019) (citations and internal quotation marks omitted).

Accordingly, to state a claim for unfair competition based on tortious interference, a plaintiff must

plead the elements of tortious interference.

20

89.     The foregoing conduct of the de Solos is contrary to honest practice in commercial matters and constitutes an unfair method of competition.  Such conduct includes the de Solos' willful and deliberate tortious interference with Plaintiff's contractual and/or advantageous business relationships with its physicians, including but not limited to Dr. Cemelus, whose employment the de Solos conspired to procure, and did procure, by unfair practices.

90.     The de Solos' conduct has proximately caused, and will continue to cause, Plaintiff to suffer immediate harm and substantial damages in an amount to be determined at trial.

91.     Further, Plaintiff is entitled to injunctive relief, and actual, incidental, and consequential damages including but not limited to present and/or future lost revenues, lost profits, and lost business opportunities, which Plaintiff is entitled to recover from the de Solos, with pre- and post-judgment interest, and reasonable attorneys' fees and costs as provided by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor against Carlos and Alberto de Solo, and award Plaintiff:

A.  Temporary and permanent injunctive relief restraining the de Solos from unfairly competing with Plaintiff;

B.  Direct, incidental, and consequential damages in an amount to be proven at trial;

C.  Pre- and post-judgment interest on all amounts awarded to Plaintiff;

D.  Costs and expenses of suit, including attorneys' fees; and

E.  Any and all other relief at law or in equity to which Plaintiff is entitled or that this Court deems to be appropriate.

Plaintiff demands trial by jury on all claims so triable.

Dated this 25th day of April, 2025.

Respectfully submitted,

*/s/ George S. LeMieux*
George S. LeMieux
Florida Bar No. 16403
Primary Email: glemieux@gunster.com
Secondary Email: mzayas@gunster.com
Gunster, Yoakley & Stewart, P.A.
450 East Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33401
Telephone: 954-462-2000
Facsimile:  954-523-1722

Jorge Zamora Jr.
Florida Bar No. 94713
Email: jzamora@gunster.com
Gunster, Yoakley & Stewart, P.A.
600 Brickell Ave., Suite 3500
Miami, FL 33131
Telephone: 305-376-6000
Facsimile:  305-376-6010

*Counsel for Plaintiff*

## AMENDMENT TO EMPLOYMENT AGREEMENT

THIS AMENDMENT TO EMPLOYMENT AGREEMENT, dated as of October 1, 2024 (the "**Amendment Effective Date**"), by and among Caremax Medical Group, L.L.C., a Florida limited liability company ("**Caremax**"), Managed Healthcare Partners, LLC, a Florida limited liability company ("**MHP**" and together with Caremax, the "**Group**"), and Jones Cemelus, an individual (the "**Employee**"), amends that certain Employment Agreement (this "**Amendment**"), dated as of July 12, 2021, by and between the Group and the Employee (the "**Agreement**"). Capitalized terms used but not defined herein shall have the meanings given to such terms in the Agreement.

### RECITALS:

A. The Parties have entered into the Agreement;

B. The Parties recognize the benefits of coordinating the care of patients, including ensuring that such patients receive care from high quality providers, including pharmacies; and

C. The Group has implemented an incentive bonus program to support such coordination of care initiatives ("**Care Coordination Incentive Program**"), and, pursuant to Section 8.5 of the Agreement, the Group and the Employee hereby desire to amend the Agreement to permit Employee to participate in the Care Coordination Incentive Plan.

**NOW, THEREFORE**, in exchange for the good and valuable consideration set forth in this Agreement, the sufficiency and receipt of which is hereby acknowledged, the Agreement is amended and the Parties agree as follows:

1. Care Coordination Incentive Program. Employee shall be eligible to participate in Care Coordination Incentive Program pursuant to the terms and conditions set forth in Attachment A (Care Coordination Incentive Program) attached hereto and incorporated herein.

2. Termination. The Group may terminate this Amendment with or without cause at any time upon written notice to Employee.

3. Agreement in Full Force and Effect. Except as expressly provided hereby, this Amendment shall not constitute a waiver or amendment of any term or condition of the Agreement or the documents delivered pursuant thereto, and all such terms and conditions shall remain in full force and effect and are hereby ratified and confirmed in all respects.

4. Counterparts. The Parties hereto may execute this Amendment in multiple counterparts, each of which will constitute an original and all of which, when taken together, will constitute one and the same agreement. The Parties hereto may deliver executed signature pages to this Amendment by facsimile, portable document format (.PDF), DocuSign or email transmission. No Party hereto may raise as a defense to the formation or enforceability of this Amendment, and each Party hereto forever waives any such defense, either (a) the use of a facsimile, .pdf, DocuSign or email transmission to deliver a signature or (b) the fact that any signature was signed and subsequently transmitted by facsimile, .pdf, DocuSign or email transmission.

*[Signature page follows]*

J.C

1612993422.4

**Attachment A**

**Care Coordination Incentive Program**

1. <u>Directed Prescription Obligation</u>.  In the event that Employee creates a prescription for a Medicare Advantage patient of the Group (an "MA Patient"), Employee shall use best efforts to cause such prescription to be issued to CareMed Pharmacy LLC dba CareMax Pharmacy ("**CareMax Pharmacy**"); provided, however, that such prescription shall not be issued to CareMax Pharmacy if the MA Patient expresses a preference for another pharmacy, the MA Patient's Medicare Advantage organization determines the pharmacy (and such pharmacy is not CareMax Pharmacy), or issuing the prescription to CareMax Pharmacy is not in the MA Patient's best medical interests in the Employee's judgement.  Employee acknowledges and agrees that Employee shall not cause any prescription to be issued to CareMax Pharmacy if contrary to applicable law.

2. <u>Measurement Period</u>.  Each fiscal quarter beginning with the first fiscal quarter immediately following the Amendment Effective Date.

3. <u>Measurement Goal</u>.  During the applicable Measurement Period, seventy-five percent (75%) or more of all prescriptions for MA Patients created by Employee are issued to CareMax Pharmacy ("**Measurement Goal**").

4. <u>Care Coordination Incentive Bonus</u>.  Subject to the other terms and conditions of this Amendment, in the event that the Measurement Goal is met for the applicable Measurement Period, Employee shall be eligible to earn an incentive bonus in an amount up to 4 percent (4%) of Employee's then-current base salary ("**Care Coordination Incentive Bonus**").  In no event shall Employee's aggregate Incentive Bonuses during any given fiscal year exceed twenty percent (20%) of Employee's base salary for such fiscal year.

5. <u>Payment Conditions</u>.  In order for the Employee to be eligible to earn Care Coordination Incentive Bonus for any applicable Measurement Period, the Employee must be (i) employed by the Group on the first day of the applicable Measurement Period and (ii) employed by and in good standing with the Group at the time the Group pays the Incentive Bonus.  No Care Coordination Incentive Bonus shall be paid to Employee until Group has determined, in its sole disreciton, that all medical records and other information necessary to calculate the Care Cooridnation Incentive Bonus are complete and that such calculations are finalized.  Employee acknowledges and agrees that the Group makes the final determination, in its sole discretion, whether Employee has met the critera for eligibility in the Care Coordination Incentive Program and whether a Care Coordination Incentive Bonus has been earned and is payable to Employee for any Measurement Period. The Care Coordination Incentive Program may be modified or terminated at any time by Group in its sole discretion without prior notice to Employee and according to the terms of such program.

IN WITNESS WHEREOF, the Parties hereto have caused this Amendment to be executed as of the Amendment Effective Date.

GROUP:

**CAREMAX MEDICAL GROUP, L.L.C.**

By: _____
Name: Niberto Moreno, MD
Title:   Chief Medical Officer

**MANAGED HEALTHCARE PARTNERS, LLC**

By: _____
Name: Niberto Moreno, MD
Title:   Chief Medical Officer

EMPLOYEE:

_____
Jones Cemelus, MD

9 - 27 - 2024

1612993422.4

### Physician Employment Agreement

## EMPLOYMENT AGREEMENT

This Employment Agreement (this "Agreement"), dated as 7/12/2021 (the "Effective Date"), is being executed by and between Caremax Medical Group, L.L.C., a Florida limited liability company ("Caremax"), Interamerican Medical Center Group, LLC, a Florida limited liability company and together with Caremax, the "Group"), and Jones Cemulus, M.D., an individual (the "Employee"). Group and Employee are each referred to herein individual as a "Party" and collectively as "Parties".

### RECITALS

A.      The Group owns and operates various medical centers, which are engaged in the business of rendering medical services through medical professionals licensed to practice medicine in the State of Florida;

B.      Employee is a physician duly authorized and licensed to practice medicine in the State of Florida and subject to the rules and standards of the profession in the State of Florida; and

C.      Group desires to employ Employee, and Employee desires to be employed by Group, pursuant to the terms and conditions set forth in this Agreement.

**NOW, THEREFORE,** in exchange for the good and valuable consideration set forth in this Agreement, the sufficiency and receipt of which is hereby acknowledged, the parties agree as follows:

### ARTICLE 1
### SCOPE OF WORK

**1.1     Recitals.** The parties represent that the statements in the above recitals are true and correct to the best of their knowledge and are incorporated, by reference into this Agreement.

**1.2     Services.** The Group has engaged Employee to provide services in connection with the Group's business which is primarily that of a medical practice which has entered into agreements

1

with other managed services organizations, health maintenance organizations, and providers (the "MCOs"), for the provision of health care services to certain individuals who have been enrolled in a health services plan offered by the applicable MCO's in which the individuals are enrolled (the "Members") . Employee will provide the Group with primary care and related ancillary services, including, without limitation those services set forth on <u>Schedule A</u> hereto and such other additional duties which may present themselves from time to time (collectively, the "Services"), to Members as a licensed physician with the State of Florida primarily at the medical center(s) located at: 4300-4306 W. Broward Blvd, Plantation, FL 33317, and  such other medical centers owned by the Group as requested by the Group in its reasonable discretion.

**1.3    Time and Availability.**  Employee shall provide his entire working time and attention as a physician to the provision of medical services on behalf of Group and devote all the necessary time required by an employee which performs like services which have been described above and to the promotion of the affairs and best interests of the Group.  Employee shall retain independent judgment as it relates to the Services and care of individual patients.  On occasion the Employee will be asked to work additional time which will be mutually agreed upon by the parties. Employee shall not accept an engagement to provide professional medical or consulting services (including moonlighting, marketing and/or retention as an expert witness) whether as an employee, partner, associate, shareholder, independent contractor, or in any other capacity, indirectly or directly, without the prior written consent of Group. Except as otherwise agreed in writing by Group, all remuneration and accounts receivable arising from or related to Employee's provision of any professional, medical or consulting services and dispensing of pharmaceuticals are the property of Group and Employee agrees to take all reasonable actions requested by Group to assist in the collection of accounts receivable for such services provided by Employee and Employee agrees to provide and/or endorse over to Group any such remuneration immediately after it is received by Employee.

**1.4    Absence of Restrictions.** Employee represents and warrants to Group that Employee's execution of this Agreement and performance of the services contemplated hereunder does not violate the provisions of any agreements, written or oral, to which Employee is or was a party, including, but not limited to, any restrictive covenants. Further, Employee indemnifies and holds harmless Group from and against, any and all claims, liabilities and costs of any kind that Group incurs as a result of

2

Group's violation of any such agreements due to Group entering into this Agreement or performing the services required hereunder.

1.5    **Assignment of Fees.** Employee hereby agrees that Group shall have the exclusive authority to determine the fees to be charged to all patients. Employee hereby assigns all fees by or on behalf of Employee to Group. Employee's sole compensation is defined in Article 2 below.

1.6    **Other Rules and Regulations.** Employee shall fully comply with all applicable provisions of federal and Florida law, and other rules and regulations of all governmental authorities relating to licensure, registration, and regulation of physicians, as well as relevant recommendations of applicable accrediting organizations. Employee shall at all times during the term of this Agreement be eligible to and participate in the Medicare and Medicaid programs. Employee shall not take any action that would jeopardize Group's license(s) or status as a participating Medicare or Medicaid provider of services.

1.7    **Third-Party Payor Agreements.** Employee acknowledges that Group realizes a significant portion of its revenues through Third-Party Payor Agreements (defined below) and that such Third-Party Payor Agreements are valuable assets of the Group and Employee shall not act or fail to act in any manner which could impair or diminish the effectiveness or value of any Third-Party Payor Agreement, or the relationship between the Group and any Third-Party Payor. Further, Employee will execute any Third-Party Payor Agreement(s) reasonably requested by Group necessary to allow Employee to render medical services pursuant to such Third-Party Payor Agreement. Further, Employee will comply with any requirements for credentialing or renewal of credentialing necessary to render medical services pursuant to any Third-Party Payor Agreement. "Third-Party Payor Agreement" means any contractual arrangement entered into by Group, or any physician employed or engaged by Group, with Medicare, Medicaid, or any other state or federally funded insurance program, any HMO, PPO, EPO, insurance company, insurance plan, managed care plan, employer, union, self-funded employer insurance plan, or similar entity responsible for payment in whole or in part, of medical services or items rendered or provided to patients treated by Group.

**1.8    Required Reporting by Employee.**

1.8.1 Employee will notify Group in writing within two (2) working days of being notified that any report has been filed with the Florida Board of Medicine or with the National Practitioner Data Bank regarding Employee.

1.8.2 Employee will notify Group in writing within two (2) working days of being served with a summons, complaint, written claim, or other document alleging professional negligence or other injury arising from medical practice, during employment with Group.

1.8.3 Employee will orally notify Group immediately, and in writing within two (2) days, of any event that raises a reasonable probability that it will result in a legal claim or action against Employee.

1.8.4    Employee will orally notify Group immediately, and in writing within two (2) days, of any arrest, indictment or conviction for anything other than a misdemeanor motor vehicle license infraction.

1.8.5    Employee will orally notify Group immediately, and in writing within two (2) days, upon the occurrence of any exclusion, disbarment or suspension from, or ineligibility in the Medicare or Medicaid program.

# ARTICLE 2
## COMPENSATION AND BENEFITS

**2.1 Compensation.**  Effective 4/15/24, Employee shall be compensated at an annual rate of Two Hundred and Sixty Thousand Dollars ($260,000) as compensation for the Services payable in accordance with the Group's payroll practices. Employee is eligible to participate in a performance bonus program for up to twenty (20) percent of the base salary, which program may be modified or terminated at any time by Group in its sole discretion and according to the terms of such program(s).

**2.2 Benefits.**  The Employee will be eligible to participate in a benefits program. The benefits program is inclusive of medical insurance, malpractice insurance, access to dental and vision insurance, access to disability insurance, and the option to participate in the Group's 401K program if it is available.  All benefits are subject to change and modification (including termination) by Group at any time without notice.

## ARTICLE 3
## TERM AND TERMINATION

**3.1 Term.** This Agreement shall be effective as of the Effective Date, and shall continue in full force and effect for one (1) calendar year and shall automatically renew for additional successive one-year periods, unless terminated earlier in accordance with the terms described herein. If Employee wishes to not renew this Agreement, Employee shall notify the Group in writing at least ninety (90) days prior to the end of any then current term.

**3.2 Termination.**

**3.2.1** The Group may immediately terminate this Agreement for "Cause". For purposes of this Agreement, the term "Cause" means: (1) Employee has breached the provisions of Article 4 or 5 of this Agreement in any respect, or materially breached any other provision of this Agreement and the breach continues for 10 days following receipt of a written notice from the Group; (2) Employee has committed fraud, misappropriation or embezzlement in connection with the Group's business; (3) Employee's criminal indictment or conviction (including a plea of guilty or *nolo contendere)* for a felony or a first degree misdemeanor, other than a driving-related misdemeanor; (4) Employee's use of narcotics, liquor or illicit drugs that has a detrimental effect on the performance of their responsibilities, as determined by the Group; (5) a good faith determination by Group that continuation of Agreement may result in danger to the health, safety or welfare of any Member; (6) the disqualification of the Employee to practice medicine due to restriction, suspension or loss of Employee's licensure in the State of Florida; (7) the inability of the Employee, for any reason, to render services contemplated herein for ten consecutive days that Employee is required to perform services; (8) the death of the Employee; (9) Employee's lack of acceptance or loss of credentials with any Management Services Organization, insurance company or Third Party Payor; (10) Employee's suspension, termination from, or sanction in connection with Medicare or Medicaid; (11) Employee's inability to obtain or maintain malpractice liability insurance, or any conduct by Employee that endangers such insurability; (12) suspension, revocation, or material limitation of Employee's membership, with appropriate clinical privileges, on the medical staff of any hospital, or the medical staff of any other health care facility that Employee becomes affiliated with at the request of Group; (13) Employee's failure to comply with the "reporting" requirements set forth in Section 1.8 above; (14) conduct of Employee which is adverse to the business interests, reputation or goodwill of Group or which may cause harm to the health, safety or welfare

5

of patients;    (15) the restriction, suspension or termination (whether with probation or without) of any registration number of or authority given by the U.S. Drug Enforcement Administration or Florida Board of Pharmacy for Employee to prescribe or dispense prescription drugs, including controlled substances; (16) Employee's breach, default, violation or failure to cooperate and comply with any of the provisions of this Agreement and the breach continues for a period of 10 days following receipt of written notice from the Group; (17) Employee's failure to take the American Board of Medical Specialties ("ABMS") board certification examination for Employee's specialty at the first available examination opportunity, if Employee is a graduate of a residency program accredited by the Accreditation Council for Graduate Medical Education ("ACGME"), and Employee is not certified by the ABMS on the Effective Date; (18) Employee's failure to pass the ABMS board certification exam for Employee's specialty within two years of having graduated from a residency program accredited by the ACGME; or (19) if Employee is certified by the ABMS on the Effective Date, Employee's failure to maintain ABMS board certification at all times during the term of this Agreement.

**3.2.2** The Group may terminate this Agreement without cause at any time by giving the Employee written notice of the same at least fifteen (15) days in advance, provided that Group may terminate this Agreement with less than fifteen (15) days-advance notice if Group pays Employee his/her Compensation for the remainder of the 15-day notice period.

**3.2.3** This Agreement shall immediately terminate upon the death of Employee.

**3.3 Responsibility upon Termination.**    Any equipment provided by the Group to the Employee in connection with or in furtherance of Employee's Services, including, but not limited to, computers, laptops, and personal management tools, shall, immediately upon the termination of this Agreement, be returned to the Group.  If this Agreement is terminated for any reason, Group's sole monetary obligation to Employee (or to his or her estate) shall be the payment of any earned but unpaid Compensation. Notwithstanding the foregoing, any and all outstanding loans, debts and obligations owed by Employee to Group shall be offset against any amounts owed to Employee pursuant to this Section 3.3.

**3.4 Survival.**    The provisions of Articles 4, 5, and 6 of this Agreement shall survive the termination of this Agreement and remain in full force and effect thereafter.

6

## ARTICLE 4

## CONFIDENTIAL INFORMATION; PROPERTY RIGHTS

**4.1 Obligation of Confidentiality.** In performing the services under this Agreement, Employee may be exposed to and will be required to use certain "Confidential Information" (as hereinafter defined) of the Group. Employee agrees that he/she will not, use, directly or indirectly, such Confidential Information for the benefit of any person, entity or organization other than the Group, or disclose such Confidential Information without the written authorization of the President and CEO of the Group (except to Employee's attorney(s) if needed for legal advice), either during or after the term of this Agreement, for as long as such information remains confidential.

Pursuant to the Defend Trade Secrets Act of 2016, Employee acknowledges that Employee shall not have criminal or civil liability under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, if Employee files a lawsuit for retaliation by the Company for reporting a suspected violation of law, Employee may disclose the trade secret to Employee's attorney(s) and may use the trade secret information in the court proceeding, if Employee (X) files any document containing the trade secret under seal and (Y) does not disclose the trade secret, except pursuant to court order.

**4.2 Definition.** "Confidential Information" means information, not generally known, and proprietary to the Group or to a third party for whom the Group is performing work, including, without limitation, information concerning any Member personal information, Member lists, Member telephone lists, Member eligibility reports, contracts, patents or trade secrets, plans, research and development, analysis, techniques, marketing materials or designs (whether or not patented or patentable), directly or indirectly useful in any aspect of the business of the Group, any MCO

lists/names, contracts, databases, management systems and sales and marketing plans of the Group, or any other confidential information or proprietary aspects of the business of the Group. All information which Employee acquires or becomes acquainted with during the period of this Agreement, whether developed by Employee or by others, which Employee has a reasonable basis to believe to be Confidential Information, or which is treated by the Group as being Confidential Information, shall be presumed to be Confidential Information.

**4.3 Property of the Group.** Employee agrees that all plans, manuals and specific materials developed by the Employee, if any, on behalf of the Group in connection with services rendered under this Agreement, are and shall remain the exclusive property of the Group. Promptly upon the expiration or termination of this Agreement, or upon the request of the Group, Employee shall return to the Group all documents and tangible items, including samples, provided to Employee or created by Employee for use in connection with services to be rendered hereunder, including without limitation all Confidential Information, together with all copies and abstracts thereof.

**4.4  Intellectual Property.**

 **4.4.1   Disclosure of Inventions.** Employee will promptly disclose in confidence to the Group all inventions, improvements, processes, products, designs, original works of authorship, formulas, processes, compositions of matter, computer software programs, Internet products and services, e-commerce products and services, e-entertainment products and services, databases, mask works, trade secrets, product improvements, product ideas, new products, discoveries, methods, software, uniform resource locators or proposed uniform resource locators ("URLs"), domain names or proposed domain names, any trade names, trademarks or slogans, which may or may not be subject to or able to be patented, copyrighted, registered, or otherwise protected by law (the "Inventions") that Employee makes, conceives or first reduces to practice or creates, either alone or jointly with others, during the period of Employee's employment, whether or not in the course of Employee's employment, and whether or not such Inventions are patentable, copyrightable or able to be protected as trade secrets, or otherwise able to be registered or protected by law.

**4.4.2    Assignment of Company Inventions; Work for Hire**.  Employee agrees that all Inventions that (i) are developed using equipment, supplies, facilities or trade secrets of the Group, (ii) result from work performed by Employee for the Group, or (iii) relate to the Group's business or current or anticipated research and development (the "Company Inventions"), will be the sole and exclusive property of the Group and are hereby irrevocably assigned by Employee to the Group from the moment of their creation and fixation in tangible media. Employee further acknowledges and agrees that any copyrightable works prepared by Employee within the scope of Employee's employment are "works for hire" under the Copyright Act and that the Group will be considered the author and owner of such copyrightable works.

**4.4.3    Assignment of Other Rights**.  In addition to the foregoing assignment of Company Inventions to the Group, Employee hereby irrevocably transfers and assigns to the Group: (i) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights in any Company Invention; and (ii) any and all "Moral Rights" (as defined below) that Employee may have in or with respect to any Company Invention.  Employee also hereby forever waives and agrees never to assert any and all Moral Rights Employee may have in or with respect to any Company Invention, even after termination of Employee's work on behalf of the Group.  "Moral Rights" means any rights to claim authorship of an Company Invention, to object to or prevent the modification of any Company Invention, or to withdraw from circulation or control the publication or distribution of any Company Invention, and any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

**4.4.4    Assistance**.  Employee agrees to assist the Group in every proper way to obtain for the Group and enforce patents, copyrights, mask work rights, trade secret rights and other legal protections for the Company Inventions in any and all countries.  Employee will execute any documents that the Group may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections.  Employee's obligations under this section will continue beyond the termination

of Employee's employment with the Group, provided that the Group will compensate Employee at a reasonable rate after such termination for time or expenses actually spent by Employee at the Group's request on such assistance.  Employee appoints the officers of the Group as Employee's attorney-in-fact to execute documents on Employee's behalf for this purpose.

## ARTICLE 5
## CONFLICT OF INTEREST, NON-SOLICITATION, AND NON-COMPETITION

**5.1 Conflict of Interest.**  Employee covenants and agrees not to provide any services in any manner or capacity to a direct competitor of the Group during the duration of this Agreement unless express written authorization to do so is given by the Group's President and CEO. A direct competitor of the Group for purposes of this Agreement is defined as any individual, partnership, corporation and/or other business entity that engages in the business of owning and operating an MCO or medical center (the "Business").   Without limiting the generality of the foregoing, during Employee's employment, (i) Employee is not permitted to contract or affiliate with any MCO or medical center which offers products to members from the same 'Plan' as those products offered to Members of the Group, (ii) Employee is also forbidden from contracting or working with any other MCO or medical center which offers any plan or benefits to Medicare or Medicaid members, and (iii) Employee is required to inform and must receive written authorization from the Group if Employee wishes to work in any capacity with another company or entity.  The Employee is hereby agreeing to work exclusively with the Group with respect to its patients and business and any previous relationships and or contracts entered into by the Employee with any other MCOs, medical centers, and entities are hereby and or have been terminated.

**5.2 Non-Competition; Non-Solicitation.**

**5.2.1** Employee acknowledges that this Agreement contains restrictive covenants.  This Agreement contains provisions that protect Group's proprietary and Confidential Information and limits Employee's ability to use such information.  Employee admits and agrees that the restrictions on competition and the use of Confidential Information that are described in this Agreement protect Group's legitimate business interests and are an essential element of the Employee providing services

under this Agreement and hereby irrevocably waives (and irrevocably agrees not to raise) as a defense any issue of reasonableness (including the reasonableness of the Territory or the duration and scope of this Agreement) in any proceeding to enforce any provision of this Agreement, the intention of the parties being to provide for the legitimate and reasonable protection of the interests of Group, and it affiliates by providing for the broadest scope, the longest duration and the widest territory allowable by law.  Employee understands that the Group has developed, at a substantial investment, going concerns that have among their assets Members and membership lists of Members, the provider network, contracts, manuals, advertising and marketing materials, and other beneficial property.  Employee acknowledges, admits and agrees that Group has relied upon Employee's agreement to comply with the restrictive covenants set forth in this Agreement in making its decision to engage and contract with Employee.  Employee agrees to be bound by the provisions of this Agreement to the maximum extent permitted by law.  Employee acknowledges and agrees he has read and understand the terms and conditions of this Agreement prior to its execution.

5.2.2  In the event any term, covenant or provision of this Agreement or the application thereof to a person or circumstance shall be to any extent illegal, invalid or unenforceable, the remainder thereof and the application of such term, covenant or provision to persons or circumstances other than those as to which it is held illegal, invalid or unenforceable shall not be affected thereby, and each term, covenant or provision of this Agreement shall be valid and enforceable to the full extent permitted by law.

5.2.3  As a material inducement for the Group to enter into this Agreement and continue to employ the Employee and provide the Employee with the compensation and benefits set forth herein, the Employee agrees that during the term of this Agreement and for a period of twenty-four (24) months following expiration or termination of this Agreement for any reason (the "Restricted period"), regardless of the reason for termination of the Agreement including, without limitation, any claim against the Group or any other party, the Employee shall not, either directly or indirectly:

(a)  Engage,  directly or indirectly, whether individually or as an owner, investor, independent employee, partner, member, joint venturer, shareholder, manager, officer, director, employee, agent or licensee, any person in any activities which are

competitive with, or the same or similar to, the Business within a fifteen (15) mile radius of any location where the Employee provided Services (the "Territory");

**(b)**    Divert or attempt to divert, directly or indirectly, business from the Group on behalf of any other person or entity (other than the Group or one of its affiliates) engaged in the Business;

**(c)**    Direct or indirectly employ or otherwise engage the services of, or cause or solicit any person or entity (other than the Group or one of its affiliates) engaged in the Business to employ or otherwise engage the services of, any employee or agent of the Group or any persons who were employees or agents of the Group during the Restricted Period, or otherwise solicit any such employee or agent to terminate their employment relationship or engagement with the Group;

**(d)**    Directly or indirectly solicit or cause any patient or Member of the Group during the Restricted Period to terminate or diminish their relationship with the Group or to enter into a similar patient, contractual or business relationship with a person or entity (other than the Group or one of its affiliates) engaged in the Business; or

**(e)**    Directly or indirectly solicit or cause any suppliers, vendors, third-party payors of, or other persons having a business relationship with the Group during the Restricted Period, to terminate or diminish their relationship with the Group or to enter into any contractual or business relationship with a person or entity (other than the Group or one of its affiliates) engaged in the Business.

**5.2.4**    Following the date of this Agreement and regardless of any dispute that may arise in the future, Employee agrees that Employee will not disparage, criticize or make statements which are negative, detrimental or injurious to the Group or its Business, officers, directors, employees, or agents to any individual, company or client, including within the Group.

**5.2.5**    The restrictive covenants set forth herein shall apply for the applicable periods set forth in this Agreement.  If Employee violates such restrictive covenants and Group or any of

Group's affiliates brings legal action for injunctive or other relief, such party bringing the action shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of such restrictive covenants. Accordingly, for any time period that Employee is in violation of the restrictive covenants, such time period shall not be included in calculating the applicable periods, including the Restricted Period.

**5.2.6**    All of the Group's affiliates, successors and assigns and their respective successors and assigns are third-party beneficiaries of the restrictive covenants and this Article 5. The restrictive covenants and this Article 5 are intended for the benefit of, and may be enforced by, any of the foregoing. Employee agrees and acknowledges that notwithstanding anything in this Agreement to the contrary, Group may assign the restrictive covenants and this Article 5 in its sole and absolute discretion without the consent of Employee. Any assignee or affiliate of Group or such assignee may enforce such rights in its own name in addition to or in lieu of Group.

**5.2.7**    The parties have attempted to restrict Employee's rights only to the extent necessary to protect Group from unfair competition. However, should a court of competent jurisdiction determine that the scope of the covenants contained in this Agreement exceeds the maximum restrictiveness such court deems reasonable and enforceable, the Parties intend that the court should reform, modify and enforce the provision(s) to such narrower scope as it determines to be reasonable and enforceable under the circumstance existing at the time.

## ARTICLE 6
### RIGHT TO INJUNCTIVE RELIEF/LIQUIDATED DAMAGES

**6.1**    **Injunctive Relief; Liquidated Damages.**  Employee acknowledges that the terms of Articles 4 and 5 of this Agreement are reasonably necessary to protect the legitimate interests of the Group, are reasonable in scope and duration, and are not unduly restrictive. Employee further acknowledges that a breach of any of the terms of Articles 4 and 5 of this Agreement will render

13

irreparable harm to the Group, and that a remedy at law for breach of the Agreement is inadequate, and that the Group shall therefore be entitled to seek any and all equitable relief, including, but not limited to, injunctive relief, and to any other remedy that may be available under any applicable law or agreement between the parties. Employee acknowledges that an award of damages to the Group does not preclude a court from ordering injunctive relief. Both damages and injunctive relief shall be proper modes of relief and are not to be considered as alternative remedies.

Without limiting any other rights of a party under this Agreement and without limiting any other remedies available to a party as a result of a breach of this, in the event a Employee breaches any of his/her obligations under Articles 4 or 5 resulting, directly or indirectly, in a patient/Member of one of the plans of the Group entering into a patient, contractual or business relationship with a person or entity (other than the Group or one of its affiliates) engaged in the Business within the Territory, the Employee shall pay to the Group, as liquidated damages, the sum of Five Thousand Dollars ($5,000) per each such patient/Member.  Each party agrees that it would be impracticable and extremely difficult to ascertain the actual damages suffered by any of the parties as a result of a Party's failure to comply with the terms of Sections 4, 5  and 6 of this Agreement and the resulting relationship with such patients, and that under the circumstances existing as of the date of this Agreement, the liquidated damages provided for in this Article represent a reasonable estimate of damages which the claiming party would incur as a result of such breach to the extent it relates to such patients/Members.  The parties acknowledge that the payment of such liquidated damages is not intended as a forfeiture or penalty but is intended to constitute liquidated damages to the non-breaching party.  As a material inducement for each party to enter into this Agreement, each other party agrees, on its behalf, and on behalf of its affiliates, to waive any and all rights whatsoever to contest the validity of such liquidated damage provision for any reason whatsoever, including, without limitation, that such provision was unreasonable under circumstances existing at the time this Agreement was made.  In addition to the foregoing, the parties shall have the right to have the provisions of Articles 4 and 5 specifically enforced by any court having equity jurisdiction, through specific enforcement, injunctive or other relief (without any bond or security being required to be posted), it being acknowledged that any such breach or threatened breach will cause irreparable injury to the claiming party, the amount of which will be difficult to determine, and that money damages will not provide an adequate remedy to the Group.

14

# ARTICLE 7
## COMPLIANCE/HEALTHCARE REGULATORY

**7.1    Compliance with Protocols.**    Employee shall cooperate and comply with the reasonable protocols of the Group, which include, but are not limited to:

(a)    All Group protocols as established or modified by Group from time to time relating to the provision of Services to Members.

(b)    Any provider manual and credentialing plan, as amended, restated or modified from time to time.

(c)    Employee shall maintain complete, accurate and truthful business and medical records, including, without limitation, those service records necessary for the purpose of recording services, charges, dates and all other information relevant to the rendering of services to Members under this Agreement, financial and corporate books and records, and such other books, documents and records required to be maintained by federal and/or state law, licensing and reimbursement entities and in accordance with accepted medical practice and Group standards or which are otherwise reasonably requested by the Group (the "Records").  The Records shall be made available, upon request, for inspection by the Group applicable governmental agencies, and their authorized representatives in accordance with the terms of this Agreement and any applicable federal and state law and/or regulation. Employee acknowledges that the Group is the owner of the Records.

**7.2    Excluded Individuals.**  Employee is not, and is prohibited from contracting with an individual who is, excluded from participation in Medicare under the Social Security Act (or with an entity that employs or contracts with such an individual) for the provision of any of the following: (1) healthcare; (2) utilization review; (3) medical social work; or (4) administrative services.

**7.3    Laws and Regulations**.  Employee shall maintain, without material restriction, all applicable federal, state and local licenses, certifications and permits which are required to fulfill his/her obligations under this Agreement and applicable law and/or regulation.  Employee shall comply with all applicable Medicare laws, regulations and CMS instructions, and all applicable federal, state and local laws, rules and regulations including, but not limited to, the Health Insurance

15

Portability and Accountability Act of 1996 and all regulations promulgated thereunder ("HIPAA"), Title VI of the Civil Rights Act of 1964, the Age Discrimination Act of 1975, and the Americans with Disabilities Act, each as amended from time to time. Employee shall cooperate with the MCOs in all efforts to comply with the laws, regulations and other requirements of applicable regulatory authorities.

7.4    **Maintenance and Accuracy Records**. Employee shall maintain adequate medical, financial and administrative records related to the services rendered by Employee under this Agreement in an accurate and timely manner.

## ARTICLE 8
## GENERAL PROVISIONS

8.1    **Construction of Terms.** If any provision of this Agreement is held unenforceable by a court of competent jurisdiction, that provision shall be severed and shall not affect the validity or enforceability of the remaining provisions.

8.2    **Governing Law and Venue.** This Agreement shall be governed by and construed in accordance with the internal laws (and not the laws of conflicts) of the State of Florida. The Group and Employee acknowledge and agree that the courts in and for Miami-Dade County, Florida, shall be the venue and exclusive proper forum in which to adjudicate any case or controversy arising either, directly or indirectly, under or in connection with this Agreement.

8.3    **Enforcement Costs.** In the event of any controversy arising under or relating to the interpretation or implementation of this Agreement or any breach thereof, the Group shall be entitled to recover all court costs, expenses, and reasonable attorneys' fees (including, without limitation, all pre-trial, trial and appellate proceedings) incurred in that action or proceeding, in addition to any other relief to which the Group may be entitled.

8.4    **Complete Agreement.** This Agreement constitutes the complete agreement and sets forth the entire understanding and agreement of the parties as to the subject matter of this Agreement and supersedes all prior discussions and understandings in respect to the subject of this Agreement, whether written or oral.

**8.5**     **Modification.**  No modification, termination or attempted waiver of this Agreement, or any provision thereof, shall be valid unless in writing signed by the party against whom the same is sought to be enforced.

**8.6**     **Notices**.  All notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and hand delivered or sent to the applicable address set forth below, and shall be deemed to have been given (i) if personally delivered, on the date of delivery, (ii) if delivered by next-day courier service of national standing (with charges prepaid), on the Business Day following the date of delivery to such courier service for next day delivery, or (iii) if deposited in the United States mail, first class postage prepaid, on the fifth Business Day following the date of such deposit,; in each case, provided the relevant transmission report indicates a full and successful transmission.  For purposes of this Agreement the term "Business Day" means any day except Saturday, Sunday or any other day on which banks in the State of Florida are closed for business.

> If to Group:          1000 NW 57 Court, Suite 400
>                       Miami, FL 33126
>                       Attention:  CEO and General Counsel
>                       Email Address: carlos@caremax.net and
>                       jdevera@caremax.net
>
> With a copy to (which shall not constitute notice):
>
>                       DLA Piper LLP (US)
>                       200 S. Biscayne Blvd., St. 2500
>                       Miami, Florida 33131
>                       Attention: Russell Sass
>                       Email Address: Russell.Sass@us.dlapiper.com
>
> If to Employee:       At the most recent address on file in the records of Group

8.7  **Waiver of Breach.**  The waiver by a party of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any other or subsequent breach by the party in breach.  The Employee shall not be permitted to assert the defense of

"unclean hands" in any action to enforce any obligation of this Agreement unless: (i) while actively employed by the Group and before the termination of his employment with the Group, the Employee notified the Group in writing and in detail of the conduct allegedly constituting or underlying such defense, and (ii) the Employee gave the Group thirty (30) days in which to cure such conduct.

8.8    **Successors and Assigns.**  This Agreement may not be assigned by Employee without the prior written consent of the Group but may be assigned by Group (and by Employee's signature below, Employee agrees to any such assignment). The benefits and obligations of this Agreement shall be binding upon and inure to the parties hereto, their successors and assigns.

8.9    **No Conflict.**  Employee warrants that Employee has not previously assumed any obligations inconsistent with those undertaken by Employee under this Agreement.

8.10    **Indemnification.**  Employee agrees to indemnify and hold harmless, Group from any and all claims, damages, costs, causes of action, expenses or liabilities, to the extent, directly or indirectly caused by, or which may arise out of and/or be incurred in connection with, any negligent or other wrongful conduct (including breach of this Agreement) arising from this Agreement or caused by Employee, or through an agent.  Employee agrees to indemnify and hold Members, MCO and Group harmless from and against any and all debts of Employee.  This provision shall survive the termination of this Agreement, including any termination due to insolvency of Group or MCO.

8.11    **Non-Discrimination**. Employee shall treat all patients in the same respectful manner without regard to race, age, sex, national origin, religion, health, insurance or medical benefits program.

8.12    **Regulatory Amendment**.  Group may amend, restate or modify this Agreement from time to time to comply with the requirements of state and federal regulatory authorities and/or applicable laws and/or regulations, and shall give written notice to Employee of such amendment, restatement or modification and its effective date.  Unless such regulatory authorities and/or law and/or regulation direct otherwise, the signature of Provider will not be required.

18

8.13    **Conflicts**.  In the event any provision of this Agreement conflicts with any provision of Group's agreement with an MCO, the provision(s) in Group's agreements with the applicable MCO shall prevail and such conflicting provision(s) in this Agreement shall be modified accordingly. Any term contained in this Agreement which is in conflict with the requirements of the applicable Medicare and/or Medicaid programs provisions shall be null and void and shall be modified and deemed modified to comply with the applicable provisions of the Medicare and/or Medicaid program provisions.

8.14    **CLASS ACTION WAIVER.**  ANY DISPUTE OF ANY CLAIM ARISING FROM OR RELATING TO THIS AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS WITHOUT RESORT TO ANY FORM OF CLASS OR REPRESENTATIVE ACTION (THE "CLASS ACTION WAIVER"). THE CLASS ACTION WAIVER PRECLUDES ANY PARTY FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CLAIM ARISING FROM OR RELATING TO THIS AGREEMENT.

8.15    **Waiver of Trial by Jury.**  EACH PARTY HEREBY WAIVES ITS RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING IN CONNECTION WITH ANY MATTER RELATING TO THIS AGREEMENT.

8.16    **Consent.** Employee consents to the use by Group of Employee's name and photo, education, training and work experience in Group's marketing, promotional and informational material including without limitation Group's website.

8.17    **Counterparts; Effectiveness**.  This Agreement may be executed in any number of counterparts, and by PDF or other electronic means, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  This Agreement shall become binding when the counterparts hereof, taken together, bear the signatures of all of the parties reflected hereon as the signatories.

8.18    **Gender and Number.** Whenever the context requires, the gender of all words shall include the masculine, feminine and neuter, and the number of all words shall include the singular and plural.

8.18    **Independent Representation.** The Parties are aware that they have the right to have the benefit of independent counsel and representation and are encouraged to do so with respect this Agreement.

*[Signature Page to Follow]*

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set forth above.

**GROUP:**

**CAREMAX MEDICAL GROUP, L.L.C.**

By: _Nberto Moreno_____
Name: Niberto Moreno, MD
Title:   Chief Medical Officer

**INTERAMERICAN MEDICAL CENTER GROUP, LLC**

By: _Nberto Moreno_____
Name: Niberto Moreno, MD
Title:   Chief Medical Officer

**EMPLOYEE:**

_Jones Cemelus_____
Jones Cemelus, MD

## SCHEDULE A

### GENERAL PHYSICIAN DUTIES AND RESPONSIBILITIES

Summary:

Provide high quality care for patients with acute and chronic medical conditions in

accordance with evidence based medicine.

Responsibilities:

- Evaluate and establish plans of care for all patients following evidence based medicine, to provide high quality of care and the practice of cost-effective care.
- Practice accuracy of medical record documentation to reflect the reason for the patient visit, history of the present illness, review of symptoms, physical exam and a plan of treatment for each condition.
- Review and sign all consultation reports and diagnostic tests and implement the appropriate plan of care.
- Document all patient evaluations, treatments, medications and transactions in support of services rendered and according to company policies and procedures
- Complete and electronically sign all progress notes daily.
- Prevent diseases and complications of diseases by providing immunizations, anticipatory guidance, and patient education concerning diet, appropriate disease preventive screenings and life style modification, including good hygiene practices and exercise.
- Prescribe, administer and dispense medications in accordance with State and Federal Statutes.
- Supervise and assist in the education of Medical Assistants to ensure compliance with applicable regulations.
- Collaborate with other physicians and clinical staff to form a high performing medical team, including participation in team conferences.
- Maintain effective communication with the Utilization Management Department and ensure that medical documentation supports the resources being requested for each patient.
- Maintain a collaborative and effective relationship with the medical center staff.
- Attend all medical staff meetings, as requested.
- Remain up to date with the developments and best practices in medicine through reviews of medical literature and continuing medical education.
- Comply with HIPAA requirements for patient confidentiality.
- Cultivate an environment of compassion, respect and service for patients and their families.
- Promptly return calls from patients and other providers.
- Maintain CAQH profile updated in accordance with CAQH requirements.

## Exhibit A

**Additional Contracts**

<u>**Exhibit A-1**</u>

**Additional Contracts – Stalking Horse Bid**

| Contract Counterparty | Debtor | Contract Description | Cure Amount |
|---|---|---|---|
| | | | |
| CEMELUS, JONES | CAREMAX MEDICAL GROUP, LLC | AMENDMENT TO EMPLOYMENT AGREEMENT DATED: 10/01/2024 | $ - |
| | | | |



Note:  The inclusion of a contract or lease on this Exhibit A will not (a) obligate the Debtors to assume any contract or lease listed herein nor the Successful Bidder to take assignment of such contract or lease or (b) constitute any admission or agreement of the Debtors that such contract or lease is an executory contract or unexpired lease as such term is used within the meaning of 11 U.S.C. § 365.  The Debtors reserve all rights to add or remove contracts or leases from this Notice to the fullest extent permitted under the Bidding Procedures.

## Exhibit A-2

**Additional Contracts – CareMed Pharmacy Bid**



| Contract Counterparty | Debtor | Contract Description | Cure Amount |
|---|---|---|---|

Note: The inclusion of a contract or lease on this Exhibit A will not (a) obligate the Debtors to assume any contract or lease listed herein nor the Successful Bidder to take assignment of such contract or lease or (b) constitute any admission or agreement of the Debtors that such contract or lease is an executory contract or unexpired lease as such term is used within the meaning of 11 U.S.C. § 365. The Debtors reserve all rights to add or remove contracts or leases from this Notice to the fullest extent permitted under the Bidding Procedures.

| | |
|---|---|
| **From:** | Ren Mullinix |
| **To:** | Jones Cemelus |
| **Bcc:** | Felix German; cristina.agostinelli@caremax.com |
| **Subject:** | Re: Resignation |
| **Date:** | Monday, April 21, 2025 12:01:35 PM |
| **Attachments:** | Update on Provider Employment Agreements.eml.msg |

Dr. Cemelus--

Claremedica has demonstrated our commitment to making this relationship a productive and longstanding one. In addition to meeting each of your proposed terms on an updated contract, Claremedica has invested in the Plantation III care center in unique and tailored ways to meet the needs of the local community. Moreover, since Claremedica acquired CareMax, I personally have met with you and the Plantation III team several times to ensure you're receiving full resourcing and support from the organization.

Claremedica prides itself in the ability to serve some of the most complex populations in the United States. Our patients at Plantation III reflect this complexity and can be especially vulnerable to abrupt medical changes.

To this end, I'm surprised by your intention to leave Claremedica on one week's notice. Not only is it a stark contrast to our lunch on Wednesday (4/16) where you and I agreed in principle to updated contract terms, but it is a devastating blow to patient care continuity.

Per our conversation this morning:

- Claremedica acquired CareMax on 2/3/2025 via an Asset Purchase Agreement (APA). Acquired in our transaction were certain contracts, including provider employment agreements. Your employment agreement is one of those that Claremedica acquired.

- Prior to closing, Claremedica notified all CareMax providers that their legacy CareMax contract would be transitioned to Claremedica. I've attached that email for your reference. It's dated 1/31/2025 and I have confirmed that you were included in its distribution.

- The terms of your employment agreement are enforceable, and Claremedica intends to enforce them.

Sincerely,
Ren


*Ren Mullinix*
*Chief Executive Officer*
*14750 NW 77th Ct*
*Suite 100*
*Miami Lakes, FL 33016*

*(786) 758-3135*
**RMullinix@claremedica.com**



Claremedica_Logo.jpg

*This message is confidential, intended only for the named recipient(s) and may contain information that is privileged or exempt from disclosure under applicable law. If you are not the intended recipient(s), you are notified that the dissemination, distribution, or copying of this message is strictly prohibited. If you receive this message in error, or are not the named recipient(s), please notify the sender at either the e-mail, fax, address, or telephone number listed above and delete this e-mail from your computer. Thank You.*

**From:** Jones Cemelus
**Sent:** Friday, April 18, 2025 4:51 PM
**To:** Ren Mullinix
**Cc:** Cristina Agostinelli, MD; Felix German
**Subject:** Resignation

> **EXTERNAL EMAIL ALERT: Do not click on any web links or open any attachments unless you trust the sender and know the content is safe.**

Resignation Notice – Effective April 25, 2025

Dear Claremedica executives,

I hope this message finds you well. I am writing to formally submit my resignation from my position at Claremedica, with my last day of employment being April 25, 2025.

It has been a privilege to be part of Claremedica, and I am sincerely grateful for the opportunities and experiences I've gained during my time here. Working alongside such a dedicated team has been truly rewarding, and I appreciate the support, mentorship, and collaboration that have enriched my professional journey.

Recently, I had the pleasure of meeting with the leaser of the company, and I deeply appreciate the time spent together, as well as the generosity and thoughtfulness extended to me in the offered contract. This experience reaffirmed the positive impact Claremedica has on my career, and for that, I am truly thankful.

After careful reflection and prayer, I have made the firm decision to pursue a new opportunity that aligns more closely with my long-term personal and professional goals, as well as my family's evolving needs. While this was not an easy decision, it is one that I fully stand by, and I kindly request that it be accepted without further discussion.
In the coming week, I am fully committed to ensuring a smooth transition and to wrapping up any remaining responsibilities with care.

Once again, **thank you for the opportunity** and for the support I have received throughout my time at Claremedica. I sincerely wish the company continued **growth and success** in the future.

Warmest regards,
Dr. Jones Cemelus

Get Outlook for iOS

| | |
|---|---|
| **From:** | Alyssa Lopez |
| **Subject:** | Update on Provider Employment Agreements |
| **Date:** | Friday, January 31, 2025 7:57:14 PM |

Good evening Providers,

As we approach the close date, we are eager to onboard you to the ClareMedica team. As such, we are pleased to inform you that we will be accepting and utilizing your CareMax employment agreement. This transition is part of our ongoing commitment to maintaining the high standards of collaboration and transparency that guide our principles.

We value the important work you do and are dedicated to ensuring a seamless transition, allowing you to continue providing exceptional care without any interruptions. Our team will be in touch shortly regarding additional onboarding matters, such as background checks and other new hire information.

Thank you for your attention to this matter. Should you have any questions or need further clarification, please do not hesitate to reach out to me or Human Resources at askhumanresources@claremedica.com.

Warm regards,

Alyssa Lopez


*Alyssa Lopez*
*ALopez@claremedica.com*



*This message is confidential, intended only for the named recipient(s) and may contain information that is privileged or exempt from disclosure under applicable law. If you are not the intended recipient(s), you are notified that the dissemination, distribution, or copying of this message is strictly prohibited. If you receive this message in error, or are not the named recipient(s), please notify the sender at either the e-mail, fax, address, or telephone number listed above and delete this e-mail from your computer. Thank You.*

| | |
|---|---|
| **From:** | Jones Cemelus |
| **To:** | Human Resources; Alyssa Lopez; Michelle Cyrus-Brown; Human Resources |
| **Cc:** | Cristina Agostinelli, MD; Ren Mullinix; Ren Mullinix; JONES CEMELUS |
| **Subject:** | RE: RESIGNATION |
| **Date:** | Monday, April 21, 2025 1:26:35 PM |
| **Attachments:** | Outlook-vhly4or5.png |
| | Outlook-frfhaat5.png |
| | Outlook-xwclp0tz.png |
| | Outlook-3qannljv.png |
| | Outlook-adixtrmt.png |

**EXTERNAL EMAIL ALERT: Do not click on any web links or open any attachments unless you trust the sender and know the content is safe.**

Last Friday I issued my resignation, outlining that I fully stand by my decision, and requesting it to be accepted without further discussion.

I reviewed the matter over the phone with my supervisor, Dr Agostinelli, the same day. The CEO, Mr. Ren Mullinix called me, but I did not answer as I was on the phone with Dr. Agostinelli. Upon arriving same day, I texted him (The CEO), letting him know I don't want to talk about the subject.

Today, Mr. Mullinix invited me to a meeting. We went to The manager's office and he requested Mr. Felix German (who was waiting there) to leave, and the two of US were alone. During our conversation, I renewed my intention to move forward with my resignation. At some point, Mr. Mullinix starts mentioning that if I continue in that route, there will be harm to me. I told him I know the consequences of my actions, but he threatened me with lawsuits, and even mentioned my family will suffer, and our lives will be miserable. Even though I keep telling Mr. Mullinix I understand his position, but I am not interested in continuing working at Claremedica, he multiplies his threats and at some point, says he will make a phone call that will cause some problems for my family and myself if I don't change my mind. We ended our meeting when it became clear to Mr Mullinix that I would not change my decision. Upon leaving, I did realize Mr. Mullinix was making a phone call, I have no idea what he meant, and who he called on me.

I have conducted myself in a civilized manner, and I expect the same from anyone I interact with in the workplace.

I will take the next 2 days off until I can return to a safe working environment in order to conclude the remaining business.

**Jones Cemelus, MD**
*Physician*
jones.cemelus@caremax.com
954-644-8902 Ext.5320
Mobile: 786-663-0699

4300-4306 W. Broward Blvd.
Plantation, Fl, 33317



**McGuireWoods**

McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818
Phone: 312.849.8100
Fax: 312.849.3690
www.mcguirewoods.com

Brett W. Barnett
Direct: 312.849.8123
bbarnett@mcguirewoods.com
Fax: 312.698.4589

March 24, 2025

### *Via Email and Certified Mail*

Carlos A. de Solo
6400 SW 96th Street
Pinecrest, FL 33156
carlos.desolo@gmail.com

Alberto de Solo
Albert DeSolo
10181 SW 92nd Avenue
Miami, FL 33176
ardesolo@gmail.com

Re:   *Cease and Desist*

Dear Messrs. de Solo:

McGuireWoods represents ClareMedica Viking, LLC ("ClareMedica") and its affiliates (collectively, the "Company"). As detailed herein, the Company has recently learned that you are in the process of opening a primary care clinic that will provide professional medical services in competition with a business the Company acquired, CareMax, Inc. ("CareMax"), and are engaging in actionable and improper efforts at soliciting and interfering with the Company's employees, patients, and relationships with third parties. We write to notify you that the conduct detailed herein violates various provisions of those certain Executive Employment Agreements, dated December 13, 2021 (the "Employment Agreements"), by and between you and Managed Healthcare Partners, LLC (the "Employer") and gives rise to contract and tort claims.[1] The Company demands that you immediately cease and desist from the wrongful conduct described in this letter, including violations of your non-competition obligations, violations of your non-solicitation obligations, tortious interference with CareMax's contracts, and tortious interference with business expectancies.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Employment Agreements.

March 24, 2025
Page 2

As you know, ClareMedica acquired certain assets of CareMax in February 2025. The restrictive covenants in the Employment Agreements (as well as the right of CareMax to enforce those restrictive covenants) are assets that ClareMedica acquired in the CareMax transaction.

Section 7 of the Employment Agreements outlines your non-competition obligations, stating in pertinent part:

> During [the ***Non-Competition Period***], Executive shall not, without the prior written approval of the Board, whether alone or as a partner, officer, director, consultant, agent, employee, representative or stockholder of any company, entity, or other commercial enterprise, or in any other capacity, directly or indirectly engage in the business of providing (including, without limitation as a provider or as a management services organization) professional medical services (including, without limitation, diagnostic, therapeutic and ancillary services, nursing services, outpatient healthcare services and pharmacy services) in a primary care clinic setting (including, without limitation, the practice of primary care medicine in a multidisciplinary clinic) (the "***Business***").

Employment Agreements, Sec. 7.

Section 8 of the Employment Agreements outlines your non-solicitation obligations, stating in pertinent part:

> During Executive's employment . . . and for a period of twenty-four (24) months after termination of such employment (for any reason, whether voluntary or involuntary), Executive agrees that Executive will not: . . . (b) directly or indirectly (i) solicit or recruit, or attempt to solicit or recruit, any employee, consultant or contractor of the Company to terminate employment or otherwise cease providing services to the Company or (ii) solicit or recruit, or attempt to solicit or recruit, any employee to work for or provide services to a third party other than the Company; and Executive shall not approach any such person for such purpose or authorize or knowingly approve the taking of such actions by any other person.

Employment Agreements, Sec. 8.

We have recently learned that you are engaging in conduct that violates these restrictive covenants. Namely, you have engaged in efforts to open a competing practice (the "Competing Business"), that will provide professional medical services in a primary care clinic setting within the same or similar geographic region as CareMax and ClareMedica. Your efforts to open a competing practice include but are not limited to: (1) acquiring a medical facility equipped to provide primary care services that is within four (4) miles of the Plantation III clinic that ClareMedica acquired as part of the transaction with CareMax; (2) entering into an exclusive payor contract with Solis Health Plan in connection with the Competing Business. These actions clearly violate the noncompetition obligations in your respective Employment Agreements.

March 24, 2025
Page 3

We have additionally learned that you have been contacting certain members of the Company's senior executive team in an effort to recruit them to your Competing Business. You have also indicated an express intent to recruit the Company's employed physicians—falsely claiming that such physicians are not subject to employment agreements—along with their patients to the Competing Business. A former CareMax marketing director recently went so far as to encourage Company personnel at the Plantation III clinic to recruit Company patients to your Competing Business, thereby confirming your prospective plans. These actions violate the non-solicitation provisions in your respective Employment Agreements.

Moreover, as the former CEO and COO of CareMax, you personally know that the employed physicians you are attempting to recruit have non-competition obligations in their own employment agreements with the Company which prevent them from leaving the Company and providing services to a geographically proximate medical practice in the same or similar capacity as they did to the Company. Accordingly, you know of those individuals' respective restrictive covenants, and you personally consented to those terms on behalf of CareMax (prior to assignment of these contracts to the Company). Your current conduct in interfering with the senior executives' and employed physicians' employment relationships with the Company gives rise to claims for tortious interference with contract and tortious interference with business expectancies under Florida law.

The Company hereby demands that you immediately cease and desist from the conduct described above and **provide written notice confirming you have stopped and will not pursue the Competing Business by no later than close of business on March 28, 2025** to the undersigned at bbarnett@mcguirewoods.com. Such notice shall include your confirmation that you have ceased and will make no further efforts to establish a competing practice, and that you have ceased and will make no further attempts to solicit, recruit, or otherwise cause any employee of the Company to terminate employment or cease providing services to the Company. In the absence of your compliance with the above demands, the Company intends to fully enforce its rights with respect to its restrictive covenants and tort claims, which include but are not limited to filing suit seeking injunctive and other relief, seeking monetary damages, and recovering its attorneys' fees.

Due to this potentially imminent litigation, you are instructed to retain any and all documents and information related to the matters described above, including but not limited to all documents and communications pertaining to your efforts to open a competing practice, and all documents and communications related to your efforts to solicit, recruit, or otherwise cause any employee of the Company to terminate employment or cease providing services to the Company. These documents are directly relevant to any potential litigation regarding your violations of the applicable agreements and your commission of business torts and will be subject to discovery during any litigation.

Do not hesitate to contact me if you have any questions regarding this letter or if you would like to discuss this matter further. Please also let me know if you have retained counsel in this matter and I will direct all future correspondence to their attention. Note that the Company retains and reserves all of its rights and remedies and nothing contained herein should be construed as in any way limiting those rights.

March 24, 2025
Page 4

Sincerely,

Brett W. Barnett

Copy to: Robert W. McFarland
        Alec Covington

| | |
|---|---|
| **From:** | Barnett, Brett W. |
| **To:** | Jose Ortiz; Andrew Herron |
| **Cc:** | McFarland, Robert W.; Covington, Alec; Pivnick, David J.; Smith, Alec J.; Tagert, Stephen |
| **Subject:** | RE: Carlos and Albert de Solo |
| **Date:** | Friday, April 18, 2025 6:40:53 PM |
| **Attachments:** | image001.png |

Jose and Andrew,

As we explained during Wednesday's call, your clients are subject to ongoing restrictive covenants which ClareMedica intends to enforce.  In response to your questions below, as we explained in our March 24, 2025 cease and desist, your clients are prohibited from intentionally interfering with ClareMedica's existing physician and patient relationships, which includes all clinics that were formerly part of CareMax. If they do interfere, they are liable for tortious interference with contract (as we explained, these physicians and employees are each subject to non-competes and other restrictive covenants) and tortious interference with advantageous business relationships. *Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So. 2d 252, 256 (Fla. 3d DCA 1993) (intentional interference with referring-physician and patient relationships is a claim under Florida law); *Omni Healthcare Inc. v. Health First, Inc.*, No. 613CV1509ORL37DAB, 2016 WL 4272164, at *25 (M.D. Fla. Aug. 13, 2016) (stating that a defendant's argument that "a physician-referral relationship cannot form the basis of a tortious interference claim . . . is squarely at odds with existing Florida law"). These relationships have been established and maintained by CareMax and then ClareMedica over time, and your clients cannot intentionally interfere with them by using their insider knowledge to intentionally and unjustifiably try to take ClareMedica's patients. *See Greenberg*, 629 So. 2d at 256   Your clients also will have committed the tort of unfair competition if they solicit any of ClareMedica's patients, employees, or referral sources.  *See Humanitary Med. Ctr., Inc. v. Artica*, No. 8:23-CV-1792-WJF-TGW, 2023 WL 8779956, at *5 (M.D. Fla. Dec. 19, 2023).

Additionally, your clients are prohibited from engaging in illegal patient steering. We understand that they have tried to assert their influence to convince insurers to steer patients to their clinics for their financial benefit. Such patient steering includes any efforts by your clients—whether directly or indirectly through any agents, affiliates, employees, or the like—to improperly manipulate patients' choice in provider or health plan when based on the patients' medical interests. Patient steering related to any claims with the federal government is illegal under the False Claims Act and the Anti-Kickback Statute as the AKS prohibits knowingly and willfully soliciting, receiving, offering, or paying remuneration for the purpose of inducing the purchase or ordering of services that are reimbursable under Medicare. *United States ex rel. Heller v. Guardian Pharmacy, LLC*, 521 F. Supp. 3d 1254, 1276 (N.D. Ga. 2021) (AKS prohibited steering patients from healthcare facilities for the elderly to a specific pharmacy).

As your clients know, ClareMedica assumed these contracts in connection with the transaction. As we explained in our cease and desist letter, your clients are expressly aware of the terms of these restrictive covenants given their roles and responsibilities with CareMax.  For the avoidance of doubt, and as your clients already know, the restrictive covenants for ClareMedica's

physicians – including, but not limited to, Dr. Jones Cemelus – provide in relevant part as follows:

**ARTICLE 5**
**CONFLICT OF INTEREST, NON-SOLICITATION, AND NON-COMPETITION**

.1 **Conflict of Interest.** Employee covenants and agrees not to provide any services in any manner or capacity to a direct competitor of the Group during the duration of this Agreement unless express written authorization to do so is given by the Group's President and CEO. A direct competitor of the Group for purposes of this Agreement is defined as any individual, partnership, corporation and/or other business entity that engages in the business of owning and operating an MCO and medical centers.

.2 **Non-Competition; Non-Solicitation.** During the term of this Agreement and for a period of twenty- four (24) months following expiration or termination of this Agreement for any reason (the "Restricted period"), Employee shall be bound by the following covenants:

5.2.1 Employee acknowledges that this Agreement contains restrictive covenants. This Agreement contains provisions that protect Group's proprietary and Confidential Information and limits Employee's ability to use such information. Employee admits and agrees that the restrictions on competition and the use of Confidential Information that are described in this Agreement protect Group's legitimate business interests and are an essential element of the Employee providing services under this Agreement.  Employee understands that the Group has developed, at a substantial investment, going concerns that have among their assets Members and membership lists of Members, the provider network, contracts, manuals, advertising and marketing materials, and other beneficial property. Employee acknowledges, admits and agrees that Group has relied upon Employee's agreement to comply with the restrictive covenants set forth in this Agreement in making its decision to engage and contract with Employee. Employee agrees to be bound by the provisions of this Agreement to the maximum extent permitted by law. Employee acknowledges and agrees that they have read and understand the terms and conditions of this Agreement prior to its execution.

5.2.2 In the event any term, covenant or provision of this Agreement or the application thereof to a person or circumstance shall be to any extent illegal, invalid or unenforceable, the remainder thereof and the application of such term, covenant or provision to persons or circumstances other than those as to which it is held illegal, invalid or unenforceable shall not be affected thereby, and each term, covenant or provision of this Agreement shall be valid and enforceable to the full extent permitted by law.

5.2.3  Employee is not permitted to contract or affiliate with **any** MCO or medical center which offers products to members from the same 'Plan' as those products offered to Members of the Group. The Employee is also forbidden from contracting or working

with any other MCO or medical center which offers any plan or benefits to Medicare or Medicaid members.  In addition to the aforementioned, the Employee is required to inform and must receive written authorization from the Group if he wishes to work in any capacity with another Group or entity. The Employee is hereby agreeing to work exclusively with the Group with respect to its patients and business and any previous relationships and or contracts entered into by the Employee with **any** other MCO's, medical centers, and entities are hereby and or have been terminated.

**5.2.4**  As a material inducement for the parties to enter into this Agreement the Employee agrees that for so long as this Agreement is in effect and during the Restrictive Period regardless of the reason for termination of the Agreement including, without limitation, any claim against the Group or any other party, the Employee shall not, either directly or indirectly:

   (a) Engage,    directly or indirectly, whether individually or as an owner, investor, independent Employee, partner, member, joint venturer, shareholder, manager, officer, director, employee, agent or licensee, any person in any activities which are competitive with, or the same or similar to, the primary business of the Group anywhere within Miami- Dade County and Broward County and any and all places or areas within a five (5) mile radius from any medical center of the Group or any of its affiliates and headquarters of the Group (the "Territory").
   (b) Divert or attempt to divert, directly or indirectly, business from the Group;
   (c) Employ or otherwise engage the services of directly or indirectly, or cause or solicit any competing business to employ or otherwise engage the services of, any employee or agent of the Group or any persons who were employees or agents of the Group during the Restrictive Period;
   (d)  Directly or indirectly solicit or cause any patient or Member of the Group during the Restrictive Period to terminate or diminish their relationship with the Group or to enter into a similar patient, contractual or business relationship with a competing business; and
   (e) Directly or indirectly solicit or cause any suppliers, vendors, third-party payors of, or other persons having a business relationship with the Group during the Restrictive Period, to terminate or diminish their relationship with the Group or to enter into any contractual or business relationship with a competing business.

**5.2.5** The restrictive covenants set forth herein shall apply for the applicable periods set forth in this Agreement. If Employee violates such restrictive covenants and Group or any of Group's affiliates brings legal action for injunctive or other relief, such party bringing the action shall not, as a result of the time involved in obtaining the relief, be deprived of the benefit of the full period of such restrictive covenants. Accordingly, for any time period that Employee is in violation of the restrictive covenants, such time period shall not be included in calculating the applicable periods, including the Restricted Period.

**5.2.6** All of the Group's affiliates, successors and assigns and their respective successors and assigns are third-party beneficiaries of the restrictive covenants and this <u>Section 5</u>. The restrictive covenants and this <u>Section 5</u> are intended for the benefit of, and may be enforced by, any of the foregoing.  Employee agrees and acknowledges that notwithstanding anything in this Agreement to the contrary, Group may assign the restrictive covenants and this <u>Section 5</u> in its sole and absolute discretion without the consent of Employee. Any assignee or affiliate of Group or such assignee may enforce such rights in its own name in addition to or in lieu of Group.

The list below are the providers that are currently contracted with ClareMedica and subject to restrictive covenants, including but not limited to non-compete and non-solicit obligations that your clients are already familiar with:

Abraham, Desiree
Acosta Infante, Heidy
Acosta, Nilda
Agostinelli, Cristina
Alarcon, Maria
Almeida Gutierrez, Esneido
Alvarado, Luis
Alvarez Fontes, Jose
Alvero Proenza, Elesban
Amer, Salah
Andreu, Aileen
Bocalandro, Gilsis
Buznego, Dafne
Cabrera Portela, Misley
Cedeno, Natasha
Celestin, Wilfrance
Cemelus, Jones
Chao Cuba, Yuliza
Cintron Lorenzo, Marisara
Correa, Yosvani
Cruz Torres, Yaliz
Cuxart Falcon, Lorna
Danger, Maikel
Dedos, Eduardo
Emmanuel, Ronald
Enrique, Ernesto
Espinal, Javier
Fernandez, Luis
Figueredo, Mairelis
Fuentes Blanco, Carla
Galvez, Roger
Garcia Martinez, Ivan
Garcia Napoles, Jose
Garcia, Armando
Garcia, Hugo
Gongora Veliz, Misael
Gonzalez Ochoa, Fanny
Gonzalez, Alixier

Guerra Iglesias, Rolando
Gutierrez, Julio
Hernandez, Javier
Lorenzo Cabral, Ana
Martinez, Melvin
McBride, Odette
Mendez Caban, Yamilette
Mendoza-Martin, Mailen
Mora, Noel
Morejon Carbonell, Danilo
Nunez, Yanet
Padron, Ernesto
Paneca Arnaiz, Yuliet
Pastoriza, Jorge
Paz, Aramis
Perez, Ariel
Perez, Mayra
Perez, Vandely
Perez, Yenan
Prida, Karen
Puga Bermudez, Roberto
Quesada, Eduardo
Quinones, Belkis
Quintana, Laure
Quintana, Raciel
Rodriguez Perez, Erar
Rojas Vivas, Mabel
Roman, Angel
Roman, Edilia
Romero, Carlos
Saad, Amado
Sanchez, Yamirka
Santana Santana, Heidi
Santiago Cartagena, Gladimar
Servalis, Venante
Stuart, Adam
Sturla Mirabal, Rosario
Theart, Sarah
Torres Alfonso, Eneida
Torres, Jim
Vazquez Novoa, Dalay
Verdecia Gonzalez, Graciela
Villar, Jose

Richards, Arleen

**Brett W. Barnett**
Partner
McGuireWoods LLP
T:  +1 312 849 8123 | M: +1 630 209 7979
bbarnett@mcguirewoods.com

**From:** Jose Ortiz <JOrtiz@homerbonner.com>
**Sent:** Wednesday, April 16, 2025 9:47 AM
**To:** Barnett, Brett W. <BBarnett@mcguirewoods.com>
**Cc:** McFarland, Robert W. <rmcfarland@mcguirewoods.com>; Covington, Alec
<ACovington@mcguirewoods.com>; Andrew Herron <AHerron@homerbonner.com>
**Subject:** RE: Carlos and Albert de Solo

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Brett:

Assuming that my clients have no contractual non-compete or non-solicitation obligations, what
do you contend my clients are prohibited from doing with respect to patient solicitation, and
what is the legal basis of that putative prohibition?

Also, please send me the names of the doctors, providers and employees that you claim are
currently under contract with ClareMedica.

Thanks.

José A. Ortiz
Homer Bonner Jacobs Ortiz
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
P: 305 350-5100
jortiz@homerbonner.com

This email (including any attachments) is confidential, intended only for the named recipient, and may contain information that is privileged, attorney work product, or protected by applicable law. If you are not the intended recipient, you may not disseminate, distribute, or retain the email. Instead, please notify the sender and delete the email. Thank you.

**From:** Barnett, Brett W. <BBarnett@mcguirewoods.com>
**Sent:** Monday, April 14, 2025 5:58 PM
**To:** Andrew Herron <AHerron@homerbonner.com>; Jose Ortiz <JOrtiz@homerbonner.com>
**Cc:** McFarland, Robert W. <rmcfarland@mcguirewoods.com>; Covington, Alec <ACovington@mcguirewoods.com>
**Subject:** RE: Carlos and Albert de Solo

Thanks.  I just sent out a dial-in

**Brett W. Barnett**
Partner
McGuireWoods LLP
T:  +1 312 849 8123 | M: +1 630 209 7979
bbarnett@mcguirewoods.com

**From:** Andrew Herron <AHerron@homerbonner.com>
**Sent:** Monday, April 14, 2025 4:57 PM
**To:** Barnett, Brett W. <BBarnett@mcguirewoods.com>; Jose Ortiz <JOrtiz@homerbonner.com>
**Cc:** McFarland, Robert W. <rmcfarland@mcguirewoods.com>; Covington, Alec <ACovington@mcguirewoods.com>
**Subject:** RE: Carlos and Albert de Solo

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Jose and I are available at 4PM our time.

Regards,
Andrew R. Herron, Partner

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131

P: 305 350-5117
aherron@homerbonner.com
www.homerbonner.com



---

**From:** Barnett, Brett W. <BBarnett@mcguirewoods.com>
**Sent:** Monday, April 14, 2025 4:27 PM
**To:** Jose Ortiz <JOrtiz@homerbonner.com>
**Cc:** Andrew Herron <AHerron@homerbonner.com>; McFarland, Robert W. <rmcfarland@mcguirewoods.com>; Covington, Alec <ACovington@mcguirewoods.com>
**Subject:** RE: Carlos and Albert de Solo

We are available between 2-3:30 CT / 3-4:30 ET. Would you let me know if you have any windows then and I can send out a dial-in?

**Brett W. Barnett**
Partner
McGuireWoods LLP
T: +1 312 849 8123 | M: +1 630 209 7979
bbarnett@mcguirewoods.com

---

**From:** Jose Ortiz <JOrtiz@homerbonner.com>
**Sent:** Monday, April 14, 2025 11:19 AM
**To:** Barnett, Brett W. <BBarnett@mcguirewoods.com>
**Cc:** Andrew Herron <AHerron@homerbonner.com>; McFarland, Robert W. <rmcfarland@mcguirewoods.com>; Covington, Alec <ACovington@mcguirewoods.com>
**Subject:** RE: Carlos and Albert de Solo

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Hi Brett,

How about tomorrow afternoon?

José A. Ortiz

Homer Bonner Jacobs Ortiz

1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
P: 305 350-5100
jortiz@homerbonner.com

This email (including any attachments) is confidential, intended only for the named recipient, and may contain information that is privileged, attorney work product, or protected by applicable law.  If you are not the intended recipient, you may not disseminate, distribute, or retain the email.  Instead, please notify the sender and delete the email.  Thank you.

**From:** Barnett, Brett W. <BBarnett@mcguirewoods.com>
**Sent:** Saturday, April 12, 2025 11:01 AM
**To:** Jose Ortiz <JOrtiz@homerbonner.com>
**Cc:** Andrew Herron <AHerron@homerbonner.com>; McFarland, Robert W. <rmcfarland@mcguirewoods.com>; Covington, Alec <ACovington@mcguirewoods.com>
**Subject:** Re: Carlos and Albert de Solo

Jose,

Following up on the below. Please let me know times on Monday that work for a call.

**Brett W. Barnett**
McGuireWoods LLP
T:  +1 312 849 8123
M: +1 630 209 7979

On Apr 10, 2025, at 6:21 PM, Jose Ortiz <JOrtiz@homerbonner.com> wrote:

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Let me get back to you on this.

José A. Ortiz

Homer Bonner Jacobs Ortiz

1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
P: 305 350-5100
jortiz@homerbonner.com

This email (including any attachments) is confidential, intended only for the named recipient, and may contain information that is privileged, attorney work product, or protected by applicable law. If you are not the intended recipient, you may not disseminate, distribute, or retain the email. Instead, please notify the sender and delete the email. Thank you.

---

**From:** Barnett, Brett W. <BBarnett@mcguirewoods.com>
**Sent:** Thursday, April 10, 2025 3:56 PM
**To:** Jose Ortiz <JOrtiz@homerbonner.com>
**Cc:** Andrew Herron <AHerron@homerbonner.com>; McFarland, Robert W. <rmcfarland@mcguirewoods.com>; Covington, Alec <ACovington@mcguirewoods.com>
**Subject:** RE: Carlos and Albert de Solo

Jose –

My deposition start time tomorrow got moved up and I need to reschedule our call to Monday. Would you let me know what your availability looks like then and I can send out a new invite?

**Brett W. Barnett**
Partner
McGuireWoods LLP
T:  +1 312 849 8123 | M: +1 630 209 7979
bbarnett@mcguirewoods.com

**From:** Jose Ortiz <JOrtiz@homerbonner.com>
**Sent:** Tuesday, April 8, 2025 1:05 PM
**To:** Barnett, Brett W. <BBarnett@mcguirewoods.com>
**Cc:** Andrew Herron <AHerron@homerbonner.com>; McFarland, Robert W. <rmcfarland@mcguirewoods.com>; Covington, Alec <ACovington@mcguirewoods.com>
**Subject:** RE: Carlos and Albert de Solo

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Hi Brett,

Can we have a call tomorrow afternoon?

José A. Ortiz
Homer Bonner Jacobs Ortiz
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
P: 305 350-5100
jortiz@homerbonner.com

This email (including any attachments) is confidential, intended only for the named recipient, and may contain information that is privileged, attorney work product, or protected by applicable law. If you are not the intended recipient, you may not disseminate, distribute, or retain the email. Instead, please notify the sender and delete the email. Thank you.

**From:** Barnett, Brett W. <BBarnett@mcguirewoods.com>
**Sent:** Tuesday, April 8, 2025 1:15 PM
**To:** Jose Ortiz <JOrtiz@homerbonner.com>
**Cc:** Andrew Herron <AHerron@homerbonner.com>; McFarland, Robert W. <rmcfarland@mcguirewoods.com>; Covington, Alec <ACovington@mcguirewoods.com>
**Subject:** RE: Carlos and Albert de Solo

Jose –

I wanted to follow up on your email below to see when we could expect a response to our cease and desist.

**Brett W. Barnett**
Partner
McGuireWoods LLP
T:  +1 312 849 8123 | M: +1 630 209 7979
bbarnett@mcguirewoods.com

**From:** Jose Ortiz <JOrtiz@homerbonner.com>
**Sent:** Friday, March 28, 2025 7:07 PM
**To:** Barnett, Brett W. <BBarnett@mcguirewoods.com>
**Cc:** Andrew Herron <AHerron@homerbonner.com>
**Subject:** RE: Carlos and Albert de Solo

**EXTERNAL EMAIL; use caution with links and attachments**

Mr. Barnett,

My firm has been engaged by Carlos and Albert de Solo in connection with your
March 24, 2025 Cease and Desist Letter.

We will review the allegations and get back to you.

José A. Ortiz
Homer Bonner Jacobs Ortiz
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
P: 305 350-5100
jortiz@homerbonner.com

This email (including any attachments) is confidential, intended only for the named recipient, and may contain
information that is privileged, attorney work product, or protected by applicable law.  If you are not the
intended recipient, you may not disseminate, distribute, or retain the email.  Instead, please notify the sender
and delete the email.  Thank you.

This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the
intended recipient, please advise by return e-mail and delete immediately without reading or
forwarding to others.

**McGuireWoods**

McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818
Phone: 312.849.8100
Fax: 312.849.3690
www.mcguirewoods.com

Brett W. Barnett
Direct: 312.849.8123
bbarnett@mcguirewoods.com
Fax: 312.698.4589

April 21, 2025

***Via Email and Certified Mail, Return Receipt Requested***

Jones Cemelus, M.D.
107 Wekiva Pointe Cir.
Apopka, Florida 32712

11233 NW 10th Manor
Coral Springs, Florida 33071

jones.cemelus@caremax.com
cemelusjones@gmail.com

    **Re:** ***Cease and Desist***

Dear Dr. Cemelus:

McGuireWoods represents ClareMedica Viking, LLC ("ClareMedica") and its affiliates (collectively, the "Company"). As detailed herein, the Company learned on Friday, April 18, 2025, that you intend to improperly and prematurely terminate your employment with the Employers (defined below) to join a primary care clinic that will provide professional medical services in competition with a business the Company acquired, CareMax, Inc. ("CareMax"). We write to notify you that the conduct detailed herein violates specific provisions of your Employment Agreement, dated July 12, 2021 (the "Employment Agreement"), by and between you, CareMax Medical Group, LLC, and Managed Healthcare Partners, LLC (together with CareMax Medical Group, LLC, the "Employers"), as amended October 1, 2024, and gives rise to breach of contract claims.[1] The Company demands that you immediately cease and desist from the wrongful conduct described in this letter, including violations of your non-competition obligations.

As you know, ClareMedica acquired certain assets of CareMax, Inc. in February 2025. The restrictive covenants in the Employment Agreement (as well as the right of CareMax to enforce those restrictive covenants) are assets that ClareMedica acquired in the CareMax transaction. Specifically, CareMax assumed the Employment Agreement during its bankruptcy proceedings and assigned the Employment Agreement to ClareMedica pursuant to section 365 of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Employment Agreement.

April 21, 2025
Page 2

Bankruptcy Code and a court order as part of the acquisition. Because the Employment Agreement was assumed and assigned to Claremedica, Claremedica has the right to enforce the Employment Agreement.

In Article 4.1 of the Employment Agreement, you agreed not to "use, directly or indirectly, [the Group's] Confidential Information for the benefit of any person, entity or organization other than the Group, or disclose such Confidential Information without the written authorization of the President and CEO of the Group, . . . either during or after the term of this Agreement, for as long as such information retains the characteristics of Confidential Information." Employment Agreement, Art. 4.1.

Article 5.1 of the Employment Agreement outlines your obligations regarding conflicts of interest, stating:

> Employee covenants and agrees not to provide any services in any manner or capacity to a direct competitor of the Group during the duration of this Agreement unless express written authorization to do so is given by the Group's President and CEO. A direct competitor of the Group for purposes of this Agreement is defined as any individual, partnership, corporation and/or other business entity that engages in the business of owning and operating an MCO and medical centers.

Employment Agreement, Art. 5.1.

Article 5.2 of the Employment Agreement outlines your non-competition obligations, stating in pertinent part that, for so long as the Employment Agreement is in effect and during a period of twenty-four (24) months following expiration or termination of the Employment Agreement (the "Restricted Period"):

> [T]he Employee shall not, either directly or indirectly: (a) Engage, directly or indirectly, whether individually or as an owner, investor, independent Employee, partner, member, joint venturer, shareholder, manager, officer, director, employee, agent or licensee, any person in any activities which are competitive with, or the same or similar to, the primary business of the Group anywhere within Miami-Dade County and Broward County and any and all places or areas within a five (5) mile radius from any medical center of the Group or any of its affiliates and headquarters of the Group (the "Territory").

Employment Agreement, Art. 5.2.4(a).

Article 5.2 of the Employment Agreement also makes clear that during the Restricted Period you are forbidden from contracting or affiliating "with any MCO or medical center which offers products to members from the same 'Plan' as those products offered to Members of the Group," and you are forbidden from contracting or working with "any other MCO or medical center which offers any plan or benefits to Medicare or Medicaid members." Employment Agreement, Art. 5.2.3.

April 21, 2025
Page 3

Article 5.2 of the Employment Agreement also states that "[a]ll of the Group's affiliates, successors and assigns and their respective successors and assigns are third-party beneficiaries of the restrictive covenants and this <u>Section 5</u>. The restrictive covenants and this <u>Section 5</u> are intended for the benefit of, and may be enforced by, any of the foregoing." Employment Agreement, Art. 5.2.6.

Further, pursuant to Article 3.2 of the Employment Agreement, you agreed to fulfill your obligations under the Employment Agreement for its *entire* term and to provide the Employers with ninety (90) days' notice in the event you are unable to complete the full term due to "sickness or disability, act of God, or circumstances beyond the parties' control." Employment Agreement, Art. 3.2.

The Company just recently learned that you are engaging in conduct that violates your non-competition covenants. Namely, on April 18, 2025, you provided the Employers with a contractually invalid one (1) week notice that you are terminating your employment to practice medicine as an employee of a competing practice (the "Competing Business") that will provide professional medical services in a primary care clinic setting within the same or similar geographic region as CareMax and ClareMedica. On April 21, 2025, you indicated that you have already signed an employment agreement in cooperation with Carlos de Solo and Alberto de Solo to join the Competing Business that they are establishing. The Competing Business will be operating well within the geographic limitations set forth in your Employment Agreement. These actions clearly violate your noncompetition obligations in the Employment Agreement. In addition, you have violated the notice period in the Employment Agreement by failing to give ninety (90) days' notice. Moreover, your collaboration with Carlos and Alberto de Solo to establish the Competing Business will unavoidably involve you compromising Confidential Information, constituting another violation of the Employment Agreement.

In Article 6.1, you acknowledged that a breach of Articles 4 and 5 of the Employment Agreement "will render irreparable harm to the Group, and the remedy at law for breach of the Agreement is inadequate, and that the Group shall therefore be entitled to seek any and all equitable relief, including, but not limited to, injunctive relief, and to any other remedy that may be available under any applicable law or agreement between the parties." Employment Agreement, Art. 6.1. You further acknowledged that in such circumstances of breach "an award of damages to the Group does not preclude a court from ordering injunctive relief," and "[b]oth damages and injunctive relief shall be proper modes of relief and are not to be considered as alternative remedies." *Id.*

Moreover, you agreed that, because of the impracticability and extreme difficulty to ascertain the actual damages suffered by the Group from breaches of Articles 4 and 5 of the Employment Agreement, if any of your breaching conduct results, directly or indirectly, in a patient/Member of one of the plans of the Group entering into a patient, contractual or business relationship with a competing business within the Territory, you will, as the Breaching Party, pay to the Group, as liquidated damages, the sum of Five Thousand Dollars ($5,000) per each such patient/Member. *See* Employment Agreement, Art. 6.1.

The Company hereby demands that you immediately cease and desist from the conduct described above and **provide by no later than close of business on Thursday, April 24, 2025, written**

April 21, 2025
Page 4

**confirmation that you will remain at ClareMedica through your notice period of ninety (90) days and that you will not pursue affiliation and/or employment with the Competing Business** to the undersigned at bbarnett@mcguirewoods.com.  Such notice shall include your confirmation that you have ceased and will make no further efforts to become employed with, or become affiliated with in any capacity, a competing practice.  In the absence of your compliance with the above demands, the Company will fully enforce its rights with respect to the provisions in your Employment Agreement, which include, but are not limited to, filing suit seeking injunctive and other relief, seeking monetary damages, and recovering its attorneys' fees.

As you have indicated your intent to leave ClareMedica by no later than COB Friday, April 25, 2025, you are instructed to retain any and all documents and information, including text and electronic mail messages on your cell phone, related to the matters described above, including but not limited to all documents and communications pertaining to your efforts to prematurely terminate the Employment Agreement and become affiliated with a competing practice.  These documents are directly relevant to any potential litigation regarding your violations of the Employment Agreement and will be subject to discovery during any litigation.

Do not hesitate to contact me if you have any questions regarding this letter or if you would like to discuss this matter further.  Please also let me know if you have retained counsel in this matter and I will direct all future correspondence to their attention.  Note that the Company retains and reserves all of its rights and remedies and nothing contained herein should be construed as in any way limiting those rights.

Sincerely,

*Brett Barnett*

Brett W. Barnett

Copy to: Robert W. McFarland; rmcfarland@mcguirewoods.com
    Alec Covington; acovington@mcguirewoods.com
    George S. LeMieux; glemieux@gunster.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| CAREMAX, INC., *et al.*,[1] | Case No. 24-80093 (MVL) |
| Debtors. | (Jointly Administered) |

## CERTIFICATE OF SERVICE

I, Christopher Chiu, depose and say that I am employed by Stretto, the claims and noticing agent for the Debtors in the above-captioned cases.

On January 31, 2025, at my direction and under my supervision, employees of Stretto caused the following documents to be served via first-class mail on the service list attached hereto as **Exhibit A**, and via electronic mail on the service list attached hereto as **Exhibit B**:

- **Disclosure Statement for the Amended Joint Chapter 11 Plan of CareMax, Inc. and its Debtors Affiliates** (Docket No. 585)

- **Third Amended Joint Chapter 11 Plan of CareMax, Inc. and its Debtors Affiliates** (Docket No. 586)

- **Findings of Fact, Conclusions of Law, and Order (I) Approving the Debtors' Disclosure Statement on a Final Basis; and (II) Confirming the Third Amended Joint Chapter 11 Plan of CareMax, Inc. and its Debtor Affiliates** (Docket No. 587)

- **Supplemental Notice of Cure Amounts and Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale Transaction** (Docket No. 588)

[SPACE INTENTIONALLY LEFT BLANK]

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/CareMax. The Debtors' mailing address is 1000 NW 57 Court, Suite 400, Miami, Florida 33126.

Furthermore, on January 31, 2025, at my direction and under my supervision, employees of Stretto caused the following document to be served via first-class mail on seventy-nine (79) confidential parties not included herein:

- **Supplemental Notice of Cure Amounts and Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale Transaction** (Docket No. 588)

Dated: February 6, 2025

/s/ Christopher Chiu
Christopher Chiu
STRETTO
410 Exchange, Suite 100
Irvine, CA 92602
(855) 314-3709
TeamCareMax@Stretto.com

# Exhibit A

**Exhibit A**
Served Via First-Class Mail

| Name | Attention | Address 1 | Address 2 | City | State | Zip |
|---|---|---|---|---|---|---|
| 1675 JV ASSOCIATES LLC | C/O PHIPPS HOUSES SERVICES INC | 902 BROADWAY 13TH FLOOR | ATTN: ADAM WEINSTEIN, PRES AND CEO | NEW YORK | NY | 10010 |
| ACQUAOM AGENCY SERVICES LLC | ATTN: LOAN AGENCY/LISHA JOHN | 950 17TH STREET SUITE 1400 | | DENVER | CO | 80202 |
| ACQUAOM AGENCY SERVICES LLC | C/O ROPES & GRAY | 1211 AVENUE OF THE AMERICAS | ATTN: M SOMERSTEIN & M WEINBERG | NEW YORK | NY | 10036 |
| ACQUAOM AGENCY SERVICES LLC | C/O ROPES & GRAY | 800 BOYLSTON STREET | | BOSTON | MA | 02199 |
| AD HOC GROUP | C/O KELLY HART & HALLMAN LLP | 201 MAIN STREET SUITE 2500 | ATTN: KATHERINE T. HOPKINS | FORT WORTH | TX | 76102 |
| AD HOC GROUP | C/O ROPES & GRAY LLP | 1211 AVENUE OF THE AMERICAS | ATTN: MATTHEW ROOSE & TESSA PTUCHA | NEW YORK | NY | 10036-8704 |
| AEM RE | C/O MORGAN LEWIS & BOCKIUS LLP | 1717 MAIN STREET SUITE 3200 | ATTN: DAVID I MONTEIRO | DALLAS | TX | 75201 |
| AMERICORP FINANCIAL LLC | C/O CLARK HILL PLC | 901 MAIN STREET SUITE 6000 | ATTN: R FRANKE A EDISON A HORNISHER | DALLAS | TX | 75202-3794 |
| APEX PLACE PH LLC | C/O PHIPPS HOUSES SERVICES INC | 902 BROADWAY 13TH FLOOR | ATTN: ADAM WEINSTEIN & ROBERT PIGOTT | NEW YORK | NY | 10010 |
| ATLANTIC SPECIALTY INSURANCE CO | C/O AKERMAN LLP | 3711 S MOPAC EXPY BLDG ONE STE 500 | ATTN: DUANE J BRESCIA | AUSTIN | TX | 78746 |
| BCBS OF FLORIDA | C/O AKERMAN LLP | 2001 ROSS AVENUE SUITE 3600 | ATTN: MICHAEL D NAPOLI | DALLAS | TX | 75201 |
| BTM DEVELOPMENT PARTNERS LLC | C/O RELATED COMPANIES | 30 HUDSON YARDS | ATTN: JEFF BLAU, CEO | NEW YORK | NY | 10001 |
| BUILDOUT PROS LLC | ATTN: BILL WESTMORELAND OWNER | 5050 NEWPORT DRIVE SUITE 5 | | ROLLING MEADOWS | IL | 60008 |
| CARDINAL HEALTH | C/O CHIESA SHAHINIAN & GIANTOMASI | 105 EISENHOWER PARKWAY | ATTN: SCOTT ZUBER TERRI J FREEDMAN | ROSELAND | NJ | 07068 |
| CARDINAL HEALTH | C/O KANE RUSSELL COLEMAN LOGAN PC | 901 MAIN STREET SUITE 5200 | ATTN: JOHN J KANE JAKAYLA J DABERA | DALLAS | TX | 75202 |
| CARDINAL HEALTH INC | ATTN: JASON HOLLAR CEO | 7000 CARDINAL PLACE | | DUBLIN | OH | 43017 |
| CLAREMEDICA VIKING LLC | C/O MCGUIREWOODS LLP | 1251 AVENUE OF THE AMERICAS 20TH FL | ATTN: SHAWN R FOX | NEW YORK | NY | 10020-1104 |
| CLAREMEDICA VIKING LLC | C/O MCGUIREWOODS LLP | 260 FORBES AVE SUITE 1800 | ATTN: JACOB R BROADWAY | PITTSBURGH | PA | 15222 |
| CLAREMEDICA VIKING LLC | C/O MCGUIREWOODS LLP | 2601 OLIVE ST SUITE 2100 | ATTN: CASSANDRA SEPANIK SHOEMAKER | DALLAS | TX | 75201 |
| CLAREMEDICA VIKING LLC | C/O MCGUIREWOODS LLP | 845 TEXAS AVE SUITE 2400 | ATTN: DEMETRIA LIGGINS | HOUSTON | TX | 77002 |
| CLIFFSIDE HIGHWAY LLC | C/O LATHROP GPM SLEE WORTH LLP | 2101 CEDAR SPRINGS RD SUITE 4200 | ATTN: TIMOTHY DAVIDSON PHILIP GUFFY | HOUSTON | TX | 77002 |
| COUNTY CS 23 | C/O MOORE & VAN ALLEN | 100 N TRYON STREET UNIT 4 | | CHARLOTTE | NC | 33316 |
| CP PEMBROKE PINES LLC | C/O SELECT STRATEGIES REALTY | 3850 HOLLYWOOD BLVD SUITE 400 | ATTN: MARY L DAVIS EVP OF PTY MGMT | HOLLYWOOD | FL | 33021 |
| CP PEMBROKE PINES LLC | C/O TOBIN & REYES PA | 225 NE MIZNER BLVD SUITE 510 | ATTN: RICARDO A REYES | BOCA RATON | FL | 33432 |
| DEPARTMENT OF REVENUE - IRS | UNITED STATES OF AMERICA | 1100 COMMERCE ST SUITE 300 | ATTN: DONNA K WEBB | DALLAS | TX | 75242 |
| ELEVANCE HEALTH INC | ATTN: ELENA MCFANN PRESIDENT | 220 VIRGINIA AVE | | INDIANAPOLIS | IN | 46203 |
| FLAGLER WEST CORPORATE CENTER LLC | ATTN: HELEN SPITZER COMPANY REP | 8700 WEST FLAGLER STREET SUITE 175 | | MIAMI | FL | 33174 |
| FORSEE MEDICAL INC | ATTN: JONATHAN FLAM CFO | 11622 EL CAMINO REAL SUITE 100 | | SAN DIEGO | CA | 92130 |
| FVP RE | C/O KEAN MILLER | 711 LOUISIANA STREET SUITE 1800 | ATTN: LLOYD A LIM RACHEL T KUBANDA | HOUSTON | TX | 77002 |
| FVP RE OCALA 3200 LLC | C/O FLORIDA VALUE PARTNERS | 15500 NEW BARN ROAD SUITE 104 | ATTN: GUS ALFONSO, MANAGING PARTNER | HIALEAH | FL | 33014 |
| FVP RE WEST HIALEAH LLC | C/O FLORIDA VALUE PARTNERS | 15500 NEW BARN ROAD SUITE 104 | ATTN: GUS ALFONSO, MANAGING PARTNER | MIAMI LAKES | FL | 33014 |
| HEALTH CATALYST INC | ATTN: DAN BURTON CEO | 10897 S RIVER FRONT PKWY STE 300 | ATTN: MICHELLE E SHRIRO | SOUTH | UT | 84095 |
| HOUSTON COMM COLL SYSTEM HOUSTON | C/O LINEBARGER GOGGAN BLAIR&SAMPSON | PO BOX 3064 | ATTN: TARA L GRUNDEMEIER | HOUSTON | TX | 77253-3064 |
| IDEAL DENTAL INC | ATTN: MAGIN CARRERAS PRESIDENT | 4888 5NV 72ND AVE | | Miami | FL | 33155-5506 |
| INTERNAL REVENUE SERVICE | ATTN: OFFICER/DIRECTOR OR LEGAL DEPT | PO BOX 7346 | | PHILADELPHIA | PA | 19101-7346 |
| JSR FAMILY 3100 DEER CREEK LLC | C/O KEAN MILLER | 1822 SMITH STREET 14891H STREET | ATTN: KENNETH ISRAEL, CEO AND OWNER | IRVINE | FL | 33181 |
| JSR REALTY 3610 LLC | C/O BRACEWELL LLP | 1516 LAKE FRONT | ATTN: SOLV D BAWAABEH L PARTNER | MIAMI | FL | 11125 |
| KIMCO REALTY CORPORATION | C/O SINGER & LEVICK PC | 16200 ADDISON ROAD SUITE 140 | ATTN: MICHELLE E SHRIRO | ADDISON | TX | 75005 |
| LEASEFLORIDA FTIPERCE LLC | ATTN: ALAN WASERSTEIN OWNER | 5901 NORTHWEST 151ST ST SUITE 126 | | MIAMI LAKES | FL | 33014 |
| LOCKTON COMPANIES | ATTN: R LOCKTON C CALLENBACH | 444 W 47TH ST SUITE 900 | | KANSAS CITY | MO | 64112 |
| MCKESSON CORPORATION | C/O BUCHALTER A PROFESSIONAL CORP | 18400 VON KARMAN AVENUE SUITE 800 | ATTN: JEFFREY K GARFINKLE | IRVINE | CA | 92612 |
| MILLIMAN INC | ATTN: JIM FULTON SVP & CFO | 1301 FIFTH AVE SUITE 3800 | | SEATTLE | WA | 98101 |
| NDTX OFFICE OF THE US TRUSTEE | ATTN: MEREDYTH A KIPPES | 1100 COMMERCE ST ROOM 976 | EARLE CABELL FEDERAL BUILDING | DALLAS | TX | 75202 |
| NEXTGEN HEALTHCARE INC | ATTN: DAVID SIDES CEO | 18111 VON KARMAN ST STE 800 | | IRVINE | CA | 92612 |
| PALM SPRINGS MILE ASSOCIATES LTD | C/O KELLEY DRYE & WARREN LLP | 3 WORLD TRADE CTR 175 GREENWICH ST | ATTN: R LEHANE K ELLIOTT S YACHIK | NEW YORK | NY | 10007 |
| PHARMALIFE HEALTH INNOVATIONS LLC | ATTN: MICHAEL BOGACHEK | 2951 PIEDMONT ROAD SUITE B | | ATLANTA | GA | 30305 |
| REVERE MEDICAL | C/O BRACEWELL LLP | 111 CONGRESS AVENUE STE 2300 | ATTN: JONATHAN LOZANO | AUSTIN | TX | 78701 |
| REVERE MEDICAL | C/O BRACEWELL LLP | 711 LOUISIANA STREET STE 2300 | ATTN: JASON G COHEN | HOUSTON | TX | 77002 |
| REVERE MEDICAL | C/O KIRKLAND & ELLIS LLP | 333 WEST WOLF POINT PLAZA | ATTN: PETER A CANDEL | CHICAGO | IL | 60654 |
| RHG NETWORK, LLC | C/O KIRKLAND & ELLIS LLP | 601 LEXINGTON AVENUE | ATTN: BRIAN SCHARTZ  & T. MARBURY | NEW YORK | NY | 10022 |
| RINGCENTRAL INC | ATTN: VLAD SHMUNIS FOUNDER CEO | 20 DAVIS DRIVE | | BELMONT | CA | 94002 |
| RKK CENTRAL LLC | ATTN: RAFAEL LANINUR COMPANY REP | 1800 NE 114TH AVENUE 2ND FLOOR | | NEW YORK | NY | 94029 |
| SECURITIES AND EXCHANGE COMMISSION | ATTN: ANTONIA APPS | 200 VESEY STREET STE 400 | REGIONAL DIRECTOR BROOKFIELD PLACE | NEW YORK | NY | 10281-1022 |
| SECURITIES AND EXCHANGE COMMISSION | SECRETARY OF THE TREASURY | 100 F STREET NE | | WASHINGTON | DC | 20549 |
| STATE OF TEXAS | OFFICE OF THE ATTORNEY GENERAL | 300 W 15TH ST | | AUSTIN | TX | 78701 |
| TENNESSEE DEPT OF REVENUE | C/O TN AG OFFICE BANKRUPTCY DIV | PO BOX 20207 | | NASHVILLE | TN | 37220-0207 |
| TEXAS MEDICAL BOARD | C/O OFFICE OF ATTORNEY GEN OF TX | PO BOX 12548 BK & COLLECTIONS DIV | ATTN: R DESAI S EBERHARDT | AUSTIN | TX | 78711-2548 |

In re: CareMax, Inc., et al.
Case No. 24-80093 (MVL)

Page 1 of 2

Case 24-80093-mvl11    Doc 606    Filed 02/06/25    Entered 02/06/25 14:02:15    Desc
Main Document    Page 5 of 8



**Exhibit A**
Served Via First-Class Mail

| Name | Attention | Address 1 | Address 2 | City | State | Zip |
|---|---|---|---|---|---|---|
| TH MEMPHIS RAINES LLC | C/O TURNER IMPACT CAPITAL | 1702 OLYMPIC BOULEVARD | ATTN: LYNNE LOVASCO, VP INVESTORY | SANTA MONICA | CA | 90404 |
| TH ORLANDO 8575 NE 138 LLC | C/O TURNER IMPACT CAPITAL | 1702 OLYMPIC BOULEVARD | ATTN: LYNNE LOVASCO, VP INVESTORY | SANTA MONICA | CA | 90404 |
| TH PALM BAY 470 MALABAR LLC | C/O TURNER IMPACT CAPITAL | 1702 OLYMPIC BOULEVARD | ATTN: LYNNE LOVASCO, VP INVESTORY | SANTA MONICA | CA | 90404 |
| TH PALM BAY 548 BARTON LLC | C/O TURNER IMPACT CAPITAL | 1702 OLYMPIC BOULEVARD | ATTN: LYNNE LOVASCO, VP INVESTORY | SANTA MONICA | CA | 90404 |
| TH PSL VILLAGE PARKWAY LLC | C/O TURNER IMPAC CAPITAL | 1702 OLYMPIC BOULEVARD | ATTN: LYNNE LOVASCO, VP INVESTORY | SANTA MONICA | CA | 90404 |
| TH MIAMI NORTH LAKE LLC | C/O TURNER IMPACT CAPITAL | 1702 OLYMPIC BLVD | ATTN: LYNNE LOVASCO, VP INVESTORY | SANTA MONICA | CA | 90404-3812 |
| THFF REIT LLC | ATTN: BARI COOPER SHERMAN VP | 1702 OLYMPIC BOULEVARD | | SANTA MONICA | CA | 90404 |
| THFF REIT LLC | C/O WEIL GOTSHAL & MANGES LLP | 200 CRESCENT COURT SUITE 300 | ATTN: JENNIFER BROOKS CROZIER | DALLAS | TX | 75201 |
| THFF REIT LLC | C/O WEIL GOTSHAL & MANGES LLP | 767 FIFTH AVENUE | ATTN: KEVIN BOSTEL ASHLEY ANGLADE | NEW YORK | NY | 10153 |
| THFF REIT LLC DAYTONA BEACH | ATTN: LYNNE LOVASCO VP INVESTORY | 1702 OLYMPIC BLVD | | SANTA MONICA | CA | 90404 |
| THFF REIT LLC TITUSVILLE | C/O TURNER IMPACT CAPITAL | 1702 OLYMPIC BOULEVARD | ATTN: LYNNE LOVASCO, VP INVESTORY | SANTA MONICA | CA | 90404 |
| THOMPSON LOGISTICS ASSETS LLC | C/O MUNSCH HARDT KOPF & HARR PC | 500 N AKARD STREET SUITE 4000 | ATTN: DEBORAH M PERRY | DALLAS | TX | 75201-6659 |
| TN DEPT OF REVENUE | C/O TN ATTORNEY GENERAL'S OFFICE | PO BOX 20207 | | NASHVILLE | TN | 37220-0207 |
| TX COMPTROLLER OF PUBLIC ACCOUNTS | ATTN OFFICER/DIRECTOR OR LEGAL DEPT | PO BOX 13528 | CAPITOL STATION | AUSTIN | TX | 78711-3528 |
| UNITED STATES ATTORNEYS OFFICE | ATTN: ERIN NEALY COX | 1100 COMMERCE STREET THIRD FL | | DALLAS | TX | 75242-1699 |
| UNITED STATES OF AMERICA | C/O US DOJ CIVIL DIVISION | 1100 L STREET NW | ATTN: K MANHARDT  R MORRIS I HSU | WASHINGTON | DC | 20005 |
| UNSECURED CREDITORS COMMITTEE | C/O PACHULSKI STANG ZIEHL & JONES | 700 LOUISIANA STREET SUITE 4500 | ATTN: M WARNER B WALLEN | HOUSTON | TX | 77002 |
| UNSECURED CREDITORS COMMITTEE | C/O PACHULSKI STANG ZIEHL & JONES | 780 THIRD AVENUE 34TH FLOOR | ATTN: B SANDLER R FEINSTEIN | NEW YORK | NY | 10017 |
| UNSECURED CREDITORS COMMITTEE | C/O SILLS CUMMIS & GROSS PC | THE LEGAL CENTER ONE RIVERFRONT PLZ | ATTN: A SHERMAN B MANKOVETSKIY | NEWARK | NJ | 07102 |
| US ATTORNEYS OFFICE FOR NDTX | ATTN: LEIGHA SIMONTON | 1100 COMMERCE STREET THIRD FLOOR | | DALLAS | TX | 75242-1598 |

# **Exhibit B**

Case 24-80093-mvl11    Doc 606    Filed 02/06/25    Entered 02/06/25 14:02:15    Desc
Main Document    Page 7 of 8

**Exhibit B**
Served Via Electronic Mail

| Name | Attention 1 | Attention 2 | Email |
|---|---|---|---|
| 1675 JV ASSOCIATES, LLC | C/O PHIPPS HOUSES SERVICES, INC | ATTN: ADAM WEINSTEIN, PRESIDENT AND CEO | AWEINSTEIN@PHIPPSNY.ORG |
| ACQUIOM AGENCY SERVICES LLC | ATTN: LOAN AGENCY/ILISHA JOHN | | IJOHN@SRSACQUIOM.COM |
| | | | MARK.SOMERSTEIN@ROPESGRAY.COM |
| ACQUIOM AGENCY SERVICES LLC | C/O ROPES & GRAY | ATTN: MARK SOMERSTEIN, PRESIDENT AND MEIR WEINBERG | MEIR.WEINBERG@ROPESGRAY.COM |
| ACQUIOM AGENCY SERVICES LLC | C/O ROPES & GRAY | | ACH@ROPESGRAY.COM |
| AD HOC GROUP | C/O KELLY HART & HALLMAN LLP | ATTN: KATHERINE T. HOPKINS | KATHERINE.HOPKINS@KELLYHART.COM |
| | | | MATTHEW.ROOSE@ROPESGRAY.COM |
| AD HOC GROUP | C/O ROPES & GRAY LLP | ATTN: MATTHEW M. ROOSE, TESSA M. PTUCHA | TESSA.PTUCHA@ROPESGRAY.COM |
| ADP, INC. | C/O MORGAN, LEWIS & BOCKIUS LLP | ATTN: DAVID I. MONTEIRO | DAVID.MONTEIRO@MORGANLEWIS.COM |
| | | | BFRANKE@CLARKHILL.COM |
| | | ATTN: ROBERT P. FRANKE, ANDREW G. EDSON, | AEDSON@CLARKHILL.COM |
| AMERICORP FINANCIAL, LLC | C/O CLARK HILL PLC | AUDREY L. HORNISHER | AHORNISHER@CLARKHILL.COM |
| | | ATTN: ADAM WEINSTEIN & ROBERT PIGOTT, GC FOR | AWEINSTEIN@PHIPPSNY.ORG |
| APEX PLACE PH LLC | C/O PHIPPS HOUSES SERVICES, INC | PHIPPS HOUSES | RPIGOTT@PHIPPSNY.ORG |
| ACQUIOM AGENCY SERVICES LLC, INC. | C/O AKERMAN LLP | ATTN: DAVID E. GRASCIA | DAVID.GRASCIA@CLARKHILL.COM |
| BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC. | C/O AKERMAN LLP | ATTN: MICHAEL D. NAPOLI | MICHAEL.NAPOLI@AKERMAN.COM |
| BTM DEVELOPMENT PARTNERS LLC | C/O RELATED COMPANIES | ATTN: JEFF BLAU, CHIEF EXECUTIVE OFFICER | JBLAU@RELATED.COM |
| BUILDOUT PROS, LLC | ATTN: BILL WESTMORELAND, COMPANY OWNER | | BWESTMORELAND@BUILDOUTPROS.COM |
| CARDINAL HEALTH 110, LLC AND CARDINAL HEALTH 112, | | | SZUBER@CSGLAW.COM |
| LLC | C/O CHIESA SHAHINIAN & GIANTOMASI PC | ATTN: SCOTT A. ZUBER, TERRI JANE FREEDMAN | TFREEDMAN@CSGLAW.COM |
| CARDINAL HEALTH 110, LLC AND CARDINAL HEALTH 112, | | | JKANE@KRCL.COM |
| LLC | C/O KANE RUSSELL COLEMAN LOGAN PC | ATTN: JOHN J. KANE, JAKAYLA J. DABERA | JDABERA@KRCL.COM |
| CARDINAL HEALTH, INC | ATTN: JASON HOLLAR, CHIEF EXECUTIVE OFFICER | | JASON.HOLLAR@CARDINALHEALTH.COM |
| | | | TOM.CALIFANO@SIDLEY.COM |
| | | ATTN: THOMAS R. CALIFANO, JULIANA L. HOFFMAN, | JHOFFMAN@SIDLEY.COM |
| | | STEPHEN HESSLER, ANTHONY R. GROSSI, JASON L. | SHESSLER@SIDLEY.COM |
| | | HUFENDICK, MARGARET R. ALDEN, RYAN FINK | AGROSSI@SIDLEY.COM |
| | | | JHUFENDICK@SIDLEY.COM |
| | | | MALDEN@SIDLEY.COM |
| CAREMAX, INC. ET AL. | C/O SIDLEY AUSTIN LLP | | RYAN.FINK@SIDLEY.COM |
| CLAREMEDICA VIKING, LLC | C/O MCGUIREWOODS LLP | ATTN: CASSANDRA SEPANIK SHOEMAKER | CSHOEMAKER@MCGUIREWOODS.COM |
| CLAREMEDICA VIKING, LLC | C/O MCGUIREWOODS LLP | ATTN: DEMETRA LIGGINS | DLIGGINS@MCGUIREWOODS.COM |
| CLAREMEDICA VIKING, LLC | C/O MCGUIREWOODS LLP | ATTN: JACOB R. BROADWAY | JBROADWAY@MCGUIREWOODS.COM |
| CLAREMEDICA VIKING, LLC | C/O MCGUIREWOODS LLP | ATTN: SHAWN R. FOX | SFOX@MCGUIREWOODS.COM |
| | | | PGUFFY@HUNTONAK.COM |
| CLIFFS ON THE HIGHWAY, LLC | C/O HUNTON ANDREWS KURTH LLP | ATTN: TIMOTHY A. DAVIDSON II, PHILIP M. GUFFY | TADDAVIDSON@HUNTONAK.COM |
| CONNECT C3 | ATTN: ILDEFONSO BALART, PRESIDENT | | FONSI@CONNECTC3.COM |
| | | ATTN: MARY LOU DAVIS, EXECUTIVE VP OF PROPERTY | MDAVIS@SELECTSTRAT.COM |
| CP PEMBROKE PINES, LLC | C/O SELECT STRATEGIES REALTY | MANAGEMENT | MHORTON@TOBINREYES.COM |
| CP PEMBROKE PINES, LLC | C/O TOBIN & REYES, P.A. | ATTN: RICARDO A. REYES | RAR@TOBINREYES.COM |
| DEPARTMENT OF REVENUE - INTERNAL REVENUE SERVICE | UNITED STATES OF AMERICA | ATTN: DONNA K. WEBB | DONNA.WEBB@USDOJ.GOV |
| ELEVANCE HEALTH, INC. | ATTN: ELENA MCPANN, PRESIDENT | | ELENA.MCPANN@ELEVANCEHEALTH.COM |
| FLAGLER WEST CORPORATE CENTER, LLC | ATTN: HELEN SPITZER, COMPANY REPRESENTATIVE | | SPITZER.HELEN14@GMAIL.COM |
| FORESEE MEDICAL, INC | ATTN: JONATHAN FLAM, CHIEF FINANCIAL OFFICER | | JFLAM@FORESEEMED.COM |
| FVP RE OCALA 3200 LLC | C/O FLORIDA VALUE PARTNERS | ATTN: GUS ALFONSO, MANAGING PARTNER | GALFONSO@FVPRE.COM |
| FVP RE OCALA 3200, LLC, EVP RE PLANTATION, LLC, FVP RE | | | |
| OF TAMARAC, LLC, FVP HH MEDICAL OFFICE, LLC, AND FVP | C/O KEAN MILLER | ATTN: LLOYD A. LIM, RACHEL THOMPSON KUBANDA | LLOYD.LIM@KEANMILLER.COM |
| RE WEST HIALEAH, LLC | C/O KEAN MILLER | | RACHEL.KUBANDA@KEANMILLER.COM |
| FVP RE WEST HIALEAH, LLC | C/O FLORIDA VALUE PARTNERS | ATTN: GUS ALFONSO, MANAGING PARTNER | GALFONSO@FVPRE.COM |
| HEH HEALTH INVEST INC. | ATTN: DAN BURTON, CEO & KEVIN FREEMAN | | DAN.BURTON@HEALTHCATALYST.COM |
| HOUSTON COMM COLL SYSTEM HOUSTON ISD | C/O LINEBARGER GOGGAN BLAIR & SAMPSON, LLP | ATTN: TARA L. GRUNDEMEIER | HOUSTON_BANKRUPTCY@LGBS.COM |
| IDEAL DENTAL, INC | ATTN: MAGIN CARRERAS, PRESIDENT | | MAGIN@IDEALDENTALINC.COM |
| | | ATTN: KENNETH ISRAEL, CHIEF EXECUTIVE OFFICE | |
| ISRAEL FAMILY 9401 DEER CREEK LLC | C/O KEI PROPERTIES | AND OWNER | KEN@KEIPROPERTIES.COM |
| JSB REALTY NO 3 LLC | C/O BAWABEH HOLDINGS | ATTN: SOLY D BAWABEH, PARTNER | SOLYD@BAWABEH.COM |
| KIMCO REALTY CORPORATION | C/O SINGER & LEVICK P.C. | ATTN: MICHELLE E. SHRIRO | MSHRIRO@SINGERLEVICK.COM |
| LEASEFLORIDA FT PIERCE, LLC | ATTN: ALAN WASERSTEIN, PRINCIPAL OWNER | | ALAN@LEASEFLORIDA.COM |
| | ATTN: RON LOCKTON, CHAIRMAN AND CEO, CARLTON | | RLOCKTON@LOCKTON.COM |
| LOCKTON COMPANIES | D. CALLENBACH | | CCALLENBACH@LOCKTON.COM |
| MCKESSON CORPORATION | C/O BUCHALTER, A PROFESSIONAL CORPORATION | ATTN: JEFFREY K. GARFINKLE | JGARFINKLE@BUCHALTER.COM |

In re: CareMax, Inc., et al.
Case No. 24-80093 (MVL)

Case 24-80093-mvl11    Doc 606    Filed 02/06/25    Entered 02/06/25 14:02:15    Desc
Main Document    Page 8 of 8

Exhibit B
Served Via Electronic Mail



| Name | Attention 1 | Attention 2 | Email |
|------|-------------|-------------|-------|
| | ATTN: JIM FULTON, SENIOR VICE PRESIDENT & CHIEF | | JIM.FULTON@MILLIMAN.COM |
| MILLIMAN, INC. | FINANCIAL OFFICER AND JAY WOOD SPENCER | | JAY.SPENCER@MILLIMAN.COM |
| NEXTGEN HEALTHCARE INC | ATTN: DAVID SIDES, CHIEF EXECUTIVE OFFICER | | DSIDES@NEXTGEN.COM |
| NORTHERN DISTRICT OF TEXAS OFFICE OF THE U.S. | | | |
| TRUSTEE | ATTN: MEREDYTH A. KIPPES | | MEREDYTH.KIPPES@USDOJ.GOV |
| | | | BSANDLER@PSZJLAW.COM |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS | C/O PACHULSKI STANG ZIEHL & JONES LLP | ATTN: BRADFORD J. SANDLER, ROBERT J. FEINSTEIN | RFEINSTEIN@PSZJLAW.COM |
| | | | MWARNER@PSZJLAW.COM |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS | C/O PACHULSKI STANG ZIEHL & JONES LLP | ATTN: MICHAEL D. WARNER, BENJAMIN L. WALLEN | BWALLEN@PSZJLAW.COM |
| | | | ASHERMAN@SILLSCUMMIS.COM |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS | C/O SILLS CUMMIS & GROSS P.C. | ATTN: ANDREW H. SHERMAN, BORIS I. MANKOVETSKY | BMANKOVETSKY@SILLSCUMMIS.COM |
| | | | RLEHANE@KELLEYDRYE.COM |
| | | | KELLIOTT@KELLEYDRYE.COM |
| | | ATTN: ROBERT L. LEHANE, KRISTIN S. ELLIOTT, | SYACHIK@KELLEYDRYE.COM |
| PALM SPRINGS MILE ASSOCIATES, LTD. | C/O KELLEY DRYE & WARREN LLP | STEVEN YACHIK | KDWBANKRUPTCYDEPARTMENT@KELLEYDRYE.COM |
| | | | M.JOHNSON@PHARMALIFE.COM |
| PHARMALIFE HEALTH INNOVATIONS, LLC | ATTN: MICHAEL BOGACHEK | | MBOGACHEK@PHARMALIFE.COM |
| REVERE MEDICAL | C/O BRACEWELL LLP | ATTN: JASON G. COHEN | JASON.COHEN@BRACEWELL.COM |
| REVERE MEDICAL | C/O BRACEWELL LLP | ATTN: JONATHAN LOZANO | JON.LOZANO@BRACEWELL.COM |
| REVERE MEDICAL | C/O KIRKLAND & ELLIS LLP | ATTN: PETER A. CANDEL | PETER.CANDEL@KIRKLAND.COM |
| | | | BRIAN.SCHARTZ@KIRKLAND.COM |
| RHG NETWORK, LLC (REVERE MEDICAL) | C/O KIRKLAND & ELLIS LLP | ATTN: BRIAN SCHARTZ, P.C., & THOMAS MARBURY | THOMAS.MARBURY@KIRKLAND.COM |
| | ATTN: VLAD SIMMUNS, FOUNDER, CHIEF EXECUTIVE | | |
| RINGCENTRAL INC | OFFICER, CHAIRMAN | | VLADS@RINGCENTRAL.COM |
| ROSS + ROSS LLC | ATTN: RAFAEL JUNIOR, COMPANY REPRESENTATIVE | | RAFAEL.EHPM@GMAIL.COM |
| | C/O TN ATTORNEY GENERAL'S OFFICE, BANKRUPTCY | | TDOR.BANKRUPTCY@TN.GOV |
| TENNESSEE DEPT OF REVENUE | DIVISION | | STEVE.BUTLER@AG.TN.GOV |
| | | | ROMA.DESAI@OAG.TEXAS.GOV |
| TEXAS MEDICAL BOARD | C/O OFFICE OF THE ATTORNEY GENERAL OF TEXAS | ATTN: ROMA N. DESAI, STEPHANIE EBERHARDT | STEPHANIE.EBERHARDT@OAG.TEXAS.GOV |
| | | ATTN: LYNNE LOVASCO, VICE PRESIDENT OF | |
| TH MEMPHIS RAINES LLC | C/O TURNER IMPACT CAPITAL | INVESTORY RELATIONS | LLOVASCO@TURNERIMPACT.COM |
| | | ATTN: LYNNE LOVASCO, VICE PRESIDENT OF | |
| TH ORLANDO 8575 NE 138 LLC | C/O TURNER IMPACT CAPITAL | INVESTORY RELATIONS | LLOVASCO@TURNERIMPACT.COM |
| | | ATTN: LYNNE LOVASCO, VICE PRESIDENT OF | |
| TH PALM BAY 470 MALABAR LLC | C/O TURNER IMPACT CAPITAL | INVESTORY RELATIONS | LLOVASCO@TURNERIMPACT.COM |
| | | ATTN: LYNNE LOVASCO, VICE PRESIDENT OF | |
| TH PALM BAY 548 BARTON LLC | C/O TURNER IMPAC CAPITAL | INVESTORY RELATIONS | LLOVASCO@TURNERIMPACT.COM |
| | | ATTN: LYNNE LOVASCO, VICE PRESIDENT OF | |
| TH PSL VILLAGE PARKWAY LLC | C/O TURNER IMPAC CAPITAL | INVESTORY RELATIONS | LLOVASCO@TURNERIMPACT.COM |
| | | ATTN: LYNNE LOVASCO, VICE PRESIDENT OF | |
| THE MIAMI NORTHLAKE LLC | C/O TURNER IMPACT CAPITAL | INVESTORY RELATIONS | LLOVASCO@TURNERIMPACT.COM |
| THFF REIT LLC | ATTN: BARI COOPER SHERMAN, VICE PRESIDENT | | BSHERMAN@TURNERIMPACT.COM |
| THFF REIT LLC | C/O WEIL, GOTSHAL & MANGES LLP | ATTN: JENNIFER BROOKS CROZIER | JENNIFER.CROZIER@WEIL.COM |
| | | | KEVIN.BOSTEL@WEIL.COM |
| THFF REIT LLC | C/O WEIL, GOTSHAL & MANGES LLP | ATTN: KEVIN BOSTEL, ASHLEY ANGLADE | ASHLEY.ANGLADE@WEIL.COM |
| | ATTN: LYNNE LOVASCO, VICE PRESIDENT OF | | |
| THFF REIT LLC - DAYTONA BEACH | INVESTORY RELATIONS | | LLOVASCO@TURNERIMPACT.COM |
| | | ATTN: LYNNE LOVASCO, VICE PRESIDENT OF | |
| THFF REIT LLC-TITUSVILLE | C/O TURNER IMPACT CAPITAL | INVESTORY RELATIONS | LLOVASCO@TURNERIMPACT.COM |
| THOMPSON LOGISTICS ASSETS LLC | C/O MUNSCH HARDT KOPF & HARR, P.C. | ATTN: DEBORAH M. PERRY | DPERRY@MUNSCH.COM |
| | C/O TN ATTORNEY GENERAL'S OFFICE, BANKRUPTCY | | |
| TN DEPT OF REVENUE | DIVISION | | STEVE.BUTLER@AG.TN.GOV |
| U.S. ATTORNEY'S OFFICE FOR THE NORTHERN DISTRICT OF | ATTN: LEIGHA SIMONTON | | |
| TEXAS | DIV UNITED STATES DEPARTMENT OF JUSTICE, CIVIL | ATTN: KIRK T. MANHARDT, RODNEY A. MORRIS, I-HENG | USATXN.USAO@USDOJ.GOV |
| UNITED STATES OF AMERICA | DIVISION | HSU | I-HENG.HSU@USDOJ.GOV |
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION | ATTN: ANTONIA APPS | | NYRO-BANKRUPTCY@SEC.GOV |
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION | ATTN: JOLENE M. WISE | | WISEJ@SEC.GOV |

In re: CareMax, Inc., et al.
Case No. 24-80093 (MVL)

Page 2 of 2

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CASE NO**.

ClareMedica Viking, LLC

         Plaintiff,

v.

Alberto de Solo, Carlos A. de Solo,
and Jones Cemelus, M.D.,

         Defendants.

_____/

### CLAREMEDICA VIKING, LLC'S MOTION FOR TEMPORARY INJUNCTION AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff ClareMedica Viking, LLC ("ClareMedica" or "Plaintiff"), by and through its undersigned counsel, moves for this Court to enter a temporary injunction against Dr. Jones Cemelus ("Dr. Cemelus"), Alberto de Solo ("Alberto") and Carlos A. de Solo ("Carlos," and together with Alberto, the "de Solos," and collectively with Dr. Cemelus, "Defendants"). In support thereof, ClareMedica states as follows:

### INTRODUCTION

The de Solos were C-suite executives for CareMax, Inc., a company ClareMedica acquired out of bankruptcy. Instead of remaining with ClareMedica, the de Solos took advantage of their positions and confidential and proprietary information to start a competing business. In their efforts, the de Solos have tortiously interfered with ClareMedica's business operations, including by inducing Dr. Cemelus, a ClareMedica employee, to breach key provisions in his Employment Agreement and join them. Dr. Cemelus was solicited by the de Solos' agent, former CareMax Chief Medical Officer Bert Moreno. In accepting the de Solos' solicitations, Dr. Cemelus

1

submitted a one-week notice of his resignation, notwithstanding the 90-day notice required under his Employment Agreement.  And, in accepting employment with the de Solos new medical center, Dr. Cemelus has breached the restrictive covenant in his Employment Agreement.  Thus, swift and equitable relief is necessary to enjoin the Defendants' actions and reinstate the status quo.

## BACKGROUND[1]

ClareMedica operates a network of primary care medical clinics with multiple centers across the State of Florida dedicated to providing exceptional care to patients.  ClareMedica focuses on senior patients, who are often covered by Medicare Advantage.  Compl. ¶ 1. ClareMedica provides patient-centered, compassionate care to ensure that its patients have seamless access to specialists and services tailored to their needs.  *Id.*  To expand its provision of services in Southern Florida, ClareMedica acquired certain assets of CareMax, Inc. ("CareMax") out of bankruptcy in February 2025 (the "CareMax Transaction").  *Id.* ¶ 2.  Before filing for bankruptcy, CareMax operated a network of medical centers and numerous affiliates, including Caremax Medical Group, LLC, Managed Healthcare Partners, LLC ("MHP"), and Interamerican Medical Center Group, LLC ("IMCG"), with a geographic center in Miami-Dade County.  *Id.*  The de Solos were in charge of CareMax when it went into bankruptcy—Alberto was the Chief Operating Officer of MHP and CareMax, and Carlos was the Chief Executive Officer of MHP and CareMax.  *Id.* ¶ 3.

On November 17, 2024, CareMax and 53 affiliates filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), along with a

---

[1] This Motion contains only a summary of the facts needed for the Court's initial understanding of the issues.  It is not a complete representation of the evidence that may be presented to the Court at the time of the hearing, nor is it intended to narrow or limit the scope of the issues or evidence that will be presented to the Court for consideration at the hearing on this Motion.

prearranged plan that provided for the sale of substantially all of their assets. *Id.* ¶ 19. These bankruptcy cases were filed in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") and were jointly administered as Case No. 24-80093. *Id.* ClareMedica was deemed the successful bidder for those assets on January 14, 2025. *Id.* ¶ 22.

Among the assets, ClareMedica acquired an employment agreement between Caremax Medical Group, LLC, IMCG, and Dr. Cemelus (the "Employment Agreement"). *See id.* ¶ 25; Mullinix Affidavit ¶ 3.[2] The Employment Agreement contains restrictive covenants preventing Dr. Cemelus from competing with CareMax and IMCG in a limited geographic area and a notice provision requiring Dr. Cemelus to provide 90 days' notice should he elect to terminate his employment. Compl. ¶ 4; *see also id.* at Ex. A, Employment Agreement Art. 3 (Term and Termination); 5 (Conflict of Interest, Non-Solicitation, and Non-Competition). Though his and other CareMax employee names were redacted from the Bankruptcy Court's public docket, Dr. Cemelus received notice that his Employment Agreement was among the contracts assumed and assigned to ClareMedica. *Id.* ¶¶ 25-26; *see also id.* at Ex. B, Ex. H (bankruptcy court filings providing notice that Dr. Cemelus' Employment Agreement was among the ones to be assumed and assigned to ClareMedica and giving Dr. Cemelus the opportunity to object to such assumption and assignment). He did not challenge that assignment. *Id.* ¶ 27.

Relevant to this Motion, Article 5 of Dr. Cemelus's Employment Agreement prohibits him—for a period of two years after his employment with CareMax and MHP ends—from "engag[ing] directly, or indirectly . . . in any activities which are competitive with, or the same or similar to, the Business of [CareMax and IMCG] within a fifteen (15) mile radius of any location where the Employee provided Services." Compl. Ex. A, § 5.2.3(a). Article 5 further provides that

---

[2] A true and correct copy of the affidavit of Mark L. Mullinix, Jr. is attached hereto as Exhibit "1."

"[a]ll of [CareMax and IMCG's] affiliates, successors and assigns . . . are third-party beneficiaries of the restrictive covenants" and that any assignee or affiliate of [CareMax or IMCG] may enforce such rights in its own name in addition to or in lieu of" CareMax or IMCG.  *Id.* § 5.2.6.  Dr. Cemelus acknowledged the restrictive covenants in his Employment Agreement, *id.* at § 5.2.1, and agreed that violation of such covenants would cause irreparable harm.  *Id.* § 6.1

Shortly after ClareMedica acquired CareMax and its assets—which were sold under their leadership—the de Solos began to establish a competing practice to provide professional medical services in a primary care clinic setting within the same or similar geographic region as CareMax and ClareMedica (the "Competing Business").  Compl. ¶ 5.  As part of these efforts, the de Solos solicited Dr. Cemelus, who on or about April 17, 2025, announced he was ending his employment with ClareMedica effective Friday, April 25, 2025.  His abrupt departure leaves approximately 1,300 patients without their primary care physician.  *Id.*  Dr. Cemelus has verbally and in writing confirmed that he is terminating his employment with ClareMedica to work for the de Solos' Competing Business.  *Id.* ¶ 44.  Dr. Cemelus further confirmed that another former CareMax employee, Dr. Moreno, is working with the de Solos and solicited him at the direction of the de Solos.  *Id.*  ¶ 45.  He acknowledged that his departure from ClareMedica resulted from his conversations with Dr. Moreno and/or the de Solos, all of whom knew of his non-compete.  *Id.* ¶ 46. Immediately prior to announcing his departure, Dr. Cemelus had been in negotiations with ClareMedica's CEO for the renewal of his contract.  *See id.* ¶ 44.  ClareMedica has also learned that Dr. Moreno has called several other ClareMedica doctors on behalf of the de Solos, soliciting them to join the Competing Business.  *Id.* ¶ 51.

## <u>ARGUMENT</u>

The Court should grant ClareMedica's Motion and issue a temporary injunction, requiring Dr. Cemelus to honor his ninety (90) day notice period and prohibiting him from violating the restrictive covenant in his Employment Agreement.  The Court should also enjoin the de Solos and their agents from continuing to interfere with ClareMedica's business operations, including soliciting under contract physicians.  This immediate relief is necessary and appropriate as ClareMedica satisfies each element for granting a temporary injunction.

A temporary injunction can be granted—even without written or oral notice to the adverse party—when "it appears from the specific facts shown by affidavit or verified pleading that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fla. R. Civ. P. 1.610(a)(1)(A).[3]  Granting or denying a temporary injunction is within the discretion of the trial court, *Northwestern National Insurance Co. v. Greenspun,* 330 So.2d 561, 563 (Fla. 3d DCA 1976),        and "[i]n exercising its discretion, the court is guided by established rules and principles of equity jurisprudence, in view of the particular facts presented in the case" while "balancing the possible beneficial results on the one hand with the possible detrimental results on the other."  *Cordis Corp. v. Prooslin*, 482 So. 2d 486, 491 (Fla. 3d DCA 1986).

A party is entitled to a temporary injunction when it establishes: "(1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any possible harm to the respondent, and (4) that the granting of a temporary injunction will not disserve the

---

[3] Here, the de Solos and Dr. Cemelus were provided with notice of the temporary injunction motion, so ClareMedica is not required to explain why notice should not be given.  *See* Fla. R. Civ. P. 1.610(a)(1)(B).

public interest." *Cordis Corp. v. Prooslin*, 482 So. 2d 486, 489–90 (Fla. 3d DCA 1986); *see also Allied Universal Corp. v. Given*, 223 So. 3d 1040, 1042 (Fla. 3d DCA 2017) (same). The purpose of a temporary injunction is to preserve the status quo until a final determination on the merits. *See Glenn v. 1050 Corp.*, 445 So. 2d 625, 626 (Fla. 3d DCA 1984). The status quo is defined as "the last, actual, peaceable, noncontested condition which preceded the pending controversy." *Nazia, Inc. v. Amscot Corp.,* 275 So. 3d 702, 705 (Fla. 5th DCA 2019) (quoting *Chicago Title Ins. Agency of Lee Cnty, Inc. v. Chicago Title Ins. Co.,* 560 So. 2d 296, 297 (Fla. 2d DCA 1990)).

Here, ClareMedica satisfies each element. *First*, ClareMedica is likely to succeed on the merits of its claims against both Dr. Cemelus for violating his notice provision and restrictive covenants by immediately going to work for the Competing Business and the de Solos for tortious interference with ClareMedica's business and unfair competition by using their proprietary knowledge to solicit and hire doctors from ClareMedica. *Second*, the de Solos' and Dr. Cemelus' conduct causes irreparable harm to ClareMedica, including its provision of continued patient care, and damaging ClareMedica's reputation in the community. *Third*, by comparison, the threatened injuries to Dr. Cemelus—not being able to immediately work in violation of a restrictive covenant—and to the de Solos—not being able recruit physicians subject to restrictive covenants just months after pushing CareMax into bankruptcy—do not outweigh the harm to ClareMedica. *Fourth*, the public interest favors ClareMedica as the public has an interest in continued patient care and in ensuring that contracts are upheld and honored. The public will benefit from having ClareMedica, an established care provider, operate in the region. In comparison, the de Solos failed in their last operation of health care clinics.

## A.  ClareMedica Is Likely to Succeed on the Merits of Its Claims.

ClareMedica is likely to succeed on the merits of its claims for breach of contract against Dr. Cemelus for violating the notice provision and restrictive covenants in his Employment Agreement, Compl. ¶¶ 66-77, and against the de Solos for tortious interference with contractual or advantageous business relationships and unfair competition in improperly soliciting CareMedica's employees to breach their employment agreements. *Id.* ¶¶ 78-86.

### 1.  Dr. Cemelus' Employment Agreement Restricts His Ability to Work for Competitor Companies.

Dr. Cemelus has breached the restrictive covenants of his employment agreement with CareMax that are now enforceable by ClareMedica.  A party is entitled to enforce a restrictive covenant when: (1) there is "a writing signed by the person against whom enforcement is sought"; (2) there is "one or more legitimate business interests justifying the restrictive covenant"; (3) the "contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction"; (4) the time restriction is reasonable; and (5) the party has a right to enforce the restrictive covenant. *See* Fla. Stat. § 542.335(1)(a)-(d), (f).  Courts should not "construe a restrictive covenant narrowly [or] against the restraint" and instead must "construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." Fla. Stat. § 542.335(1)(h). As ClareMedica can establish each of these elements, it is likely to succeed on its claim against Dr. Cemelus.

*First*, the Employment Agreement containing the restrictive covenant and ninety (90) days' notice provision is a binding and enforceable contract signed by Dr. Cemelus.  *See* Compl., Ex. A.

*Second*, ClareMedica has a legitimate business interest justifying enforcement of the non-compete provision and for which the contractually specified restraint is reasonably necessary to protect.  A legitimate business interest includes the interest in protecting "substantial

relationships with specific prospective or existing customers, patients or clients" as well as "customer, patient, or client goodwill associated with an ongoing business or professional practice . . . , a specific geographic location, or a specific marketing or trade area." Fla. Stat. § 542.335(1)(b)(3)-(4).  Dr. Cemelus is a primary care physician with ClareMedica, and provides care for over 1,000 patients.  Compl. ¶ 5.  Dr. Cemelus's immediate departure from ClareMedica leaves these patients without their primary care doctor, creating a continuum of care problem. Dr. Cemelus's departure also places those patients at risk of being solicited to transfer to the Competing Business.   This risk is more acute in light of Dr. Cemelus' (and therefore ClareMedica's) established goodwill and patient trust within the close-knit community he serves in Miami-Dade and Broward Counties.  *See* Compl. ¶ 18.  Should Dr. Cemelus be permitted to breach his restrictive covenant, ClareMedica could lose its substantial, developed patient base to the de Solos' Competing Business that was only formed months ago. *Id.* ¶ 5.

Florida appellate courts have routinely recognized the existence of legitimate business interests and upheld injunctions under similar facts.  For example, in *Ansaarie v. First Coast Cardiovascular Inst., P.A.*, 252 So. 3d 287, 290-91 (Fla. 1st DCA 2018), the court upheld a temporary injunction against a doctor formerly employed at a cardiovascular medicine and sleep center, reasoning that the center had legitimate business interests in its relationships with its existing patients and customer goodwill.  Specifically, the court found that the center demonstrated legitimate business interests in its "substantial relationships with its existing patients" who had since requested to transfer their patient files to the competing physician and proved its "substantial investments in developing its existing patient, client, and customer base as well as patient, client, and customer goodwill" in the local county.  *Id.*  Similarly, in *Southernmost Foot & Ankle Specialists, P.A. v. Torregrosa*, 891 So. 2d 591, 594 (Fla. 3d DCA 2004), the court affirmed the

trial court's finding that the employer, a medical podiatry practice, demonstrated that it had legitimate business interests in its "patient base, referral doctors, specific prospective and existing patients, and patient goodwill." There, the employer put forth evidence of how it developed its medical podiatry practice in the local area over a period of twenty years and recruited the competing physician at issue in the case. *Id.* Like the employers in *Ansaarie* and *Torregrosa*, ClareMedica has a legitimate business interest in maintaining its patient base and existing goodwill within the local community; those business interests would be harmed should Dr. Cemelus be permitted to violate his restrictive covenant and work for the de Solos' Competing Business.

*Third*, the restrictive covenant in the Employment Agreement is reasonably necessary to protect ClareMedica's legitimate business interests. The contract restricts Dr. Cemelus' ability to work for any business that is "competitive with, or the same or similar to the primary business of [ClareMedica] anywhere within Miami-Dade County and Broward County and any and all places or areas within a five (5) mile radius" of ClareMedica's headquarters, for a period of 24 months. Ex. A, Employment Agreement, § 5.2 (a). This restriction is reasonably tailored to protect ClareMedica's legitimate interests in maintaining its patient base in the local community. Without it, Dr. Cemelus is free to solicit ClareMedica's patients to the Competing Business, thereby stripping ClareMedica of the patient base, revenues, goodwill, and trust it has established. *See Ansaarie*, 252 So.2d at 291 (finding restrictive covenant with two-year limitation and five-mile radius reasonably necessary to protect interests in maintaining patient base and relationships).

*Fourth*, the two-year time restriction in the restrictive covenant is reasonable. It is not presumed to be unreasonable as a matter of law, *Torregrosa*, 891 So.2d at 594, and Florida courts routinely enforce restrictive covenants with two-year restrictions. *See, e.g.*, *Ansaarie*, 252 So.2d at 291, *Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C.*, 939 So. 2d 268, 269, 273 (Fla. 4th

9

DCA 2006) (affirming trial court's grant of temporary injunction enforcing restrictive covenant with two-year restriction); *R.J. Gators Franchise Sys., Inc. v. MBC Restaurants, Inc.*, No. 2:05CV00494 VMCDNF, 2005 WL 4655379, at *4 (M.D. Fla. Nov. 6, 2005) (non-compete covenant with two year restriction is a "reasonable temporal" restriction); *Supinski v. Omni Healthcare, P.A.*, 853 So.2d 526, 527, 532 (Fla. 5th DCA 2003) (affirming injunction enforcing non-compete covenant with two year restriction).

*Finally*, ClareMedica has a right to enforce the restrictive covenant against Dr. Cemelus. ClareMedica acquired Dr. Cemelus' employment agreement when it purchased CareMax out of bankruptcy. *See* Compl. ¶¶ 19-29 (outlining bankruptcy court filings that provided notice that Dr. Cemelus' Employment Agreement was among the ones to be assumed and assigned to ClareMedica and giving Dr. Cemelus the opportunity to object to such assumption and assignment). ClareMedica is thus entitled to enforce the restrictive covenant against Dr. Cemelus because the "restrictive covenant expressly authorized enforcement by a party's assignee or successor." Fla. Stat. § 542.335(f)(2). Indeed, the Employment Agreement expressly authorizes such enforcement. Compl., Ex. A, § 5.2.6. These provisions are consistent with the plain language of the Florida statutes allowing for ClareMedica, as CareMax's successor, to enforce the restrictive covenant and is consistent with Florida case law holding the same. *Pino v. Spanish Broadcasting Sys. of Fla., Inc.*, 564 So.2d 186, 189 (Fla. 3d DCA 1990) ("Because the contract containing the covenant not to compete included a provision permitting assignment, [employee's] covenant to compete was assignable and, therefore, enforceable, by [employer's successor]."). ClareMedica is entitled to enforce the restrictive covenant against Dr. Cemelus.

In short, ClareMedica can establish that its signed Employment Agreement with Dr. Cemelus contains a restrictive covenant reasonably necessary to protect ClareMedica's

legitimate business interests for a reasonable time frame after Dr. Cemelus leaves the company.

Moreover, ClareMedica can establish that the Employment Agreement contains a notice provision

requiring Dr. Cemelus to provide ninety (90) days' notice of termination of the Employment

Agreement, and that Dr. Cemelus breached such provision by failing to (1) provide ninety (90)

days' notice and (2) continue to provide his services for that full ninety (90) days.  *See* Compl.

¶¶ 64, 75; *id.* at Ex. A, § 3.1.  ClareMedica is thus likely to succeed on its breach of contract claim

against Dr. Cemelus for breach of the non-compete and notice provisions in his Employment

Agreement.

### 2.    ClareMedica Is Likely to Succeed on Its Claims of Tortious Interference and Unfair Competition.

ClareMedica is also likely to succeed on its claims that the de Solos tortiously interfered

with ClareMedica's business operations and engaged in unfair competition by soliciting

ClareMedica's contractual employees to work for their Competing Business.  To state a claim for

tortious interference, a plaintiff must allege "(1) the existence of a business relationship that affords

the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business

relationship; (3) the defendant's intentional and unjustified interference with the relationship; and

(4) damage to the plaintiff."  *Aerotek, Inc. v. Zahn*, 625 F. App'x 394, 395 (11th Cir. 2015) (citation

and internal quotation marks omitted).  The existence of a business relationship need not be

evidenced by an enforceable contract under which the plaintiff has rights.  *Burger King Corp. v.
Ashland Equities, Inc.*, 161 F. Supp. 2d 1331 (S.D. Fla. 2001). Additionally, "there is no single set

of elements that apply uniformly to all claims of unfair competition," and courts have found that

an unfair competition claim can exist when a person acts "contrary to honest practice in industrial

or commercial matters."  *Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*, No.

218CV408FTM38MRM, 2019 WL 277733, at *12 (M.D. Fla. Jan. 22, 2019) (citations and internal

quotation marks omitted). "[C]ourts have applied elements from other established claims to unfair competition claims, where appropriate, on a case-by-case basis," including the elements of a tortious interference claim. *Id.*

Here, ClareMedica is likely to succeed on its tortious interference and unfair competition claims. ClareMedica has existing contractual and/or advantageous business relationships with its physicians, including Dr. Cemelus, that ClareMedica was assigned pursuant to its purchase of CareMax's assets. *See supra* Part A.1. The Employment Agreements assigned to and assumed by ClareMedica afford ClareMedica existing contractual rights, namely for its physicians to remain employed with ClareMedica for a specified term. *See* Ex. A, Employment Agreement Art. 3; *see also Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994) (business relationship "must afford the plaintiff existing or prospective legal or contractual rights"). The de Solos, by virtue of their positions as Chief Executive and Chief Operating Officer of CareMax and MHP, had knowledge of the terms and existence of Dr. Cemelus's and other physicians' Employment Agreements.  Not only did the de Solos know of the existence of the physician relationships and employment agreements, but the de Solos had access to the ***specific terms*** of the relevant employment agreements, including the non-compete provisions, because the de Solos executed the employment agreements on behalf of CareMax. *See* Compl., Ex. A.

In March 2025, after their departure from ClareMedica, the de Solos endeavored to open their Competing Business within the same geographic region as ClareMedica. Compl. ¶ 5. The de Solos, through their agent, solicited Dr. Cemelus to leave his employment with ClareMedica and work for their Competing Business. *Id.* This is an unjustified intentional interference with ClareMedica's physician contracts because, but for the de Solos' efforts, this physician would otherwise carry out his full employment term with ClareMedica. *Charles Wallace Co., Inc. v.*

*Alternative Copier Concepts, Inc.,* 583 So. 2d 396, 397 (Fla. 2d DCA 1991) (tortious interference claim "will lie if the parties' understanding would have been completed if the defendant had not interfered").  Indeed, immediately before announcing his sudden departure, Dr. Cemelus was negotiating a contract extension with ClareMedica's CEO.  When asked about this abrupt change by ClareMedica's CEO, Dr. Cemelus explained that he was terminating his employment with ClareMedica to join the de Solos' Competing Business after conversations with Dr. Moreno, acting as the de Solos' conduit.  Compl. ¶ 47; Mullinix Affidavit, ¶ 6.  ClareMedica's expectations and understanding regarding Dr. Cemelus' employment would have been completed without the de Solos' interference.  As explained above, as a result of this interference and unfair competition, ClareMedica is at risk of losing hundreds of its patients to the Competing Business and losing the goodwill and trust developed as a result of Dr. Cemelus' fluency in Haitian-Creole and acceptance in that tight knit community.   And, the de Solos' solicitations extend beyond ClareMedica's physicians.  They have also tried to recruit at least two other employees of ClareMedica.  Compl. ¶ 53.

Accordingly, ClareMedica is likely to succeed on its tortious interference and unfair competition claims.

**B.  ClareMedica Will Be Irreparably Harmed Absent an Injunction.**

In the context of covenants not to compete, "irreparable injury may be presumed." *Cordis Corp. v. Prooslin*, 482 So. 2d 486, 490 (Fla. 3d DCA 1986) (citing *Capraro v. Lanier Business Products, Inc.,* 466 So.2d 212 (Fla. 1985)); *see also* Fla. Stat. § 542.335(1)(j) ("The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant.").  Injunctive relief is "the favored remedy in cases involving covenants not to compete" because "money damages for breach of non-competition

agreements are either not susceptible to proof with the required degree of certainty." *Cordis Corp. v. Prooslin*, 482 So. 2d 486, 489 (Fla. 3d DCA 1986). Likewise, irreparable injury "is presumed in cases involving tortious interference with business relationships, [so] irreparable injury need not be alleged or proven. *eCapital Commercial Fin. Corp. v. Hitachi Capital Am. Corp.,* 519 F. Supp. 3d 1129, 1136 (S.D. Fla. 2021) (citations omitted); *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co*., 125 F. Supp. 2d 1093, 1105 (S.D. Fla. 2000) (stating that "irreparable injury is presumed in cases involving tortious interference with business relationships) (citing *Dotolo v. Schouten*, 426 So.2d 1013, 1015 (Fla. 2d DCA 1983) for proposition that injunctive relief is "only appropriate remedy in cases involving wrongful interference with business relationship" and *Unistar Corp. v. Child*, 415 So.2d 733, 735 (Fla. 3d DCA 1982) for proposition that injunctive relief is appropriate in tortious interference cases even if irreparable harm or injury is not proven or alleged).

Because this case involves both the violation of a valid and enforceable restrictive covenant and tortious interference with business relationships, ClareMedica is presumed to have suffered irreparable injury. Thus, an injunction is the only appropriate remedy. *See Quirch Foods, LLC v. Broce*, 314 So.3d 327, 343 (Fla. 3d DCA 2020) (reversing denial of temporary injunction to enforce restrictive covenant in employment agreement). But the facts and circumstances here confirm the harms to ClareMedica even without that presumption. The evidence demonstrates irreparable harm through breakdowns in patient care, loss of patients and physicians and damage to good will and reputation from Defendants' breaches and tortious actions.

### C. ClareMedica's Suffered Harm Outweighs Any Harm to the de Solos or Dr. Cemelus.

The submitted pleadings and exhibits demonstrate ClareMedica will suffer significantly greater harm than Dr. Cemelus and the de Solos absent a preliminary injunction. First, with respect

14

to Dr. Cemelus, Florida law is clear that "[i]n determining the enforceability of a restrictive covenant, a court: shall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought." *Quirch Foods LLC*, 314 So. 3d at 342 (citing Fla. Stat. § 542.335(1)(g)(1)).  So any harm that could befall Dr. Cemelus by being required to abide by his contractual obligations is irrelevant to the analysis. Similarly, there is no harm to Dr. Cemelus in abiding by his notice provision and not immediately beginning work in violation of his covenant.

Second, with respect to the de Solos, any harm likely to befall them from being prohibited from soliciting and hiring ClareMedica's employees is minimal compared to ClareMedica's harm. At most, the de Solos will need to find non-ClareMedica physicians to employ for their Competing Business, a task they should manage in light of their experience and contacts in the industry. Indeed, the de Solos are free to hire, and have hired, former CareMax and MHP employees whose contracts have not been assigned to and assumed by ClareMedica.  Compl. ¶ 52. This harm pales in comparison to ClareMedica's harm of losing a substantial portion of its existing patient base and leaving hundreds of patients without a primary care physician. This factor weighs in favor of granting an injunction.

**D.  Granting an Injunction Serves the Public Interest.**

ClareMedica has also demonstrated that an injunction serves the public interest. "[P]ublic policy favors the enforcement of contracts and noncompete agreements, as evidenced by section 542.335." *Alonso-Llamazares v. Int'l Dermatology Rsch., Inc.*, 339 So. 3d 385, 390 (Fla. 3d DCA 2022); *accord Quirch Foods LLC*, 314 So.3d at 343. This public policy applies in equal force to Dr. Cemelus' conduct and the de Solos' conduct:

> Companies who provide confidential information to its employees need to know
> that it will be protected if an employee resigns or is terminated because the non-

> compete agreement will be enforced. Furthermore, enforcing restrictive covenants
> will also discourage employees from breaching their non-compete agreements with
> their former employers and from considering employment with another employer
> whereby they will be participating in unfair competition.

*Id.* Both Dr. Cemelus' and the de Solos' conduct is, respectively, breaching and tortious illegal business conduct that, if not prohibited, would signal to Florida companies that their legitimate business interests will not be protected against improper competition. There is no specifically articulable reason for overriding these public policy interests, so the injunction should be granted. *See id.* ("[A] trial court must specifically articulate an overriding public policy reason if it refuses to enforce a non-compete covenant based on public policy grounds." (citation and quotation omitted)). Finally, the public interest is served by continuing the provision of health care, particularly for seniors and the less affluent.

### E.  The Court Should Hold a Hearing on the Amount of a Bond.

The Florida Rules of Civil Procedure require entering a bond "in an amount the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined."   Rule 1.610(b); *see also* Fla. Stat. § 542.335(j) ("No temporary injunction shall be entered unless the person seeking enforcement of a restrictive covenant gives a proper bond, and the court shall not enforce any contractual provision waiving the requirement of an injunction bond or limiting the amount of such bond.").  This Court should hold a hearing determining the amount of a bond at the hearing on ClareMedica's Motion.

### CONCLUSION

For the reasons stated above, the Court should grant ClareMedica's Motion and enter a temporary injunction enjoining Dr. Cemelus from breaching the non-compete covenant and notice

provision in his Employment Agreement and prohibiting the de Solos from further solicitations of

ClareMedica under contract employees, including Dr. Cemelus.

Respectfully submitted,

/s/ George S. LeMieux
George S. LeMieux
Florida Bar No. 16403
Primary Email: glemieux@gunster.com
Secondary Email: mzayas@gunster.com
Gunster, Yoakley & Stewart, P.A.
450 East Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33401
Telephone: 954-462-2000
Facsimile:  954-523-1722

Jorge Zamora Jr.
Florida Bar No. 94713
Email: jzamora@gunster.com
Gunster, Yoakley & Stewart, P.A.
600 Brickell Ave., Suite 3500
Miami, FL 33131
Telephone: 305-376-6000
Facsimile:  305-376-6010
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I CERTIFY that on April 25, 2025, the foregoing has been electronically filed with the

Court using the Florida Court's E-filing Portal System, and mailed and e-mailed to Alberto de

Solo, 10181 SW 92nd Avenue, Miami, FL 33176, ardesolo@gmail.com, *Defendant;* Carlos de

Solo, 6400 SW 96th Street, Pinecrest, FL 33156, carlos.desolo@gmail.com, *Defendant;* Jones

Cemelus, M.D., 107 Wekiva Pointe Cir., Apopka, Florida 32712, 11233 NW 10th Manor, Coral

Springs, Florida 33071, jones.cemelus@caremax.com, cemelusjones@gmail.com, *Defendant*; and

e-mailed to José A. Ortiz, Homer Bonner Jacobs Ortiz, jortiz@homerbonner.com, *Counsel for*

*Defendants Carlos de Solo and Albert de Solo*; Andrew Herron, Homer Bonner Jacobs Ortiz,

aherron@homerbonner.com, *Counsel for Defendants Carlos de Solo and Albert de Solo*.

/s/ George S. LeMieux
George S. LeMieux

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.

ClareMedica Viking, LLC

               Plaintiff,

v.

Alberto de Solo, Carlos A. de Solo,
and Jones Cemelus, M.D.,

               Defendants.

_____/

## AFFIDAVIT OF MARK L. MULLINIX JR. IN SUPPORT OF PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

I, Mark L. Mullinix Jr., affiant, after first being duly cautioned and sworn, state the following to be true according to personal knowledge:

1.    I am over the age of 18 and I am the Chief Executive Officer of ClareMedica Viking, LLC ("ClareMedica"). I submit this declaration in support of ClareMedica's Verified Complaint. The information set forth in this declaration is true and correct to the best of my knowledge, information, and belief. If called to testify regarding the matters herein, I could and would competently do so based both on my personal knowledge and the business records of ClareMedica.

2.    In my capacity as CEO, I have come to know ClareMedica's internal processes and procedures, including those relating to ClareMedica's acquisition of certain assets previously owned by CareMax, Inc. ("CareMax") through a bankruptcy proceeding. Ultimately, ClareMedica obtained the right to assume any of CareMax's executory contracts and unexpired leases.

3.      One of the contracts assumed by ClareMedica was the employment agreement of
Dr. Cemelus, which is attached to the Complaint as Exhibit A.  Dr. Cemelus also received notice
that his Employment Agreement was among the ones assumed and assigned to ClareMedica.

4.      On April 16, 2025, I met with Dr. Cemelus about his contract, and he agreed to
extend his contract with ClareMedica.

5.      On April 18, however, Dr. Cemelus sent an email notifying me that he was planning
to leave ClareMedica in seven days on April 25, despite his contract containing a 90-day notice
provision.

6.      I spoke with Dr. Cemelus on the morning of April 21 about his decision to leave.
At that time, Dr. Cemelus relayed that he was leaving because he planned to work for the former
Chief Executive Officer and Chief Operating Officer of CareMax—Carlos and Alberto de Solo—
and that he had made that decision after speaking with Dr. Niberto Moreno, the former Chief
Medical Officer of CareMax. Dr. Cemelus stated that the reason he changed his mind about
working with ClareMedica was because he believed his Employment Agreement was invalid after
his conversations with Dr. Moreno and/or the de Solos. I relayed that the Employment Agreement
was valid and that if he chose to violate the contract, ClareMedica would take legal action to
enforce its rights.

7.      That afternoon, I sent Dr. Cemelus an email recapping the morning's conversation
and confirming that ClareMedica intends to enforce the Employment Agreement. That email is
attached to the Complaint as Exhibit C.

8.      Afterward, Dr. Cemelus sent an email to me and ClareMedica's Human Resources
alleging that I had threatened "harm to [Dr. Cemelus]" and "even mentioned my family will suffer,

2

and our lives will be miserable." He also relayed that he "w[ould] take the next 2 days off" because of these alleged threats. That email is attached to the Complaint as Exhibit D.

9.     Dr. Cemelus has not returned to work since sending his email containing false accusations on April 21, 2025.

Executed on this 25 day of April, 2025, at _____1:35 PM ET_____.

**ClareMedica Viking, LLC**

By: _____

Print Name:    Mark L. Mullinix Jr.
Title:             Chief Executive Officer

3

Before me, a Notary Public, in and for said County and State, personally appeared the above name,

_Mark Mollinix_ , who acknowledged that he did sign the foregoing

instrument and that the same is his free act and deed.


In testimony, whereof, I have hereunto set my hand and official seal, this _25_ day of,

_April_ , 20_25_

Notary Public

My commission expires: _Oct 5, 2025_

Ina Molina
Comm.: HH 181590
Expires: Oct. 5, 2025
Notary Public - State of Florida

4

Filing # 222160822 E-Filed 04/30/2025 05:07:39 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-007726-CA-01
SECTION: CA09
JUDGE: Abby Cynamon

**ClareMedica Viking, LLC**

Plaintiff(s)

vs.

**Alberto de Solo et al**

Defendant(s)

_____/

## ORDER ON EMERGENCY MOTION

The Court has read the Emergency Motion and finds and orders as follows:

Counsel for the moving party, together with counsel for the non-moving party, shall cooperate to select the soonest available one-hour time slot via Courtmap for the hearing of this Motion.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 30th day of April, 2025.

2025-007726-CA-01 04-30-2025 2:57 PM

2025-007726-CA-01 04-30-2025 2:57 PM
Hon. Abby Cynamon

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

- George S LeMieux: glemieux@gunster.com
- George S LeMieux: MZayas@gunster.com
- George S LeMieux: eservice@gunster.com

Filing # 222062656 E-Filed 04/29/2023 05:16:34 PM

☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>☑ CIVIL<br>☐ DISTRICTS<br>☐ OTHERS | **CIVIL ACTION SUMMONS (b)**<br>Form for Personal Services on a<br>Natural Person | CASE NUMBER<br>2025-007726-CA-01 |
|---|---|---|
| **PLAINTIFF(S)**<br>ClareMedica Viking, LLC | **VS    DEFENDANT(S)**<br>Alberto de Solo, Carlos A. de Solo, and<br>Jones Cemelus, M.D. | **CLOCK IN** |

**THE STATE OF FLORIDA:** TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s):<br><br>Carlos de Solo | Address:  6400 SW 96th Street<br>Pinecrest, FL 33156 |
|---|---|

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience.

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

### MIAMI-DADE COUNTY COURT LOCATIONS

| ☑ **Dade County Courthouse** (05)<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20)<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | ☐ **Hialeah District Court** (21)<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23)<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
|---|---|---|---|
| ☐ **Miami Beach District Court** (24)<br>Room 200<br>1130 Washington Avenue<br>Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25)<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26)<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney George S. LeMieux<br><br>Florida Bar No.  16403 | Address:<br><br>450 E Las Olas, Ste 1400, Fort Lauderdale, FL 33301 | |
|---|---|---|
| **JUAN FERNANDEZ-BARQUIN<br>CLERK OF THE COURT AND COMPTROLLER<br>MIAMI-DADE COUNTY<br>CIRCUIT AND COUNTY COURTS** | <br><br>DEPUTY CLERK | DATE ON: |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judici al Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | CIVIL ACTION SUMMONS (b) | CASE NUMBER |
|---|---|---|
| ☑ CIVIL<br>☐ DISTRICTS<br>☐ OTHERS | **Form for Personal Services on a Natural Person** | 2025-007726-CA-01 |

| PLAINTIFF(S) | VS     DEFENDANT(S) | CLOCK IN |
|---|---|---|
| ClareMedica Viking, LLC | Alberto de Solo, Carlos A. de Solo, and Jones Cemelus, M.D. | |

**THE STATE OF FLORIDA:**TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s):<br><br>JONES CEMELUS, M.D. | Address: 11233 NW 10th Manor, Coral Springs, Florida 33071<br>or at 107 Wekiva Pointe Cir., Apopka, Florida 32712 |
|---|---|

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience.

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

### MIAMI-DADE COUNTY COURT LOCATIONS

| ☑ **Dade County Courthouse** (05)<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20)<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | ☐ **Hialeah District Court** (21)<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23)<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
|---|---|---|---|
| ☐ **Miami Beach District Court** (24)<br>Room 200<br>1130 Washington Avenue<br>Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25)<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26)<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney George S. LeMieux<br><br>Florida Bar No.   16403 | Address:<br><br><br>450 E Las Olas, Ste 1400, Fort Lauderdale, FL 33301 |
|---|---|

| **JUAN FERNANDEZ-BARQUIN**<br>**CLERK OF THE COURT AND COMPTROLLER**<br>**MIAMI-DADE COUNTY**<br>**CIRCUIT AND COUNTY COURTS** | <br><br><br>DEPUTY CLERK | DATE ON: |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | CIVIL ACTION SUMMONS (b) | CASE NUMBER |
|---|---|---|
| ☑ CIVIL | Form for Personal Services on a | 2025-007726-CA-01 |
| ☐ DISTRICTS | Natural Person | |
| ☐ OTHERS | | |

| PLAINTIFF(S) | VS        DEFENDANT(S) | CLOCK IN |
|---|---|---|
| ClareMedica Viking, LLC | Alberto de Solo, Carlos A. de Solo, and Jones Cemelus, M.D. | |

**THE STATE OF FLORIDA:** TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s): | Address: |
|---|---|
| Alberto de Solo | 10181 SW 92nd Avenue, Miami, FL 33176 |

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience.

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

| | | | |
|---|---|---|---|
| ☑ **Dade County Courthouse** (05) Room 133 73 West Flagler Street Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20) Suite 103 5400 N.W. 22nd Avenue Miami, FL 33142 | ☐ **Hialeah District Court** (21) Room 100 11 East 6th Street Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23) Room 100 15555 Biscayne Blvd. North Miami Beach, FL 33160 |

| | | | |
|---|---|---|---|
| ☐ **Miami Beach District Court** (24) Room 200 1130 Washington Avenue Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25) Room 100 3100 Ponce De Leon Blvd. Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26) Room 1200 10710 SW 211 Street Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney George S. LeMieux | Address: |
|---|---|
| Florida Bar No.   16403 | 450 E Las Olas, Ste 1400, Fort Lauderdale, FL 33301 |

| **JUAN FERNANDEZ-BARQUIN CLERK OF THE COURT AND COMPTROLLER MIAMI-DADE COUNTY CIRCUIT AND COUNTY COURTS** | | DATE ON: |
|---|---|---|
| | DEPUTY CLERK | |

**AMERICANS WITH DISABILITIES ACT OF 1990**
**ADA NOTICE**

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

Filing # 222062656 E-Filed 04/29/2025 05:15:34 PM

☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>☑ CIVIL<br>☐ DISTRICTS<br>☐ OTHERS | **CIVIL ACTION SUMMONS (b)**<br>Form for Personal Services on a<br>Natural Person | **CASE NUMBER**<br>2025-007726-CA-01 |
|---|---|---|
| **PLAINTIFF(S)**<br><br>ClareMedica Viking, LLC | **VS     DEFENDANT(S)**<br><br>Alberto de Solo, Carlos A. de Solo, and<br>Jones Cemelus, M.D. | **CLOCK IN** |

**THE STATE OF FLORIDA:**TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s):<br><br>Carlos de Solo | Address:   6400 SW 96th Street<br><br>                    Pinecrest, FL 33156 |
|---|---|

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience.

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

| ☑ **Dade County Courthouse** (05)<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20)<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | ☐ **Hialeah District Court** (21)<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23)<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
|---|---|---|---|
| ☐ **Miami Beach District Court** (24)<br>Room 200<br>1130 Washington Avenue<br>Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25)<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26)<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney George S. LeMieux<br><br>Florida Bar No.   16403 | Address:<br><br><br>450 E Las Olas, Ste 1400, Fort Lauderdale, FL 33301 |
|---|---|

| **JUAN FERNANDEZ-BARQUIN**<br>**CLERK OF THE COURT AND COMPTROLLER**<br>**MIAMI-DADE COUNTY**<br>**CIRCUIT AND COUNTY COURTS** | 38084<br><br>DEPUTY CLERK | **DATE ON:**<br><br>5/1/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

Filing # 222062656 E-Filed 04/29/2023 05:10:34 PM

☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | CIVIL ACTION SUMMONS (b) | CASE NUMBER |
|---|---|---|
| ☑ CIVIL<br>☐ DISTRICTS<br>☐ OTHERS | Form for Personal Services on a<br>Natural Person | 2025-007726-CA-01 |

| PLAINTIFF(S) | VS    DEFENDANT(S) | CLOCK IN |
|---|---|---|
| ClareMedica Viking, LLC | Alberto de Solo, Carlos A. de Solo, and<br>Jones Cemelus, M.D. | |

**THE STATE OF FLORIDA:**TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s):<br><br>JONES CEMELUS, M.D. | Address: 11233 NW 10th Manor, Coral Springs, Florida 33071<br>or at 107 Wekiva Pointe Cir., Apopka, Florida 32712 |
|---|---|

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience.

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

#### MIAMI-DADE COUNTY COURT LOCATIONS

| ☑ **Dade County Courthouse** (05)<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20)<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | ☐ **Hialeah District Court** (21)<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23)<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
|---|---|---|---|
| ☐ **Miami Beach District Court** (24)<br>Room 200<br>1130 Washington Avenue<br>Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25)<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26)<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney George S. LeMieux<br><br>Florida Bar No.  16403 | Address:<br><br>450 E Las Olas, Ste 1400, Fort Lauderdale, FL 33301 |
|---|---|

| **JUAN FERNANDEZ-BARQUIN**<br>**CLERK OF THE COURT AND COMPTROLLER**<br>**MIAMI-DADE COUNTY**<br>**CIRCUIT AND COUNTY COURTS** | 8084<br><br>DEPUTY CLERK | **DATE ON:**<br><br>5/1/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | CIVIL ACTION SUMMONS (b) | CASE NUMBER |
|---|---|---|
| ☑ CIVIL<br>☐ DISTRICTS<br>☐ OTHERS | Form for Personal Services on a<br>Natural Person | 2025-007726-CA-01 |

| PLAINTIFF(S) | VS     DEFENDANT(S) | CLOCK IN |
|---|---|---|
| ClareMedica Viking, LLC | Alberto de Solo, Carlos A. de Solo, and Jones Cemelus, M.D. | |

**THE STATE OF FLORIDA:**TO EACH SHERIFF OF THE STATE, YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

| To Defendant(s): | Address: |
|---|---|
| Alberto de Solo | 10181 SW 92nd Avenue, Miami, FL 33176 |

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response with the Clerk of the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below. The central location of the Clerk's office is at the Dade County Courthouse. The address for the courthouse, and branch locations are listed below for your convenience.

**"For those unable to pay for an attorney, information on how to seek free legal assistance can be found at www.dadecountyprobono.org."**

**MIAMI-DADE COUNTY COURT LOCATIONS**

| | | | |
|---|---|---|---|
| ☑ **Dade County Courthouse** (05)<br>Room 133<br>73 West Flagler Street<br>Miami, FL 33130 | ☐ **Joseph Caleb Center Court** (20)<br>Suite 103<br>5400 N.W. 22nd Avenue<br>Miami, FL 33142 | ☐ **Hialeah District Court** (21)<br>Room 100<br>11 East 6th Street<br>Hialeah, FL 33010 | ☐ **North Dade Justice Center** (23)<br>Room 100<br>15555 Biscayne Blvd.<br>North Miami Beach, FL 33160 |
| ☐ **Miami Beach District Court** (24)<br>Room 200<br>1130 Washington Avenue<br>Miami Beach, FL 33139 | ☐ **Coral Gables District Court** (25)<br>Room 100<br>3100 Ponce De Leon Blvd.<br>Coral Gables, FL 33134 | ☐ **South Dade Justice Center** (26)<br>Room 1200<br>10710 SW 211 Street<br>Miami, FL 33189 | **SERVICE** |

| Plaintiff/Plaintiff Attorney George S. LeMieux | Address: |
|---|---|
| Florida Bar No.   16403 | 450 E Las Olas, Ste. 1400, Fort Lauderdale, FL 33301 |

| **JUAN FERNANDEZ-BARQUIN**<br>**CLERK OF THE COURT AND COMPTROLLER**<br>**MIAMI-DADE COUNTY**<br>**CIRCUIT AND COUNTY COURTS** | 38084<br>DEPUTY CLERK | **DATE ON:**<br><br>5/1/2025 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174; Email ADA@jud11.flcourts.org; Fax (305) 349-7355 at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-007726-CA-01
SECTION: CA09
JUDGE: Abby Cynamon

**ClareMedica Viking, LLC**

Plaintiff(s)

vs.

**Alberto de Solo et al**

Defendant(s)

_____/

## AGREED ORDER

THIS CAUSE having come before the Court on Movant Alec Covington's Unopposed
Verified Motion for Admission to Appear *Pro Hac Vice* pursuant to Florida Rule of General
Practice and Judicial Administration 2.510, and the Court having reviewed the Motion, and being
fully advised on the premises, it is hereby:

ORDERED and ADJUDGED that Alec Covington will be admitted *Pro Hac Vice* to the above-
named court of the State of Florida for the purposes of representing Plaintiff, ClareMedica Viking,
LLC in this matter.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 6th day of May,
2025.

2025-007726-CA-01 05-06-2025 2:20 PM

2025-007726-CA-01 05-06-2025 2:20 PM
Hon. Abby Cynamon

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

- George S LeMieux: glemieux@gunster.com
- George S LeMieux: MZayas@gunster.com
- George S LeMieux: eservice@gunster.com
- Jose A. Ortiz, Esq.: jortiz@homerbonner.com
- Andrew Herron, Esq.: aherron@homerbonner.com
- Simon Ferrer, Esq.: simon@theferrofirm.com

Filing # 222526875 E-Filed 05/06/2025 02:31:19 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-007726-CA-01
SECTION: CA09
JUDGE: Abby Cynamon

**ClareMedica Viking, LLC**

Plaintiff(s)

vs.

**Alberto de Solo et al**

Defendant(s)

_____/

## AGREED ORDER

THIS CAUSE having come before the Court on Movant Alec J. Smith's Unopposed
Verified Motion for Admission to Appear *Pro Hac Vice* pursuant to Florida Rule of General
Practice and Judicial Administration 2.510, and the Court having reviewed the Motion, and being
fully advised on the premises, it is hereby:

ORDERED and ADJUDGED that Alec J. Smith will be admitted *Pro Hac Vice* to the above-
named court of the State of Florida for the purposes of representing Plaintiff, ClareMedica Viking,
LLC in this matter.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 6th day of May,
2025.

2025-007726-CA-01 05-06-2025 2:20 PM

**2025-007726-CA-01 05-06-2025 2:20 PM**
Hon. Abby Cynamon

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

- George S LeMieux: glemieux@gunster.com
- George S LeMieux: MZayas@gunster.com
- George S LeMieux: eservice@gunster.com
- Jose A. Ortiz, Esq.: jortiz@homerbonner.com
- Andrew Herron, Esq.: aherron@homerbonner.com
- Simon Ferrer, Esq.: simon@theferrofirm.com

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-007726-CA-01
SECTION: CA09
JUDGE: Abby Cynamon

**ClareMedica Viking, LLC**

Plaintiff(s)

vs.

**Alberto de Solo et al**

Defendant(s)

_____/

## AGREED ORDER

THIS CAUSE having come before the Court on Movant Robert W. McFarland's
Unopposed Verified Motion for Admission to Appear *Pro Hac Vice* pursuant to Florida Rule of
General Practice and Judicial Administration 2.510, and the Court having reviewed the Motion, and
being fully advised on the premises, it is hereby:

ORDERED and ADJUDGED that Robert W. McFarland will be admitted *Pro Hac Vice* to the
above-named court of the State of Florida for the purposes of representing Plaintiff, ClareMedica
Viking, LLC in this matter.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 6th day of May,
2025.

2025-007726-CA-01 05-06-2025 2:20 PM

2025-007726-CA-01 05-06-2025 2:20 PM
Hon. Abby Cynamon

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

- George S LeMieux: glemieux@gunster.com
- George S LeMieux: MZayas@gunster.com
- George S LeMieux: eservice@gunster.com
- Jose A. Ortiz, Esq.: jortiz@homerbonner.com
- Andrew Herron, Esq.: aherron@homerbonner.com
- Simon Ferrer, Esq.: simon@theferrofirm.com

**IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA
CASE NO. 2025-007726-CA-01**

ClareMedica Viking, LLC

        Plaintiff,

v.

Alberto de Solo, Carlos A. de Solo,
and Jones Cemelus, M.D.,

        Defendants.

_____/

### UNOPPOSED VERIFIED MOTION FOR ADMISSION TO APPEAR PRO HAC VICE PURSUANT TO FLORIDA RULE OF GENERAL PRACTICE AND JUDICIAL ADMINISTRATION 2.510

Comes now Alec Covington, Movant herein, and respectfully represents the following:

1.    Movant resides in Charlotte, North Carolina 28207. Movant is not a resident of the State of Florida.

2.    Movant is an attorney in the law firm of McGuireWoods LLP, with offices at 201 North Tryon Street, Suite 3000, Charlotte, NC 28202-2146, telephone number (704) 343-2349.

3.    The above-named law firm was retained on or about March 19, 2025 to provide legal representation in connection with the above-styled matter now pending before the above-named court of the State of Florida. The above-named law firm represents **ClareMedica Viking, LLC** in this matter.

4.    Movant is an active member in good standing and currently eligible to practice law in the following jurisdictions:

ACTIVE:35977327.1

| JURISDICTION | BAR NUMBER |
|---|---|
| State Bar of North Carolina | 45956 |
| U.S. District Court for the Western District of North Carolina | |
| U.S. District Court for the Eastern District of North Carolina | |
| U.S. District Court for the Middle District of North Carolina | |

5.    A judicial officer or the entity responsible for attorney regulation has neither initiated disciplinary, suspension, disbarment or contempt proceedings or disciplined, suspended, disbarred or held Movant in contempt in the preceding 5 years.

6.    Movant, either by resignation, withdrawal, or otherwise never has terminated or attempted to terminate Movant's office as an attorney in order to avoid administrative, disciplinary, disbarment, or suspension proceedings.

7.    Movant is not an inactive member of The Florida Bar.

8.    Movant is not now a member of The Florida Bar.

9.    Movant is not a suspended member of The Florida Bar.

10.    Movant is not a disbarred member of The Florida Bar nor has Movant received a disciplinary resignation or disciplinary revocation from The Florida Bar.

11.    Movant has not previously been disciplined or held in contempt by reason of misconduct committed while engaged in representation pursuant to Florida Rule of General Practice and Judicial Administration 2.510.

12.    Movant has filed a motion to appear as counsel in Florida state courts during the past five (5) years.

| Date of Motion | Case Name | Case Number | Court | Motion Granted/Denied |
|---|---|---|---|---|
| 2/3/2021 | MGM Professional Services v. TD Bank, et al. | 12-0027830 CACE | 17th Judicial Circuit Broward County | Granted |

13.     Local counsel of record associated with Movant in this matter is Gunster, Yoakley & Stewart, P.A. and its attorney George S. LeMieux (Florida Bar No. 16403) who is an active member in good standing of The Florida Bar and has offices at 450 E. Las Olas Blvd., Suite 1400, Ft. Lauderdale, Broward County, Florida 33301, telephone number (954) 462-2000.

14.     Movant has read the applicable provisions of Florida Rule of General Practice and Judicial Administration 2.510 and Rule 1-3.10 of the Rules Regulating The Florida Bar and certified that this verified motion complies with those rules.

15.     Movant agrees to comply with the provisions of the Florida Rules of Professional Conduct and consents to the jurisdiction of the courts and the Bar of the State of Florida.

16.     Plaintiff does not oppose the relief requested herein.

WHEREFORE, Movant respectfully request permission to appear in this court for this cause only.

DATED this 6th day of May, 2025.

Alec Covington
(North Carolina Bar No. 45956)
McGuireWoods LLP
201 North Tryon Street, Suite 3000,
Charlotte, NC 28202-2146
Tele: (704) 343-2349
acovington@mcguirewoods.com

COUNTY OF MECKLENBURG

STATE OF NORTH CAROLINA

I, Alec Covington, do hereby swear or affirm under penalty of perjury that I am the Movant in the above-styled matter; that I have read the foregoing Motion and know the contents thereof, and the contents are true of my own knowledge and belief.

_____
Alec Covington, Movant

I hereby consent to be associated as local counsel of record in this cause pursuant to Florida Rule of General Practice and Judicial Administration 2.510.

DATED this 6th day of May, 2025.

/s/ George S. LeMieux
George S. LeMieux, Esq.
Florida Bar No.: 16403
Gunster, Yoakley & Stewart, P.A.
450 E. Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: (954) 462-2000
Fax:  (954) 523-1722

**Attorneys for
ClareMedica Viking, LLC**

## **CERTIFICATE OF GOOD FAITH CONFERRAL**

I certify that prior to filing this motion, I conferred with the opposing party and/or counsel and they do not oppose the filing of this motion.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing motion will be served on the parties on the attached Service List and on PHV Admissions, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2333, accompanied by payment of the $250.00 filing fee made payable to The Florida Bar, and that the Movant will pay the fees described in the Rules Regulating the Florida Bar concerning non-Florida lawyers appearances in a Florida court on this 6th day of May, 2025 for Miami-Dade County Circuit Court.


*/s/ George S. LeMieux*
George S. LeMieux, Esq.

ACTIVE:35977327.1

### <u>SERVICE LIST</u>

José A. Ortiz, Esq.
Andrew Herron, Esq.
Homer Bonner Jacobs Ortiz
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Tele: (305) 350-5100
jortiz@homerbonner.com
aherron@homerbonner.com
*Counsel for Defendants, Carlos de Solo and Albert de Solo*

Simon Ferrer, Esq.
The Ferro Law Firm, P.A.
255 Alhambra Cir Fl 8
Coral Gables, FL 33134-7411
Tele: 305-448-1033
simon@theferrofirm.com
*Counsel for Defendant, Jones Cemelus, M.D.*

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA**
**CASE NO. 2025-007726-CA-01**

ClareMedica Viking, LLC

       Plaintiff,

v.

Alberto de Solo, Carlos A. de Solo,
and Jones Cemelus, M.D.,

       Defendants.

_____/

## UNOPPOSED VERIFIED MOTION FOR ADMISSION TO APPEAR PRO HAC VICE PURSUANT TO FLORIDA RULE OF GENERAL PRACTICE AND JUDICIAL ADMINISTRATION 2.510

Comes now Alec J. Smith, Movant herein, and respectfully represents the following:

1.    Movant resides in West Chicago, Illinois.  Movant is not a resident of the State of Florida.

2.    Movant is an attorney in the law firm of McGuireWoods, with offices at 77 West Wacker Drive, Suite 4100, Chicago, IL 60601-1818, telephone number (312) 849-8123.

3.    The above-named law firm was retained on or about March 19, 2025 to provide legal representation in connection with the above-styled matter now pending before the above-named court of the State of Florida.  The above-named law firm represents **ClareMedica Viking, LLC** in this matter.

4.    Movant is an active member in good standing and currently eligible to practice law in the following jurisdictions:

| JURISDICTION | BAR NUMBER |
|---|---|
| State Bar of Illinois | 6344078 |
| State Bar of Colorado | 44203 |
| U.S. Court of Appeals for the Armed Forces | 12/15/2014 |

5.    A judicial officer or the entity responsible for attorney regulation has neither initiated disciplinary, suspension, disbarment or contempt proceedings or disciplined, suspended, disbarred or held Movant in contempt in the preceding 5 years.

6.    Movant, either by resignation, withdrawal, or otherwise never has terminated or attempted to terminate Movant's office as an attorney in order to avoid administrative, disciplinary, disbarment, or suspension proceedings.

7.    Movant is not an inactive member of The Florida Bar.

8.    Movant is not now a member of The Florida Bar.

9.    Movant is not a suspended member of The Florida Bar.

10.    Movant is not a disbarred member of The Florida Bar nor has Movant received a disciplinary resignation or disciplinary revocation from The Florida Bar.

11.    Movant has not previously been disciplined or held in contempt by reason of misconduct committed while engaged in representation pursuant to Florida Rule of General Practice and Judicial Administration 2.510.

12.    Movant has not filed a motion to appear as counsel in Florida state courts during the past five (5) years.

13.     Local counsel of record associated with Movant in this matter is
Gunster, Yoakley & Stewart, P.A. and its attorney George S. LeMieux (Florida
Bar No. 16403) who is an active member in good standing of The Florida Bar
and has offices at 450 E. Las Olas Blvd., Suite 1400, Ft. Lauderdale, Broward
County, Florida 33301, telephone number (954) 462-2000.

14.     Movant has read the applicable provisions of Florida Rule of
General Practice and Judicial Administration 2.510 and Rule 1-3.10 of the
Rules Regulating The Florida Bar and certified that this verified motion
complies with those rules.

15.     Movant agrees to comply with the provisions of the Florida Rules of
Professional Conduct and consents to the jurisdiction of the courts and the Bar
of the State of Florida.

16.     Plaintiff does not oppose the relief requested herein.

WHEREFORE, Movant respectfully request permission to appear in this
court for this cause only.

DATED this 6th day of May, 2025.

_____
Alec J. Smith
(Illinois Bar No. 6344078)
McGuireWoods
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Tele: (312) 849-8123
ajsmith@mcguirewoods.com

COUNTY OF COOK

STATE OF ILLINOIS

I, Alec J. Smith, do hereby swear or affirm under penalty of perjury that I am the Movant in the above-styled matter; that I have read the foregoing Motion and know the contents thereof, and the contents are true of my own knowledge and belief.

_____
Alec J. Smith, Movant

I hereby consent to be associated as local counsel of record in this cause pursuant to Florida Rule of General Practice and Judicial Administration 2.510.

DATED this 6th day of May, 2025.

/s/ George S. LeMieux
George S. LeMieux, Esq.
Florida Bar No.: 16403
Gunster, Yoakley & Stewart, P.A.
450 E. Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: (954) 462-2000
Fax:  (954) 523-1722

**Attorneys for
ClareMedica Viking, LLC**

## CERTIFICATE OF GOOD FAITH CONFERRAL

I certify that prior to filing this motion, I conferred with the opposing party and/or counsel and they do not oppose the filing of this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion will be served on the parties on the attached Service List and on PHV Admissions, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2333, accompanied by payment of the $250.00 filing fee made payable to The Florida Bar, and that the Movant will pay the fees described in the Rules Regulating the Florida Bar concerning non-Florida lawyers appearances in a Florida court on this 6th day of May, 2025 for Miami-Dade County Circuit Court.

*/s/ George S. LeMieux*
George S. LeMieux, Esq.

## <u>SERVICE LIST</u>

José A. Ortiz, Esq.
Andrew Herron, Esq.
Homer Bonner Jacobs Ortiz
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Tele: (305) 350-5100
jortiz@homerbonner.com
aherron@homerbonner.com
*Counsel for Defendants, Carlos de Solo and Albert de Solo*

Simon Ferrer, Esq.
The Ferro Law Firm, P.A.
255 Alhambra Cir Fl 8
Coral Gables, FL 33134-7411
Tele: 305-448-1033
simon@theferrofirm.com
*Counsel for Defendant, Jones Cemelus, M.D.*

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA**
**CASE NO. 2025-007726-CA-01**

ClareMedica Viking, LLC

       Plaintiff,

v.

Alberto de Solo, Carlos A. de Solo,
and Jones Cemelus, M.D.,

       Defendants.

_____/

## UNOPPOSED VERIFIED MOTION FOR ADMISSION TO APPEAR PRO HAC VICE PURSUANT TO FLORIDA RULE OF GENERAL PRACTICE AND JUDICIAL ADMINISTRATION 2.510

Comes now Robert W. McFarland, Movant herein, and respectfully represents the following:

1.    Movant resides in Norfolk, Virginia.  Movant is not a resident of the State of Florida.

2.    Movant is an attorney in the law firm of McGuireWoods, with offices at World Trade Center, 101 West Main Street, Suite 9000, Norfolk, VA 23510-1655, telephone number (757) 640-3716.

3.    The above-named law firm was retained on or about March 19, 2025 to provide legal representation in connection with the above-styled matter now pending before the above-named court of the State of Florida.  The above-named law firm represents **ClareMedica Viking, LLC** in this matter.

4.    Movant is an active member in good standing and currently eligible to practice law in the following jurisdictions:

ACTIVE:35977413.1

| JURISDICTION | BAR NUMBER |
|---|---|
| State Bar of Virginia | Virginia State Bar No. 24021 |
| U.S. Court of Appeals for the Fourth Circuit | Virginia State Bar No. 24021 |
| U.S. Court of Appeals for the Eleventh Circuit | Virginia State Bar No. 24021 |
| U.S. District Court for the Eastern District of Virginia | Virginia State Bar No. 24021 |
| U.S. District Court for the Western District of Virginia | Virginia State Bar No. 24021 |
| Supreme Court of Virginia | Virginia State Bar No. 24021 |
| U.S. Supreme Court | Virginia State Bar No. 24021 |

5.     A judicial officer or the entity responsible for attorney regulation has neither initiated disciplinary, suspension, disbarment or contempt proceedings or disciplined, suspended, disbarred or held Movant in contempt in the preceding 5 years.

6.     Movant, either by resignation, withdrawal, or otherwise never has terminated or attempted to terminate Movant's office as an attorney in order to avoid administrative, disciplinary, disbarment, or suspension proceedings.

7.     Movant is not an inactive member of The Florida Bar.

8.     Movant is not now a member of The Florida Bar.

9.     Movant is not a suspended member of The Florida Bar.

10.     Movant is not a disbarred member of The Florida Bar nor has Movant received a disciplinary resignation or disciplinary revocation from The Florida Bar.

11.     Movant has not previously been disciplined or held in contempt by reason of misconduct committed while engaged in representation pursuant to Florida Rule of General Practice and Judicial Administration 2.510.

12.     Movant has not filed a motion to appear as counsel in Florida state courts during the past five (5) years.

13.     Local counsel of record associated with Movant in this matter is Gunster, Yoakley & Stewart, P.A. and its attorney George S. LeMieux (Florida Bar No. 16403) who is an active member in good standing of The Florida Bar and has offices at 450 E. Las Olas Blvd., Suite 1400, Ft. Lauderdale, Broward County, Florida 33301, telephone number (954) 462-2000.

14.     Movant has read the applicable provisions of Florida Rule of General Practice and Judicial Administration 2.510 and Rule 1-3.10 of the Rules Regulating The Florida Bar and certified that this verified motion complies with those rules.

15.     Movant agrees to comply with the provisions of the Florida Rules of Professional Conduct and consents to the jurisdiction of the courts and the Bar of the State of Florida.

16.     Plaintiff does not oppose the relief requested herein.

WHEREFORE, Movant respectfully request permission to appear in this court for this cause only.

DATED this 6th day of May, 2025.

Robert W. McFarland
(Virginia Bar No. 24021)
McGuireWoods
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Tele: (757) 640-3716
rmcfarland@mcguirewoods.com

ACTIVE:35977413.1

CITY OF NORFOLK

COMMONWEALTH OF VIRGINIA

    I, Robert W. McFarland, do hereby swear or affirm under penalty of perjury that I am the Movant in the above-styled matter; that I have read the foregoing Motion and know the contents thereof, and the contents are true of my own knowledge and belief.

                                        Robert W. McFarland, Movant

    I hereby consent to be associated as local counsel of record in this cause pursuant to Florida Rule of General Practice and Judicial Administration 2.510.

    DATED this 6th day of May, 2025.

                                */s/ George S. LeMieux*
                                George S. LeMieux, Esq.
                                Florida Bar No.: 16403
                                Gunster, Yoakley & Stewart, P.A.
                                450 E. Las Olas Blvd., Suite 1400
                                Ft. Lauderdale, Florida 33301
                                Telephone: (954) 462-2000
                                Fax:  (954) 523-1722

                                ***Attorneys for***
                                ***ClareMedica Viking, LLC***

## **CERTIFICATE OF GOOD FAITH CONFERRAL**

I certify that prior to filing this motion, I conferred with the opposing party and/or counsel and they do not oppose the filing of this motion.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing motion will be served on the parties on the attached Service List and on PHV Admissions, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2333, accompanied by payment of the $250.00 filing fee made payable to The Florida Bar, and that the Movant will pay the fees described in the Rules Regulating the Florida Bar concerning non-Florida lawyers appearances in a Florida court on this 6th day of May, 2025 for Miami-Dade County Circuit Court.

*/s/ George S. LeMieux*
George S. LeMieux, Esq.

ACTIVE:35977413.1

## <u>SERVICE LIST</u>

José A. Ortiz, Esq.
Andrew Herron, Esq.
Homer Bonner Jacobs Ortiz
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Tele: (305) 350-5100
jortiz@homerbonner.com
aherron@homerbonner.com
*Counsel for Defendants, Carlos de Solo and Albert de Solo*

Simon Ferrer, Esq.
The Ferro Law Firm, P.A.
255 Alhambra Cir Fl 8
Coral Gables, FL 33134-7411
Tele: 305-448-1033
simon@theferrofirm.com
*Counsel for Defendant, Jones Cemelus, M.D.*

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

ClareMedica Viking, LLC

**CASE NO. 2025-007726-CA-01**

          Plaintiff,

v.

Alberto de Solo, Carlos A. de Solo,
and Jones Cemelus, M.D.,

          Defendants.

_____/

## NOTICE OF APPEARANCE AND INCORPORATED
## <u>NOTICE OF DESIGNATION OF E-MAIL ADDRESSES FOR SERVICE</u>

    Jorge Zamora, Jr., Esq. of the law firm of Gunster, Yoakley & Stewart, P.A., hereby enters

his appearance as counsel for Plaintiff, ClareMedica Viking, LLC., in the above-styled case, and

requests that any and all pleadings or other matters pertaining to this matter be directed to the

undersigned and hereby files a Notice of Designation of E-mail Addresses for Service, pursuant to

Florida Rule of Judicial Administration 2.516(b)(1)(A), and requests that service of all pleadings

and documents in the above-styled cause of action be sent to the undersigned via e-mail at the

following e-mail addresses:

           **Primary:**    **jzamora@gunster.com**
           **Secondary:**  **dusuga@gunster.com**
           **Alternate:**   **eservice@gunster.com**

           Respectfully submitted,

           */s/ Jorge Zamora, Jr.*
           Jorge Zamora, Jr.
           Florida Bar No. 94713
           Primary Email: jzamora@gunster.com
           Secondary Email: dusuga@gunster.com

1

ACTIVE:35988825.1

Gunster, Yoakley & Stewart, P.A.
600 Brickell Ave., Suite 3500
Miami, FL 33131
Telephone: 305-376-6000
Facsimile:  305-376-6010

George S. LeMieux
Florida Bar No. 16403
Primary Email: glemieux@gunster.com
Secondary Email: mzayas@gunster.com
Gunster, Yoakley & Stewart, P.A.
450 East Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33401
Telephone: 954-462-2000
Facsimile:  954-523-1722
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the

Court using the E-Filing Portal.  I further certify that the foregoing document is being served via

transmission of Notices of Electronic Filing generated by the E-Filing Portal and being sent by

email on the following parties:

José A. Ortiz, Esq.
Andrew Herron, Esq.
Homer Bonner Jacobs Ortiz
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Tele: (305) 350-5100
jortiz@homerbonner.com
aherron@homerbonner.com
*Counsel for Defendants, Carlos de Solo and Albert de Solo*

Simon Ferrer, Esq.
The Ferro Law Firm, P.A.
255 Alhambra Cir Fl 8
Coral Gables, FL 33134-7411
Tele: 305-448-1033
simon@theferrofirm.com
*Counsel for Defendant, Jones Cemelus, M.D.*

*/s/ Jorge Zamora, Jr.*
Jorge Zamora, Jr.

2

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2025-007726-CA-01</u>
SECTION: <u>CA09</u>
JUDGE: <u>Abby Cynamon</u>

**ClareMedica Viking, LLC**

Plaintiff(s)

vs.

**Alberto de Solo et al**

Defendant(s)

_____/

**LIVE/IN-PERSON
<u>NOTICE OF SPECIAL SET HEARING</u>**

<u>**CLAREMEDICA VIKING, LLC'S MOTION FOR TEMPORARY INJUNCTION AND
MEMORANDUM IN SUPPORT THEREOF (EVIDENTIARY HEARING)**</u>

    **YOU ARE HEREBY NOTIFIED** that, a Special Set hearing on the above cause is scheduled for **<u>4 hr</u>** on **<u>06-10-2025</u>** at **<u>10:00 AM</u>** in Room **<u>511</u>** at the **<u>Dade County Courthouse</u>, <u>73 West Flagler Street, Miami, FL 33130</u>**.

<u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the above notice was delivered to the parties below on **<u>05-23-2025</u>**.


**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

**Electronically Served:**

- George S LeMieux: glemieux@gunster.com
- George S LeMieux: MZayas@gunster.com
- George S LeMieux: eservice@gunster.com
- Jose A. Ortiz, Esq.: jortiz@homerbonner.com
- Andrew Herron, Esq.: aherron@homerbonner.com
- Simon Ferrer, Esq.: simon@theferrofirm.com
- Jorge Zamora Jr.: jzamora@gunster.com
- Jorge Zamora Jr.: dusuga@gunster.com
- Jorge Zamora Jr.: eservice@gunster.com

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2025-007726-CA-01

CLAREMEDICA VIKING, LLC,

     Plaintiff,

v.

ALBERTO DE SOLO, CARLOS A.
DE SOLO, AND JONES CEMELUS,
M.D.,

     Defendants.

_____/

## DEFENDANTS ALBERTO DE SOLO AND
## CARLOS A. DE SOLO'S ANSWER AND AFFIRMATIVE DEFENSES

Pursuant to Florida Rule of Civil Procedure 1.110(c), Defendants Alberto de Solo and

Carlos A. de Solo (collectively referred to as the "De Solo Defendants") answer the Complaint for

Damages and Injunctive Relief [DIN 2] filed by Plaintiff ClareMedica Viking, LLC by denying

each and every allegation unless specifically admitted in this answer. As to each corresponding

numbered paragraph, the De Solo Defendants answer as follows:

## NATURE OF THE ACTION

1.     The De Solo Defendants are without sufficient knowledge to admit or deny the

allegations in Paragraph 1. As such, those allegations are denied.

2.     Admitted.

3.     Admitted that "Carlos" was the Chief Executive Officer of CareMax and MHP, and

"Alberto" was the Chief Operating Officer of CareMax and MHP. Denied as to the remaining

allegations.

4.     Denied.

CASE NO.: 2025-007726-CA-01

5.      Denied.

## **PARTIES, JURISDICTION, AND VENUE**

6.      The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 6. As such, those allegations are denied.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     Admitted for purposes of establishing personal jurisdiction. Denied as to the remaining allegations.

11.      Admitted for purposes of establishing jurisdiction. Denied as to the remaining allegations.

12.     Admitted for purposes of establishing venue. Denied as to the remaining allegations.

13.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 13. As such, those allegations are denied.

14.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 14. As such, those allegations are denied.

## **FACTUAL BACKGROUND**

### **A.  ClareMedica's Operations**

15.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 15. As such, those allegations are denied.

16.     Admitted.

17.     Denied.

2

CASE NO.: 2025-007726-CA-01

18.      Denied.

**B. CareMax's Bankruptcy Proceedings and the Assignment of Dr. Cemelus's Employment Agreement to ClareMedica**

19.      The De Solo Defendants state the bankruptcy filings speak for themselves. Plaintiff does not completely describe the filings and therefore the De Solo Defendants deny the allegations of Paragraph 19.

20.      The De Solo Defendants state that the bankruptcy filings speak for themselves. Plaintiff does not completely describe the filings and therefore the De Solo Defendants deny the allegations in Paragraph 20.

21.      The De Solo Defendants state that the bankruptcy filings speak for themselves. Plaintiff does not completely describe the filings and therefore the De Solo Defendants deny the allegations in Paragraph 21.

22.      The De Solo Defendants state that the bankruptcy filings speak for themselves. Plaintiff does not completely describe the filings and therefore the De Solo Defendants deny the allegations in Paragraph 22.

23.      The De Solo Defendants state that the bankruptcy filings speak for themselves. Plaintiff does not completely describe the filings and therefore the De Solo Defendants deny the allegations in Paragraph 23.

24.      The De Solo Defendants state that the bankruptcy filings speak for themselves. Plaintiff does not completely describe the filings and therefore the De Solo Defendants deny the allegations in Paragraph 24.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO.: 2025-007726-CA-01

25.     The De Solo Defendants state that the bankruptcy filings speak for themselves. Plaintiff does not completely describe the filings and therefore the De Solo Defendants deny the allegations in Paragraph 25.

26.     The De Solo Defendants state that the bankruptcy filings speak for themselves. Plaintiff does not completely describe the filings and therefore the De Solo Defendants deny the allegations in Paragraph 26.

27.     The De Solo Defendants state that the bankruptcy filings speak for themselves. Plaintiff does not completely describe the filings and therefore the De Solo Defendants deny the allegations in Paragraph 27.

28.     The De Solo Defendants state that the bankruptcy filings speak for themselves. Plaintiff does not completely describe the filings and therefore the De Solo Defendants deny the allegations in Paragraph 28.

29.     Denied.

## C. Dr. Cemelus's Employment Agreement Contains Restrictive Covenants, an Injunctive Relief Stipulation, and a Notice Requirement

30.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 30. As such, those allegations are denied.

31.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 31. As such, those allegations are denied.

32.     Denied.

33.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 33. As such, those allegations are denied.

34.     Denied.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO.: 2025-007726-CA-01

35.     The De Solo Defendants state that the Employment Agreement speaks for itself. Plaintiff does not completely describe the contract and therefore the De Solo Defendants deny the allegations in Paragraph 35.

36.     The De Solo Defendants state that the Employment Agreement speaks for itself. Plaintiff does not completely describe the contract and therefore the De Solo Defendants deny the allegations in Paragraph 36.

37.     The De Solo Defendants state that the Employment Agreement speaks for itself. Plaintiff does not completely describe the contract and therefore the De Solo Defendants deny the allegations in Paragraph 37.

38.     The De Solo Defendants state that the Employment Agreement speaks for itself. Plaintiff does not completely describe the contract and therefore the De Solo Defendants deny the allegations in Paragraph 38.

39.     The De Solo Defendants state that the Employment Agreement speaks for itself. Plaintiff does not completely describe the contract and therefore the De Solo Defendants deny the allegations in Paragraph 39.

40.     The De Solo Defendants state that the Employment Agreement speaks for itself. Plaintiff does not completely describe the contract and therefore the De Solo Defendants deny the allegations in Paragraph 40.

41.     The De Solo Defendants state that the Employment Agreement speaks for itself. Plaintiff does not completely describe the contract and therefore the De Solo Defendants deny the allegations in Paragraph 41.

42.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 42. As such, those allegations are denied.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO.: 2025-007726-CA-01

43.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 43. As such, those allegations are denied.

**D.      The de Solos Interfere with Dr. Cemelus's Contract By Hiring Him And Engaging In Unlawful Competition**

44.     The De Solo Defendants do not know what or when ClareMedica "learned" anything. Therefore, the allegations are denied.

45.     The De Solo Defendants do not know what or when ClareMedica "learned" anything. Therefore, the allegations are denied.

46.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 46. As such, those allegations are denied.

47.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 47. As such, those allegations are denied.

48.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 48. As such, those allegations are denied.

49.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 49. As such, those allegations are denied.

50.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 50. As such, those allegations are denied.

51.     Denied.

52.     The De Solo Defendants do not know what or when ClareMedica "learned" anything. Therefore, the allegations are denied.

53.     Denied.

54.     Denied.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO.: 2025-007726-CA-01

55.     Denied.

**E. ClareMedica Attempts to Resolve Defendants' Unlawful Conduct Without Judicial Intervention.**

56.     Admitted that the notice was sent. Denied that the De Solo Defendants engaged in any unlawful conduct.

57.     Admitted that the notice was sent. Denied that the De Solo Defendants engaged in any unlawful conduct.

58.     Admitted that the notice was sent. Denied that the De Solo Defendants engaged in any unlawful conduct.

59.     Admitted.

60.     Denied.

61.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 61. As such, those allegations are denied.

62.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 62. As such, those allegations are denied.

63.     The De Solo Defendants state that the Cemelus Cease and Desist letter speaks for itself. Plaintiff does not completely describe the letter and therefore the De Solo Defendants deny the allegations in Paragraph 63.

64.     The De Solo Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 64. As such, those allegations are denied.

65.     Denied.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO.: 2025-007726-CA-01

## CAUSES OF ACTION

## COUNT I: BREACH OF CONTRACT (Dr. Cemelus)

66.     The De Solo Defendants reallege their responses to paragraphs 1-65 as if they were fully pled here. This count does not seek relief against the De Solo Defendants; therefore, they are not responding to allegations 67-77.

## COUNT II: TORTIOUS INTERFERENCE WITH CONTRACTUAL OR ADVANTAGEOUS BUSINESS RELATIONSHIPS (Carlos and Alberto de Solo)

78.     The De Solo Defendants reallege their responses to paragraphs 1-77 as if they were fully pled here.

79.     Paragraph 79 states a premise of law that need not be admitted or denied. To the extent an answer is required, Paragraph 79 is denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

## COUNT III: COMMON LAW UNFAIR COMPETITION (Carlos and Alberto de Solo)

87.     The De Solo Defendants reallege their responses to paragraphs 1-86 as if they were fully pled here.

88.     Paragraph 88 states a premise of law that need not be admitted or denied. To the extent an answer is required, Paragraph 88 is denied.

8

CASE NO.: 2025-007726-CA-01

89.    Denied.

90.    Denied.

91.    Denied.

## **DEFENSES AND AFFIRMATIVE DEFENSES**

Plaintiff's claims are barred by the defenses set forth below. By setting forth these defenses,

the De Solo Defendants do not assume the burden of proving any fact, issue or element of a cause

of action where such burden properly belongs to Plaintiff. Moreover, nothing herein stated is

intended or shall be construed as an acknowledgment that any particular issue or subject matter is

relevant to Plaintiff's allegations. The De Solo Defendants reserve the right to seek leave to plead

any and all affirmative defenses that may become evident or appreciated after investigation and

discovery in this matter.

## **First Defense**

Plaintiff's allegations in the Complaint are plainly negated by filings in the CareMax

bankruptcy proceedings of which Plaintiff is complicit, including that certain Notice of Filing of

Sixth Amended Plan Supplement [Final Schedule of Core Centers Sale Transaction Assumed

Contracts and Final Schedule of CareMed Pharmacy Assumed Contracts] and Rejection Damages

Claims Deadline Related Thereto [Dkt. No. 656, March 10, 2025] (the "Sixth Amended Plan

Supplement"). Such filings establish that Dr. Cemelus's employment agreement, as well as the

employment agreements of the De Solo Defendants, were rejected by the debtors and not assigned

to Plaintiff.

9

CASE NO.: 2025-007726-CA-01

### Second Defense

Plaintiff's claims fail because the restrictive covenants in Dr. Cemelus's contract became unenforceable upon rejection of the contract, and such covenants are unenforceable by Plaintiff, a stranger to the contract, even had they survived.

### Third Defense

Plaintiff's claims fail because based on the doctrine of unclean hands. Plaintiff has been falsely stating to the De Solo Defendants and Dr. Cemelus that their respective contracts were assumed, although Plaintiff knows they were not.

### Fourth Defense

Plaintiff's claims are barred by the doctrine of equitable estoppel. The De Solo Defendants and Dr. Cemelus relied on the Plaintiff's rejection of their respective contracts and acted based on that rejection. Accordingly, Plaintiff is estopped from claiming any alleged harm resulting from such reliance.

### Fifth Affirmative Defense

Plaintiff's claims are barred by the doctrine of reasonable reliance. De Solo Defendants and Dr. Cemelus reasonably relied on the Plaintiff's rejection of their respective contracts and acted based on that rejection. Accordingly, Plaintiff is estopped from claiming any alleged harm resulting from such reliance.

### Sixth Affirmative Defense

Plaintiff's claims fail because any contract that purports to interfere with the doctor-patient relationship is against public policy.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

CASE NO.: 2025-007726-CA-01

WHEREFORE, the De Solo Defendants request that the Court enter judgment in their

favor, and against Plaintiff, and enter any other relief the Court deems just and proper.

Date: May 27, 2025

Respectfully submitted:



Attorneys for Carlos and Alberto de Solo
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5113
Fax: (305) 372-2738

By:    */s/ Anthony Diblasi*
       José A. Ortiz, Esq.
       Email: jortiz@homerbonner.com
       Florida Bar No.: 182321
       Andrew R. Herron, Esq.
       Email: aherron@homerbonner.com
       Florida Bar No.: 861560
       Anthony Diblasi, Esq.
       Email: adiblasi@homerbonner.com
       Florida Bar No.: 117681

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of May 2025 a true and correct copy of the

foregoing was filed with the Clerk of Court via the Florida E-Filing Portal and furnished to all

parties.

By:    *Anthony M. Diblasi*
       Anthony M. Diblasi

11

Filing # 223967151 E-Filed 05/27/2025 07:20:56 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO. 2025-007726-CA-01

CLAREMEDICA VIKING, LLC,

     Plaintiff,

vs.

ALBERTO DE SOLO, CARLOS A. DE SOLO,
and JONES CEMELUS, M.D.
,

     Defendants.

_____/

## ANSWER AND AFFIRMATIVE DEFENSES

    Defendant, Jones Cemelus, M.D. ("Dr. Cemelus"), hereby files his Answer and Affirmative Defenses to the Complaint ("Complaint") filed on April 25, 2025, by the plaintiff, Claremedica Viking, LLC ("Plaintiff"), stating:

### NATURE OF ACTION

    1.    Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 1 and, therefore, denies same.

    2.    Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 2 and, therefore, denies same.

    3.    Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 3 and, therefore, denies same.

4.      Denied

5.      Denied

### PARTIES, JURISDICTION, AND VENUE

6.      Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 6 and, therefore, denies same.

7.      Admitted

8.      Admitted

9.      Admitted

10.      The allegations in Paragraph 10 constitute legal conclusions.  They are not factual assertions that require a response.  To the extent that a response is required, Dr. Cemelus denies the allegations in Paragraph 10.

11.      The allegations in Paragraph 11 constitute legal conclusions.  They are not factual assertions that require a response.  To the extent that a response is required, Dr. Cemelus denies the allegations in Paragraph 11.

12.      The allegations in Paragraph 12 constitute legal conclusions.  They are not factual assertions that require a response.  To the extent that a response is required, Dr. Cemelus denies the allegations in Paragraph 12.

13.      The allegations in Paragraph 13 constitute legal conclusions.  They are not factual assertions that require a response.  To the extent that a response is required, Dr. Cemelus denies the allegations in Paragraph 13.

### FACTUAL BACKGROUND

14.      Denied

15.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 15 and, therefore, denies same.

16.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 16 and, therefore, denies same.

17.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 17 and, therefore, denies same.

18.     Denied

19.     The bankruptcy filings referenced in Paragraph 19 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

20.     The bankruptcy filings referenced in Paragraph 20 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

21.     The bankruptcy filings referenced in Paragraph 21 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

22.     The bankruptcy filings referenced in Paragraph 22 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

23.     The bankruptcy filings referenced in Paragraph 23 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

24.     The bankruptcy filings referenced in Paragraph 24 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

25.     The bankruptcy filings referenced in Paragraph 25 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

**THE FERRO LAW FIRM**
ATTORNEYS AT LAW
255 ALHAMBRA CIRCLE ‖ 8TH FLOOR ‖ CORAL GABLES, FLORIDA ‖ 33134

26.     The bankruptcy filings referenced in Paragraph 26 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

27.     The bankruptcy filings referenced in Paragraph 27 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

28.     The bankruptcy filings referenced in Paragraph 28 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

29.     Denied

30.     The exhibit referenced in Paragraph 30 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

31.     The exhibit referenced in Paragraph 31 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

32.     Denied

33.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 33 and, therefore, denies same.

34.     The exhibit referenced in Paragraph 34 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

35.     The exhibit referenced in Paragraph 35 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

36.     The exhibit referenced in Paragraph 36 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

37.     The exhibit referenced in Paragraph 37 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

38.     The exhibit referenced in Paragraph 38 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

39.     The exhibit referenced in Paragraph 39 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

40.     The exhibit referenced in Paragraph 40 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

41.     The exhibit referenced in Paragraph 41 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

42.     The exhibit referenced in Paragraph 42 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

43.     The exhibit referenced in Paragraph 43 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

44.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 44 and, therefore, denies same.

45.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 45 and, therefore, denies same.

46.     Denied

47.     Admitted that Plaintiff's CEO falsely claimed that Dr. Cemelus was breaching an agreement and threatened legal action.  Denied as to the remaining allegations.

48.     The exhibits referenced in Paragraph 48 speak for themselves, and Dr. Cemelus denies any allegations inconsistent therewith.

49.     Denied

**THE FERRO LAW FIRM**
ATTORNEYS AT LAW
255 Alhambra Circle ‖ 8th Floor ‖ Coral Gables, Florida ‖ 33134

5

50.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 50 and, therefore, denies same.

51.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 51 and, therefore, denies same.

52.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 52 and, therefore, denies same.

53.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 53 and, therefore, denies same.

54.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 54 and, therefore, denies same.

55.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 55 and, therefore, denies same.

56.     The exhibit referenced in Paragraph 56 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

57.     The exhibit referenced in Paragraph 57 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

58.     The exhibit referenced in Paragraph 58 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

59.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 59 and, therefore, denies same.

60.     The exhibit referenced in Paragraph 60 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

**THE FERRO LAW FIRM**
ATTORNEYS AT LAW
255 ALHAMBRA CIRCLE ‖ 8TH FLOOR ‖ CORAL GABLES, FLORIDA ‖ 33134

61.     The exhibit referenced in Paragraph 61 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

62.     The exhibit referenced in Paragraph 62 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

63.     The exhibit referenced in Paragraph 63 speaks for itself, and Dr. Cemelus denies any allegations inconsistent therewith.

64.     Denied

65.     Dr. Cemelus lacks sufficient knowledge to admit or deny the allegations in Paragraph 65 and, therefore, denies same.

### CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT
### AGAINST DR. CEMELUS

66.     Dr. Cemelus repeats and re-alleges his responses to Paragraphs 1-65 above as if fully set forth herein.

67.     The allegations in Paragraph 67 constitute legal conclusions.  They are not factual assertions that require a response.  To the extent that a response is required, Dr. Cemelus denies the allegations in Paragraph 67.

68.     The allegations in Paragraph 68 constitute legal conclusions.  They are not factual assertions that require a response.  To the extent that a response is required, Dr. Cemelus denies the allegations in Paragraph 68.

69.     Denied

70.     Denied

71.     Denied

72.     Denied

73.     Denied

74.     Denied

75.     Denied

76.     Denied

77.     Denied

Dr. Cemelus denies the allegations in the "Wherefore" paragraph.  Dr. Cemelus further denies any allegations not expressly admitted.  Finally, Dr. Cemelus denies that Plaintiff is entitled to any relief whatsoever and demands judgment in his favor and against Plaintiff.

## COUNT II – TORTIOUS INTERFERENCE OF CONTRACT
## AGAINST CARLOS A. DE SOLO AND ALBERTO DE SOLO

Count II is not directed at Dr. Cemelus and, therefore, no response is required.  To the extent that a response is required, Dr. Cemelus denies the allegations in Paragraphs 78-86.  Dr. Cemelus denies the allegations in the "Wherefore" paragraph.  Dr. Cemelus further denies any allegations not expressly admitted.  Finally, Dr. Cemelus denies that Plaintiff is entitled to any relief whatsoever and demands judgment in his favor and against Plaintiff.

## COUNT III – COMMON LAW UNFAIR COMPETITION
## AGAINST CARLOS A. DE SOLO AND ALBERTO DE SOLO

Count III is not directed at Dr. Cemelus and, therefore, no response is required.  To the extent that a response is required, Dr. Cemelus denies the allegations in Paragraphs 87-91.  Dr. Cemelus denies the allegations in the "Wherefore" paragraph.  Dr. Cemelus further denies any

allegations not expressly admitted.  Finally, Dr. Cemelus denies that Plaintiff is entitled to any relief whatsoever and demands judgment in his favor and against Plaintiff.

## AFFIRMATIVE DEFENSES

Without assuming the burden to prove that which properly falls on Plaintiff, Dr. Cemelus pleads the following separate, additional, and alternative affirmative defenses.  Dr. Cemelus reserves the right to assert any additional and further defenses that may be revealed as the case develops.

### FIRST AFFIRMATIVE DEFENSE

As its first affirmative defense, Dr. Cemelus states that Plaintiff's claims are barred by the doctrine of first breach.  On or about March 10, 2025, the Debtors rejected Dr. Cemelus' employment agreement and, therefore, breached same.  Debtors' breach occurred before Dr. Cemelus' alleged breach.

### SECOND AFFIRMATIVE DEFENSE

As its second affirmative defense, Dr. Cemelus states that the restrictive covenants in Dr. Cemelus' employment agreement are unenforceable because the Debtors rejected Dr. Cemelus' employment agreement and, therefore, breached same and could not have assigned same to Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

As its third affirmative defense, Dr. Cemelus states that Plaintiff's claims are barred by the doctrine of detrimental reliance.  Dr. Cemelus detrimentally relied on the Debtor's rejection of his employment agreement.

**THE FERRO LAW FIRM**
ATTORNEYS AT LAW
255 ALHAMBRA CIRCLE ‖ 8TH FLOOR ‖ CORAL GABLES, FLORIDA ‖ 33134

### FOURTH AFFIRMATIVE DEFENSE

As its fourth affirmative defense, Dr. Cemelus states that Plaintiff's claims are barred by the doctrine of unclean hands. Plaintiff has falsely represented to the Court and to Dr. Cemelus that his employment agreement was assumed when Plaintiff knows that it was not.

### FIFTH AFFIRMATIVE DEFENSE

As its fifth affirmative defense, Dr. Cemelus states that Plaintiff's claims are barred because any contract that purports to interfere with the doctor-patient relationship is against public policy and unenforceable.

### SIXTH AFFIRMATIVE DEFENSE

As its sixth affirmative defense, Dr. Cemelus states that Plaintiff's claims are barred by the doctrine of equitable estoppel. In the bankruptcy proceedings, Plaintiff rejected Dr. Cemelus' employment agreement. Plaintiff cannot now claim that it did not do so.

Respectfully submitted,

**THE FERRO LAW FIRM, P.A.**
255 ALHAMBRA CIRCLE, 8TH FLOOR
CORAL GABLES, FLORIDA 33134
TEL. (305) 448-1033
CELL. (305) 984-8892
EMAIL. SIMON@THEFERROFIRM.COM

BY: /s/ *Simon Ferro*
      SIMON FERRO JR.
      FLORIDA BAR NO. 37014

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic mail through the Florida Courts E-Filing Portal, this 27th day of May, 2025, to all counsel of record.

/s/    *Simon Ferro*
SIMON FERRO

**THE FERRO LAW FIRM**
ATTORNEYS AT LAW
255 ALHAMBRA CIRCLE ‖ 8TH FLOOR ‖ CORAL GABLES, FLORIDA ‖ 33134